Peggy Hunt (Utah State Bar No. 6060)
**DORSEY & WHITNEY LLP**
111 South Main Street, 21st Floor
Salt Lake City, UT  84111-2176
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: hunt.peggy@dorsey.com

*Court-Appointed Receiver, Peggy Hunt*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff.<br><br>V.<br><br>TRAFFIC MONSOON, LLC, a Utah Limited Liability Company, and CHARLES DAVID SCOVILLE, an individual,<br><br>Defendants. | **RECEIVER'S SIXTH STATUS REPORT**<br>*(APRIL 1, 2018 THROUGH JUNE 30, 2018)*<br><br>2:16-cv-00832-JNP<br><br>The Honorable Jill N. Parrish |

Peggy Hunt, the Court-appointed Receiver (the "Receiver") for Traffic Monsoon, LLC and the assets of Charles David Scoville that were obtained directly or indirectly from Traffic Monsoon, hereby submits this *Sixth Status Report* (the "Status Report") for the period of April 1, 2018 through June 30, 2018 (the "Reporting Period").  This Status Report is posted on the website for the receivership at www.trafficmonsoonreceivership.com (the "Receivership Website").

## TABLE OF CONTENTS

I.    Introduction ............................................................................................................................1

II.   Summary of Key Events ........................................................................................................2

    A.   Commencement of The Civil Enforcement Case and the TRO ................................2
    B.   Appointment of the Receiver and Employment of Professionals ...........................3
    C.   The Preliminary Injunction .....................................................................................3
    D.   The Appeals ............................................................................................................5

III.  Work Done By The Receiver And Her Professionals During The Reporting
    Period ....................................................................................................................................5

    A.   Attending to Unauthorized Manchester Flat Transfer ...........................................5
    B.   Attending to Claims Process Investigation and Infrastructure ...............................8
    C.   Investigating and Attendingt to Asset Recovery ....................................................9
    D.   Communicating with Investors ...............................................................................9
    E.   Collecting Investor Information .............................................................................10
    F.   Attending to General Administration of the Receivership Estate .........................11

IV.   Results of Preliminary Forensic Analysis ...........................................................................11

V.    Financial Report ..................................................................................................................12

    A.   Standardized Fund Accounting Report ("SFAR") ................................................12
    B.   Administrative Expenses During the Reporting Period .........................................12

        1.   Quarterly Fee Applications Relevant to this Reporting Period .................13
        2.   Fees and Expenses Incurred During the Current Reporting Period ..........13

VI.   Conclusion ...........................................................................................................................14

i

## I.   <u>Introduction</u>

This Status Report includes a brief summary of key events in this case to date as set forth in Part II below.  Part III is a summary of the Receiver's work during the Reporting Period, and Part IV provides a summary of key findings to date.  Part V is a financial summary of the Receivership Estate.  All of the documents filed with the Court that are referenced in this Status Report are posted on the Receivership's website at www.trafficmonsoonreceivership.com (the "Receivership Website").

Please note that a more detailed discussion about the background in this case is set forth in the *Receiver's First Status Report (July 26, 2016 Through March 31, 2017)* (the "First Status Report"),[1] which incorporated the Receiver's *Declarations* outlining the initial findings of her investigation.[2] Since filing that First Status Report, the Receiver has continued to file quarterly Status Reports that also may be consulted for information about this case.  To date the following additional Status Reports have been filed:  *Receiver's Second Status Report (April 1, 2017 Through June 30, 2017)*;[3] *Receiver's Third Status Report (July 1, 2017 Through September 30, 2017)*[4]; *Receiver's Fourth Status Report (October 1, 2017 Through December 31, 2017)*;[5] and *Receiver's Fifth Status Report (January 1, 2018 Through March 31, 2018)*[6] (these Reports,

---

[1] Docket No. 91.

[2] *See Declaration of Receiver Peggy Hunt (Communications)* (the "Communications Declaration"), Docket No. 54; and the *Declaration of Peggy Hunt (Business Operations)* (the "Business Operations Declaration"), Docket No. 55.

[3] Docket No. 104.

[4] Docket No. 108.

[5] Docket No. 122.

[6] Docket No. 153.

4851-3865-8929\1

together with the First Status Report, are the "Prior Status Reports").  All of the Prior Status Reports are posted on the Receivership Website.

## II.    Summary of Key Events

### A.    *Commencement of The Civil Enforcement Case and the TRO*

On July 26, 2016, the above-captioned case (the "Civil Enforcement Case") was commenced by the United States Securities and Exchange Commission (the "SEC") against Defendants Traffic Monsoon, LLC ("Traffic Monsoon") and Charles David Scoville ("Scoville" and, together with Traffic Monsoon, the "Defendants").  The SEC claims, among other things, that between October 2014 and July 26, 2016, the Defendants engaged in securities fraud and operated a Ponzi scheme.  It is alleged that the Defendants took approximately $207 million from over 162,000 investors primarily through the solicitation of an investment known as an "AdPack."[7]

At the time that the Civil Enforcement Case was commenced, the United States District Court for the District of Utah (the "Court") entered a *Temporary Restraining Order and Order Freezing Assets*, which, prior to the entry of the Preliminary Injunction discussed below, was amended by Orders entered on July 27, 2016 and on November 4, 2016 (collectively, the "TRO").[8]  The TRO, among other things, prohibited the Defendants from operating and imposed an asset freeze of the Defendants' assets.

---

[7] *See* Docket No. 2 (Complaint ¶ 2).

[8] Docket Nos. 8, 14 & 56.

B.     *Appointment of the Receiver and Employment of Professionals*

On July 27, 2016, just after the entry of the TRO, the Court entered an *Order Appointing Receiver* (the "Receivership Order"),[9] thus commencing the receivership.  Ms. Hunt was appointed as the receiver of Traffic Monsoon and the assets of Scoville pending a determination as to whether a preliminary injunction should be entered in the Civil Enforcement Case.  Ms. Hunt is an attorney whose primary area of practice over the last 26 years has focused on bankruptcy (both liquidation and reorganization), insolvency and receivership law.  She serves as a trustee in bankruptcy cases filed in the District of Utah, and regularly represents trustees and equity receivers appointed in cases involving Ponzi schemes and other types of securities fraud.

The Receiver immediately took control of known assets and commenced an investigation.  This investigation, which is discussed in further detail in the Prior Status Reports and below, is ongoing.  To assist with the investigation and the discharge of her duties, the Receiver obtained Court approval to employ Dorsey & Whitney LLP ("Dorsey") as her legal counsel, and Berkley Research Group ("BRG") as her forensic and general accounts.[10] The Receiver also contracted with a company called "Epiq" primarily to assist her with securing electronic data on Traffic Monsoon's servers and in managing investor communications.

C.     *The Preliminary Injunction*

The SEC requested that the Court enter a preliminary injunction in the Civil Enforcement Case against Scoville and Traffic Monsoon.  This request was contested by Scoville, and

---

[9] Docket No. 11.

[10] Docket Nos. 11 & 25 (Orders authorizing employment).

3

Scoville also filed a *Motion to Set Aside Receivership*.[11]  On March 28, 2017,[12] after concluding a contested evidentiary hearing, the Court entered a *Preliminary Injunction* and an *Amended Order Appointing Receiver* ("Amended Receivership Order").[13] As a result, Scoville's objections to the SEC's request for the entry of a preliminary injunction were overruled, and Scoville's request to set aside the receivership was denied.  Thus, Ms. Hunt has continued to serve as receiver.

While the exact terms of the "Preliminary Injunction" should be reviewed, the Court generally prohibits Scoville from operating Traffic Monsoon "or a business model substantially similar to Traffic Monsoon's sale of AdPacks."[14]  The Court also imposes an asset freeze of all "assets, of whatever kind and wherever situated, of Traffic Monsoon, LLC and Charles D. Scoville that were obtained directly or indirectly from Traffic Monsoon, LLC. . . ."[15]  And, the Court has ordered a stay of all litigation in any court against either or both of the Defendants.[16] In conjunction with the Preliminary Injunction, the Court entered a *Memorandum Decision and Order*,[17] which includes significant factual findings and a comprehensive legal analysis.  While

---

[11] Docket Nos. 32, 33, 45; *see also* Docket Nos. 38, 39, 48, 49, 53 (SEC response).

[12] Before the Court ruled on matters under advisement, Scoville filed a *Motion to Dismiss*, which is based substantially on the same arguments made in conjunction with his opposition to the entry of a preliminary injunction.  Docket No. 70. Scoville has agreed that the SEC does not need to file a response to his Motion to Dismiss at this time.  Docket Nos. 73-74 and 89.

[13] Docket Nos. 79 – 80.  *See* Docket No. 91 (First Status Report, at 3 (summary of the preliminary injunction hearing).

[14] Docket No. 80 (Preliminary Injunction, p. 1).

[15] Docket No. 80 (Preliminary Injunction, p. 2).

[16] Docket No. 80 (Preliminary Injunction, p. 3).

[17] Docket No. 79.

4

the findings are summarized in part in the Receiver's First Status Report, important to note is that the Court concluded that a clear showing had been made that the SEC was likely to succeed in establishing that Traffic Monsoon was a Ponzi scheme.

    D.    *The Appeals*

Scoville appealed the Amended Receivership Order and Preliminary Injunction, and this appeal is currently pending before the United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit Appeal").[18] Oral argument on the Tenth Circuit Appeal was held on March 21, 2018, and the Tenth Circuit has the matter under advisement.

Scoville also appealed a *Second Amended Order Appointing Receiver* (defined below)[19] related to his authority to appeal and advance arguments on behalf of Traffic Monsoon in the Tenth Circuit Appeal (the "Second Appeal").[20] On April 26, 2018, the Tenth Circuit entered an *Order* abating the Second Appeal.

**III.    Work Done By The Receiver And Her Professionals During The Reporting Period**

    A.    *Attending to Unauthorized Manchester Flat Transfer*

One of the assets of the Receivership Estate is an interest in a flat located in Manchester, United Kingdom, and a related parking space that Scoville purchased in August 2015 using funds obtained from Traffic Monson (the "Manchester Flat"). As reported in the First Status Report, the Receiver obtained the keys to the Manchester Flat and paid fees associated with the

---

[18] *SEC v. Traffic Monsoon, LLC et al.*, Case No. 17-4059 (10th Cir.). Copies of documents filed in the Tenth Circuit Appeal are on the Receivership Website under the tab titled "Scoville Appeal Documents".

[19] Docket No. 120.

[20] Docket No. 124. The Receiver filed a *Notice of Non-Participation* in the Second Appeal to comply with Tenth Circuit procedures.

4851-3865-8929\1

Manchester Flat to a homeowner's association.[21]  Since that time, the Receiver has also paid

other related fees associated with the Manchester Flat.

      The Receiver has discovered that the Manchester Flat had been sold in violation of the

Preliminary Injunction without notice to or authorization by the Receiver and the Court.  On

March 16, 2018, the Receiver filed the following documents: (1) *Motion Seeking Accounting and*

*Turnover of Manchester Flat Proceeds*;[22] (2) *Ex Parte Motion Seeking an Order to Show Cause*

*Why Charles D. Scoville Should Not Be Held in Contempt*;[23] and (3) *Declaration of Peggy Hunt,*

*Receiver.*[24]  The Receiver also issued subpoenas to discover information related to the

unauthorized transfer, and made requests of solicitors in the United Kingdom involved in the

transaction.

      The Court entered an *Order Granting Motion Seeking an Order to Show Cause* (the

"OSC"),[25] ordering Scoville to respond and appear at a hearing on April 11, 2018.  Scoville filed

a *Response* to the OSC and to the Receiver's request for turnover,[26] in which his counsel

admitted that he was unable to contact Scoville, but denied that Scoville was involved in the

unauthorized transfer of the Manchester Flat.[27]  Thereafter, Scoville's counsel filed a *Motion For*

---

[21] Docket No. 91 (First Status Report, p. 13).

[22] Docket No. 127.

[23] Docket No. 128.

[24] Docket No. 129.

[25] Docket No. 130.

[26] Docket Nos. 135 and 137.

[27] *See* Declaration of Shirley Scoville, Docket No. 136.

*Leave to File Motion Under Seal* and a *Redacted Motion to Excuse Appearance of Defendant Charles Scoville at Upcoming Evidentiary Hearing and Motion to Excuse Compliance With Subpoena*[28] representing that Scoville's medical condition prevented him from preparing a response, responding to document requests, or from appearing in Court as required under the OSC.

On April 11, 2018, the Court held a hearing on the OSC. Scoville did not attend the hearing, but his counsel stated that Scoville would cooperate with the Receiver when he was able, and that status reports would be filed with the Court regarding his status.

On May 14, 2018, the Receiver, her counsel and the SEC met with Scoville and his counsel. At that time, Scoville informed the Receiver that he understood the issues involved with the Manchester Flat transfer, but did not participate in this transfer, did not receive funds as a result of the transfer, and did not have knowledge about the transfer. He stated that he was committed to assisting the Receiver discover what happened. Thereafter, as outlined in the *Receiver's Response To Motion for Relief from Filing Future Status Reports and Updates*,[29] the Receiver was required to prompt Scoville on numerous occasions to assist as he promised. Finally, on June 18, 2018, Scoville provided the Receiver with a letter authorizing the transferring agent to provide the Receiver documents.[30] The Receiver has received some

---

[28] Docket No. 138.

[29] Docket No. 151.

[30] On June 4, 2018, *Scoville filed a Motion for Relief From Filing Status Reports* [Docket No1. 150], incorrectly stating that the Receiver had not requested Scoville's assistance and that Scoville was cooperating. As noted above, the Receiver objected to the Motion primarily because of the misstatements made in that Motion and requested that the Court continue to require Scoville to provide status reports. By Docket Entry dated June 26, 2018, the Court granted the Motion without prejudice to the Receiver requesting such reports in the future.

documents from the solicitors involved in the Manchester Flat transfer, and continues to investigate the transfer.

> B.    *Attending to Claims Process Investigation and Infrastructure*

Traffic Monsoon did not maintain independent financial or accounting records. Thus, as discussed with the Court at a status conference held on February 8, 2018 (the "February 2018 Status Conference") and in Prior Status Reports, the primary focus of the Receiver since her appointment has been in recreating Traffic Monsoon's business records. Recreating Traffic Monsoon's records has been vital in determining (i) the identity of investors, (ii) those investors with claims and the amounts of their claims, and (iii) whether the Receivership Estate has claims that would be beneficial to pursue. As described in Prior Status Reports, this has been an immense job. At the February 2018 Status Conference, the Receiver disclosed to the Court that she has completed the primary work on records recreation. There is still some work left to be done in this area, but the Receiver has sufficient information to identify investors and determine claims, thus allowing her to take the next steps in administering the Receivership Estate.

The claims process in this case will be complicated, and thus costly, for a number of reasons including, (a) that there will be over 100,000 potential claimants located in numerous countries, and (b) that potential claimants are being identified through recreated records as well as records that the Receiver has been collecting through correspondence received directly from potential claimants, and information obtained through the investor portal on the Receivership Website through the Call Center.

Given this fact, the Receiver has spent time during this Reporting Period investigating options for the most time- and cost-efficient means of conducting a claims process. This has

4851-3865-8929\1

included continuing investigation of cases similar to the present case and procedures that receivers in those cases have employed, evaluating different methodologies, reviewing an initial claims procedure motion to identify certain issues that require further investigation, and vetting professional noticing and claims agents to assist the Receiver with this process. The Receiver has been interviewing agents, and expects to file a motion in the next Reporting Period seeking authority to employ an agent. Once the agent is employed and a claims process procedure is developed in conjunction with the agent, the Receiver will file papers related to commencement of the claims process.

        C.    *Investigating and Attendingt to Asset Recovery*

Early in December 2017, BRG provided the Receiver with an initial analysis of its recreation of Traffic Monsoon's records. As a result of this analysis, the Receiver determined that she should commence work involving investigating and identifying certain claims of the Receivership Estate that may exist against, among others, those who profited from their investments with Traffic Monsoon. At the February 2018 Status Conference, the Receiver discussed these matters with the Court and sought direction from the Court as to what would be permissible in light of the Tenth Circuit Appeal. Dorsey is assisting the Receiver with this work, and the work is ongoing.

        D.    *Communicating with Investors*

The Receiver and Dorsey have spent time communicating with investors during the Reporting Period. A detailed summary of efforts in this regard through October 2016 is included in the Receiver's Communications Declaration, and in Prior Status Reports. Work through the "Receivership Website", the "Receivership Email Address" and "Call Center" (as defined in

Prior Status Reports) is ongoing.  Primarily persons who communicate with the Receiver are requesting information about how to submit claims and when they will receive their money back. As discussed above, the Receiver is working to establish a claims process, and as part of that process, the Receiver anticipates that investor communications will increase as potential claimants request information about how to submit claims and the status of those claims.

The Receiver also has been given access to Traffic Monsoon's PayPal, Payza and Solid Trust Pay accounts.  In addition to recreating records, Dorsey has used this access to respond to numerous "chargeback" requests made by investors in an attempt to ensure that all investors are treated in a fair manner with respect to their claims against the Receivership Estate.[31]

Finally, during the Reporting Period, the Receiver has been in continued communication with investor groups in various contexts, including counsel for a group of investors who claim that their money was invested with Traffic Monsoon through a person who is now involved in a security enforcement action outside of the United States.

E.      *Collecting Investor Information*

The Receiver continued during the Reporting Period to collect information from Traffic Monsoon investors about their identity and investments primarily from two sources: (i) the portal on the Receivership Website through which investors provide information about themselves and their Traffic Monsoon investments; and (ii) email inquiries to the Receiver Email Address and calls made to the Call Center.  Among other things, the Receiver continues to collect this information and provide it to BRG to assist it in most accurately recreating Traffic Monsoon's

---

[31] Docket No. 91 (First Status Report, at 12 (discussing chargeback issues)).

4851-3865-8929\1

records.  The Receiver anticipates that the information she is collecting will also be used by the Receiver and a claims agent in communicating with potential claimants.

F.      *Attending to General Administration of the Receivership Estate*

During the Reporting Period, the Receiver, Dorsey, and BRG have attended to numerous matters related to the administration of the Receivership Estate.  These tasks include, but are not limited to, drafting and providing written status reports; monitoring and managing bank accounts; following accounting protocols; preparing SFARs (as defined below); evaluating and paying costs related to administration; attending to mail;[32] evaluating issues related to compliance with applicable tax laws; filing papers required by applicable tax laws; communicating with investors and interfacing with financial account institutions; coordinating with governmental entities as requested; and, when necessary, responding to statements made or inquires by Scoville and/or his counsel.

IV.    **Results of Preliminary Forensic Analysis**

As discussed in Part III above, at the February 2018 Status Conference and in Prior Status Reports, BRG recreated a large part of Traffic Monsoon's financial records.  There is still work to be done in this area.  Based on its work to date, BRG has been able to not only identify a majority of the investors, but also to provide a preliminary report on individuals with claims against the Receivership Estate and those who profited from their involvement with Traffic Monsoon.  Information about these preliminary findings was presented at the February 2018 Status Conference and is set forth in the Receiver's Prior Status Reports.

---

[32] Shortly after her appointment, the Receiver redirected mail for the Defendants to her office.  Since the entry of the Preliminary Injunction, the Receiver has informed Scoville through his counsel that she will forward his personal mail to him when it is received by her, and she has done so during the Reporting Period.

## V.    Financial Report

### A.    *Standardized Fund Accounting Report ("SFAR")*

A summary of the financial condition of the Receivership Estate as of the end of the Reporting Period is set forth in the SFAR, a copy of which is attached hereto as **Exhibit A**.  At the end of the Reporting Period, the Receivership Estate had funds in the total amount of $52,929,094.69.[33]

### B.    *Administrative Expenses During the Reporting Period*

The fees and out of pocket expenses of the Receiver, Dorsey and BRG must be approved by the Court prior to payment.  The Court has entered an *Order Establishing Administrative Expense Payment Procedures* (the *"Fee Procedures Order")*,[34] setting forth procedures for the request and payment of professional fees and expenses in this case.  Among other things, the Fee Procedures Order authorizes the Receiver and her professionals to file monthly "Notices of Request for Payment".  Absent objection in accordance with the Fee Procedures Order, the Receiver may pay 80% of fees and 100% of out-of-pocket expenses requested in a Notice of Request for Payment.  All monthly disbursements and any other requests for fees and expenses not requested pursuant to a Notice for Request for Payment are subject to Court approval through "Fee Applications" filed quarterly.  Below is a summary of quarterly Fee Applications that have been filed during the Reporting Period, and of the fees and expenses that have been incurred during the current Reporting Period.

---

[33] *See* Exh. A (SFAR).

[34] Docket No. 101.

12

1.   Quarterly Fee Applications Relevant to this Reporting Period

On June 21, 2018, the Receiver filed a *Fourth Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered From October 1, 2017 Through December 31, 2017* (the "Fourth Application").[35]  The Receiver also filed on June 25, 2018 a *Fifth Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered From January 1, 2018 Through March 31, 2018* (the "Fifth Application").[36]

Just after the Reporting Period, on July 13, 2018, the Court noted on the Docket that it had conducted a preliminary review of the Fourth and Fifth Applications, and requested information about some of the legal fees billed.  On August 8, 2018, the Receiver filed a *Response* to the Court's request for information, and pursuant thereto, counsel agreed to reduce its fees in the total amount of $3,750.50.[37]  At this time, both the Fourth and Fifth Applications, as amended by counsel in the Response, are pending.  No Notices of Request for Payment were filed during the Reporting Period.

2.   Fees and Expenses Incurred During the Current Reporting Period

During the Reporting Period of April 1 through June 30, 2018, the Receiver has worked a total of 37 hours providing receivership services to the Receivership Estate for which fees in the total amount of $11,909.25 have been incurred after voluntary reductions.  Dorsey has worked a total of 78.7 hours and provided legal services to the Receivership Estate for which fees in the total amount of $26,851.00 and out-of-pocket expenses in the total amount of $74.39 have been

---

[35] Docket No. 152.

[36] Docket No. 154.

[37] Docket No. 161.

4851-3865-8929\1

incurred after voluntary reductions.  And, BRG has worked a total of 52.5 hours providing forensic and general accounting services to the Receivership Estate for which fees in the total amount of $14,011.50 and out-of-pocket expenses in the total amount of $288.96 have been incurred after voluntary reductions.

The Receiver intends to file a *Sixth Interim Fee Application* for this Reporting Period shortly after the filing of this Status Report.  In that Fee Application, the Receiver will request allowance of fees and expenses for the period of April 1, 2018 through June 30, 2018.  None of these fees and expenses have been paid to date.

**VI.     Conclusion**

The Receiver understands that making a distribution to those holding claims is of paramount importance.  She and her team are diligently working collectively to move this case to the next step which will involve seeking Court approval of procedures for those Traffic Monsoon investors who lost money to submit claims against the Receivership Estate.

Dated this 30ᵗʰ day of August, 2018.

**RECEIVER**

*Peggy Hunt, Receiver*

4851-3865-8929\1

## CERTIFICATE OF SERVICE

I hereby certify that on this _30th_ day of August, 2018, I caused the foregoing *Sixth Status Report (April 1, 2018 Through June 30, 2018)* to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record in this case.

_/s/ Candy Long_

15

4851-3865-8929\1

# EXHIBIT A

STANDARDIZED FUND ACCOUNTING REPORT for **Traffic Monsoon, LLC Receivership** - Cash Basis
Receivership; Civil Court Case No. 2:16-00832
REPORTING PERIOD 04/01/2018 TO 06/30/2018

| | FUND ACCOUNTING (See Instructions): | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 04/01/18) | | | $52,836,308.94 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | **Business Income** | - | - | |
| Line 3 | **Cash and Securities** | - | - | |
| Line 4 | **Interest/Dividend Income** | $98,705.30 | $98,705.30 | |
| Line 5 | **Business Asset Liquidation** | - | - | |
| Line 6 | **Personal Asset Liquidation** | - | - | |
| Line 7 | **Third-Party Litigation** | - | - | |
| Line 8 | **Miscellaneous - Other** | - | - | |
| | **Total Funds Available (Lines 1-8):** | | $98,705.30 | $52,935,014.24 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | **Disbursements to Senior Secured Lenders/Investors** | - | - | |
| Line 10 | **Disbursements for Receivership Operations** | | $5,919.55 | |
| Line 10 | *Internal Loans* | - | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | $5,774.05 | | |
| | 1. Fees: | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | $5,774.05 | | |
| Line 10b | *Business Asset Expenses* | $45.50 | | |
| Line 10c | *Personal Asset Expenses* | - | | |
| Line 10d | *Hospital Settlements & Investment Expenses* | - | | |
| Line 10e | *Third-Party Litigation Expenses* | - | | |
| | 1. Attorney Fees | - | | |
| | 2. Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | | - | |
| Line 10f | *Tax Administrator Fees and Bonds* | - | | |
| Line 10g | *Federal and State Tax Payments* | $100.00 | | |
| | **Total Disbursements for Receivership Operations** | | $5,919.55 | $5,919.55 |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | - | - | |
| Line 11 | *Distribution Plan Development Expenses* | - | | |
| Line 11a | *Distribution Plan Development Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | | - | |
| Line 11b | *Distribution Plan Implementation Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - | | |
| | *Total Plan Implementation Expenses* | | - | |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | - | - |
| Line 12 | **Disbursements to Court/Other:** | | | |
| Line 12 | *Disbursements to Court* | - | | |
| Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | - | | |
| Line 12b | *Federal Tax Payments* | - | | |
| | **Total Disbursements to Court/Other:** | | - | - |
| | **Total Funds Disbursed (Lines 9-12):** | | | $5,919.55 |
| Line 13 | **Ending Balance (As of 06/30/18):** | | | $52,929,094.69 |
| Line 14 | **Ending Balance of Fund - Net Assets:** | | | |
| Line 14a | *Cash & Cash Equivalents* | | | $52,929,094.69 |
| Line 14b | *Investments* | | | |
| Line 14c | *Other Assets or Uncleared Funds* | | | - |
| | **Total Ending Balance of Fund - Net Assets** | | | $52,929,094.69 |

| | **OTHER SUPPLEMENTAL INFORMATION:** | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 15 | ***Report of Items NOT To Be Paid by the Fund:*** **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | - | - | |
| Line 15 | *Disbursements for Plan Administration Expenses* | - | | |
| Line 15a | *Plan Development Expenses Not Paid by the Fund:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | - | |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |

|  | | | | |
|---|---|---|---|---|
|  | Consultants | - | | |
|  | 2. Administrative Expenses | - | | |
|  | 3. Investor Identification: | - | | |
|  | Notice/Publishing Approved Plan | - | | |
|  | Claimant Identification | - | | |
|  | Claims Processing | - | | |
|  | Web Site Maintenance/Call Center | - | | |
|  | 4. Fund Administrator Bond | - | | |
|  | 5. Miscellaneous | - | | |
|  | 6. FAIR Reporting Expenses | - | | |
|  | *Total Plan Implementation Expenses Not Paid by the Fund* | | - | |
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | - | | |
|  | **Total Disbursements for Plan Administrative Expenses Not Paid by the fund** | | - | - |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | - | - | |
| Line 16a | *Investment Expenses/CRIS Fees* | - | | |
| Line 16b | *Federal Tax Payments* | - | | |
|  | **Total Disbursements to Court/Other Not Paid by the Fund:** | | - | - |
| **Line 17** | **DC & State Tax Payments** | - | - | |
| **Line 18** | **No. of Claims:** | | | |
| Line 18a | *# of Claims Received This Reporting Period* | | | - |
| Line 18b | *# of Claims Received  Since Inception of Fund* | | | - |
| **Line 19** | **No. of Claimants / Investors:** | | | |
| Line 19a | *# of Claimants / Investors Paid This Reporting Period* | | | - |
| Line 19b | *# of Claimants / Investors Paid Since Inception of Fund* | | | - |

Receiver:

By: _(signature)_

Mary Margaret Hunt

(printed name)

Receiver

(title)

Date:  8-30-18