Peggy Hunt (Utah State Bar No. 6060)
**DORSEY & WHITNEY LLP**
111 South Main Street, 21st Floor
Salt Lake City, UT 84111-2176
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: hunt.peggy@dorsey.com

*Court-Appointed Receiver, Peggy Hunt*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff.<br><br>     V.<br><br>TRAFFIC MONSOON, LLC, a Utah Limited Liability Company, and CHARLES DAVID SCOVILLE, an individual,<br><br>                    Defendants. | **RECEIVER'S SEVENTH STATUS REPORT**<br>*(JULY 1, 2018 THROUGH JUNE 30, 2019)*<br><br>2:16-cv-00832-JNP<br><br>The Honorable Jill N. Parrish |

Peggy Hunt, the Court-appointed Receiver (the "Receiver") for Traffic Monsoon, LLC, and the assets of Charles David Scoville that were obtained directly or indirectly from Traffic Monsoon, hereby submits this *Seventh Status Report* (the "Status Report") for the period of July1, 2018 through June 30, 2019 (the "Reporting Period"). This Status Report is posted on the website for the receivership at www.trafficmonsoonreceivership.com (the "Receivership Website").

## TABLE OF CONTENTS

I.      Introduction ................................................................................................................1

II.     Summary of Key Events in This Case ........................................................................2

III.    Work Done By the Receiver and Her Professionals During the Reporting Period ............4

        A.      Identifying Investors and Investigating and Implementing the
                Infrastructure for a Claims Process ...........................................................4
        B.      The Claims Motion .....................................................................................6
        D.      Obtaining Court Authority for and Commencement of Litigation .........7
        E.      Investigating Unauthorized Manchester Flat Transfer .........................8
        F.      Communicating with Investors and Chargeback Responses ................9
        G.      Attending to General Administration of Tte Receivership Estate ........10

IV.     Standardized Fund Accounting Report ("SFAR") ....................................................11

V.      Administrative Expenses During the Reporting Period ...........................................11

        A.      Fee Applications Relevant to this Reporting Period ..............................12
        B.      Fees and Expenses Incurred During the Current Reporting Period ......13

VI.     Conclusion ................................................................................................................13

i

I.    **Introduction**

This Status Report includes a brief summary of key events in this case to date as set forth in Part II below.  Part III is a summary of the Receiver's work during the Reporting Period.  Part IV provides a financial summary of the Receivership Estate, and administrative expenses that have been incurred and paid during the Reporting Period are discussed in Part V.  All of the documents filed with the Court that are referenced in this Status Report are posted on the Receivership's website at www.trafficmonsoonreceivership.com (the "Receivership Website").

Please note that a more detailed discussion about the background in this case is set forth in the *Receiver's First Status Report (July 26, 2016 Through March 31, 2017)* (the "First Status Report"),[1] which incorporated the Receiver's *Declarations* outlining the initial findings of her investigation.[2] Since filing that First Status Report, the Receiver has continued to file Status Reports that also may be consulted for information about this case.  To date the following additional Status Reports have been filed:  *Receiver's Second Status Report (April 1, 2017 Through June 30, 2017)*;[3] *Receiver's Third Status Report (July 1, 2017 Through September 30, 2017)*[4]; *Receiver's Fourth Status Report (October 1, 2017 Through December 31, 2017)*;[5] *Receiver's Fifth Status Report (January 1, 2018 Through March 31, 2018)*;[6] and *Receiver's Sixth*

---

[1] Docket No. 91.

[2] *See Declaration of Receiver Peggy Hunt (Communications)* (the "Communications Declaration"), Docket No. 54; and the *Declaration of Peggy Hunt (Business Operations)* (the "Business Operations Declaration"), Docket No. 55.

[3] Docket No. 104.

[4] Docket No. 108.

[5] Docket No. 122.

[6] Docket No. 153.

*Status Report (April 1, 2018 Through June 30, 2018)* (the "Sixth Status Report")[7] (these Reports, together are the "Prior Status Reports").  All of the Prior Status Reports are posted on the Receivership Website.

## II.   Summary of Key Events in This Case

Parties interested in a detailed outline of the key events in the above-captioned case should refer to the Receiver's Prior Status Reports.  Among other things, the Prior Status Reports outline the facts giving rise to the commencement of this case by the United States Securities and Exchange Commission (the "SEC") against Traffic Monsoon, LLC ("Traffic Monsoon") and Charles David Scoville ("Scoville" and, together with Traffic Monsoon, the "Defendants"), the entry of the *Temporary Restraining Order and Order Freezing Assets*, and the entry of the *Order Appointing Receiver*.  They also give information about (a) the Receiver, her legal counsel, Dorsey & Whitney LLP ("Dorsey"), and her forensic and general accountants, Berkley Research Group ("BRG"); (b) the Receiver's ongoing investigation and estate administration; and (c) the Court's entry of a *Preliminary Injunction* and an *Amended Order Appointing Receiver* ("Amended Receivership Order").[8]

While the exact terms of the Preliminary Injunction should be reviewed, the Preliminary Injunction generally prohibits Scoville from operating Traffic Monsoon "or a business model substantially similar to Traffic Monsoon's sale of AdPacks."[9]  The Preliminary Injunction also

---

[7] Docket No. 162

[8] Docket Nos. 79 – 80.  *See* Docket No. 91 (First Status Report, at 3 (summary of the preliminary injunction hearing)).

[9] Docket No. 80 (Preliminary Injunction, p. 1).

imposes an asset freeze of all "assets, of whatever kind and wherever situated, of Traffic Monsoon, LLC and Charles D. Scoville that were obtained directly or indirectly from Traffic Monsoon, LLC. . . ."[10]  And, the Preliminary Injunction orders a stay of all litigation in any court against either or both of the Defendants.[11]  In conjunction with the Preliminary Injunction, the Court entered a *Memorandum Decision and Order*,[12] which includes significant factual findings and a comprehensive legal analysis that are summarized in part in the Receiver's First Status Report.  Important is that the Court concluded that a clear showing had been made that the SEC was likely to succeed in establishing that Traffic Monsoon was a Ponzi scheme.

Scoville has appealed the Amended Receivership Order and Preliminary Injunction (the "Appeal"), and this Appeal is ongoing.[13]  On January 24, 2019, the United States Court of Appeals for the Tenth Circuit issued an *Opinion* affirming the Amended Receivership Order and Preliminary Injunction.[14]  Scoville filed several requests to obtain an extension of time to file a

---

[10] Docket No. 80 (Preliminary Injunction, p. 2).

[11] Docket No. 80 (Preliminary Injunction, p. 3).

[12] Docket No. 79.

[13] *SEC v. Traffic Monsoon, LLC et al.*, Case No. 17-4059 (10th Cir.).  Copies of documents filed in the Tenth Circuit Appeal are on the Receivership Website under the tab titled "Scoville Appeal Documents."  Scoville also filed a "Second Appeal." *SEC v. Traffic Monsoon, LLC et al.*, Case No. 18-4038 (10th Cir.), appealing the *Second Amended Order Appointing Receiver* entered in this case, Docket No. 120, related to his authority to appeal and advance arguments on behalf of Traffic Monsoon in the Tenth Circuit Appeal. *See* Docket No. 124.  The Receiver filed a *Notice of Non-Participation* in the Second Appeal to comply with Tenth Circuit procedures.  The Tenth Circuit entered several *Orders* abating the Second Appeal, and in its decision in the Tenth Circuit Appeal, discussed below, the Tenth Circuit stated that it would instruct the parties to address the status of the Second Appeal upon issuance of the Mandate in the Tenth Circuit Appeal, which has not yet occurred.

[14] 10th Circuit Appeal, *Order* of January 24, 2019 (published at 913 F.3d 1204 (10th Cir. 2019)).

*Petition for a Writ of Certiorari* in the United States Supreme Court, all of which were granted. On June 21, 2019, Scoville filed his *Petition for a Writ of Certiorari*.[15]

III.   **Work Done By the Receiver and Her Professionals During the Reporting Period**

In light of the pending Appeal and direction from the Court, the Receiver has attempted to limit her work during the Reporting Period.  The Receiver has determined, however, that she must attend to certain matters which, in part, are discussed below and, therefore, she is filing this Status Report and will request a status conference with the Court.

A.   *Identifying Investors and Investigating and Implementing the Infrastructure for a Claims Process*

The primary necessary step of administering the Receivership Estate has been to identify those who participated in Traffic Monsoon.  Identifying participants has been difficult because Traffic Monsoon did not maintain independent financial or accounting records.  Thus, as discussed with the Court at a status conference held on February 8, 2018 (the "Status Conference") and in the Prior Status Reports, the Receiver's primary focus has been on recreating Traffic Monsoon's business records.  As described in Prior Status Reports, this has been an immense job.  At the Status Conference, the Receiver disclosed to the Court that BRG had completed the primary work on records recreation and that based on the records investors had been identified – both (i) those investors who had lost money by participating in Traffic Monsoon and, thus, have claims against the Receivership Estate, as well as (ii) those investors against whom the Receivership Estate has claims because they profited from their involvement in Traffic Monsoon.

---

[15] S. Ct. Case No. 18-1566.

Now that investors have been identified, the next step for administering the Receivership Estate is to obtain a Court-approved process for submitting and determining the validity of claims against the Receivership Estate. This process does not involve a disbursement of monies from the Receivership Estate, but rather is required as a preliminary step to allow the Receiver and the Court to identify the universe of claimants who may be entitled to a distribution from the Receivership Estate.

Accordingly, during the Reporting Period, the Receiver investigated the need for a claims process and options for the most time- and cost-efficient means of conducting a claims process. This included vetting professional noticing and claims agents to assist the Receiver with this process. After investigating, interviewing and negotiating terms with several claims agents, the Receiver filed an *Ex Parte Motion Seeking Authorization to Employ Noticing, Claims and Distribution Agent and Memorandum in Support* on September 14, 2018,[16] requesting authority to employ Epiq Corporate Restructuring, LLC ("Epiq") as noticing, claims and distribution agent for the Receivership Estate. On October 25, 2018, the Court entered an *Order* granting that Motion, both approving Epiq's *Services Agreement* and authorizing Epiq's employment effective as of September 14, 2018.[17]

Using the Receiver's research on claims procedures and methodologies, as well as the recreated records, the Receiver and her professionals thereafter worked with Epiq during the Reporting Period to formulate comprehensive claims procedures and the infrastructure necessary for giving notice of the claims process to over 100,000 potential claimants. In so doing, the

---

[16] Docket No. 166.

[17] Docket No. 170.

4836-1066-5629\1

Receiver has paid close attention to developing procedures that will be effective and cost-efficient.

B.     *The Claims Motion*

After setting up the infrastructure for a claims process as discussed above, the Receiver compiled the information and presented proposed procedures related to claims to the Court. Specifically, on March 1, 2019, the Receiver filed a *Motion Seeking Approval of (1) Claims Process; (2) Setting Claims Bar Date; and (3) Certain Notice Procedures* (the "Claims Motion").[18]

On March 21, 2019, the Court entered a *Remark* on the Docket in this case notifying the Receiver that it would not rule on the Claims Motion until Scoville's time to file a *Petition for a Writ of Certiorari* in the United States Supreme Court related to the above-described Appeal of its Amended Receivership Order and Preliminary Injunction had expired.[19]  The Court also noted that if such a Petition was filed by Scoville, it would further delay ruling on the Claims Motion. As noted in Part II above, on June 21, 2019, Scoville filed a *Petition for a Writ of Certiorari* with the Supreme Court.  After filing this Status Report, the Receiver intends to request a status conference with the Court to discuss the Claims Motion.

C.     *Investor Inquiries and Preserving the Receivership Estate*

The Receiver currently has in excess of $53 million on deposit in Receivership Estate accounts primarily being held for the benefit of those who lost money by investing with Traffic

---

[18] Docket No. 178.

[19] *See supra* at Part II.

4836-1066-5629\1

Monsoon.[20]  The Receiver is very cognizant from investors' continued inquiries that many investors have suffered real and, in some instances, substantial losses by participating in Traffic Monsoon's enterprise.  Investors want to know when a claims process will commence and when they will receive a distribution from the Receivership Estate.  The Receiver continues to inform investors that she requires Court approval to commence the claims process.

Given the fact that administration of the Receivership Estate is on hold during the Appeal and pending the commencement of a claims process, the Receiver has spent time during the Reporting Period preserving Receivership Estate assets.  For example, during the Reporting Period the Receiver has negotiated higher yield rates on deposits, which ultimately required her moving accounts to a new financial institution.[21]  The Receiver also is very conscious of the continued expense associated with, among other things, maintaining the infrastructure necessary for the Receivership Estate's administration, such as costs related to investor communications and hosting voluminous data necessary to conduct a claims process and assist with litigation.[22]  Whenever possible, the Receiver has worked to negotiate reduced fees in light of the status of the case.

D.      _Obtaining Court Authority for and Commencement of Litigation_

As noted in Part III.A above, the Receiver's identification of investors has resulted in her discovery of substantial claims against numerous investors who profited from their involvement

---

[20] _See_ Exh. D (SFAR Report for period ending June 30, 2019).

[21] _See, e.g,_ Exhs. A-D (SFAR Reports, Line 4 (Interest Income)).

[22] _See, e.g., id._ (SFAR Reports, Lines 10a(1)-Consultants (fees paid to Epiq for services related to investor communications, claims process consulting and data hosting)).

4836-1066-5629\1

in Traffic Monsoon, otherwise known as "Net Winners."  During the Reporting Period, the

Receiver and Dorsey have engaged in an investigation of these claims as well as research on the

procedural and legal bases for the claims.  Based thereon, the Receiver concluded that it is in the

best interest of the Receivership Estate to commence litigation related to these claims.

Accordingly, during the Reporting Period, the Receiver prepared and filed an *Ex Parte Motion*

*Seeking Authorization to Commence Legal Proceedings and Memorandum in Support*.[23]  On

March 21, 2019, the Court entered an *Order* granting this Motion, thus authorizing the Receiver

to commence legal proceedings related to claims held by the Receivership Estate.[24]

Thereafter, on April 22, 2019, the Receiver filed a *Class Action Complaint* in this Court

against 11 named Net Winners who profited most from Traffic Monsoon (the "Named

Defendants") and a proposed class of approximately 4,819 other Net Winners.[25]  The two Named

Defendants who reside in the United States have been served, as have five of the seven Named

Defendants in the United Kingdom and the one Named Defendant in Canada.  The Receiver is in

the process of serving the two other Named Defendants in the United Kingdom, the one Named

Defendant in Poland, and the one Named Defendant in Italy according to the Hague Service

Convention.

   E.    *Investigating Unauthorized Manchester Flat Transfer*

One of the assets of the Receivership Estate is an interest in a flat located in Manchester,

United Kingdom, and a related parking space that Scoville purchased in August 2015 using

---

[23] Docket No. 179.

[24] Docket No. 181.

[25] *Hunt v. Aslam*, Case No. 2:19-cv-275 (D. Utah).

funds obtained from Traffic Monsoon (the "<u>Manchester Flat</u>").  In the Sixth Status Report, the Receiver outlined facts she has discovered about an unauthorized transfer of the Manchester Flat, and her investigation of that unauthorized transfer.  During the Reporting Period, the Receiver has continued to investigate this issue.  Through Dorsey, the Receiver has made several requests for documents and information from the UK law firm that handled the sale of the Manchester Flat. While some documents were produced consensually in response to those requests, after Dorsey had obtained a letter from Scoville authorizing the release of information related to the sale of the Manchester Flat, the UK law firm has recently informed Dorsey that it would not produce the following documents without a court order: (i) documents showing the identity of the party who purported to act on behalf of Scoville in authorizing and effecting the sale of the Manchester Flat (i.e., "Know Your Customer" or "KYC" documents); and (ii) documents showing how the sale proceeds were disbursed upon closing of sale, including details concerning the account to which the sale proceeds transferred and the beneficiary of that account. Therefore, the Receiver intends to seek a court order in the UK requiring the UK law firm to produce the requested documents.

   F. <u>*Communicating with Investors and Chargeback Responses*</u>

  The Receiver, directly and through Dorsey and Epiq, has spent time communicating with investors during the Reporting Period.  A detailed summary of efforts in this regard is included in the Receiver's Communications Declaration, and in Prior Status Reports.  Work through the "<u>Receivership Website</u>," the "<u>Receivership Email Address</u>" and "<u>Call Center</u>" (as defined in Prior Status Reports) is ongoing.  Persons who communicate with the Receiver are typically requesting information about how to submit claims and when they will receive their money back.

In addition to keeping investors apprised of the status of the case, the Receiver summarizes and uses information obtained from these interactions to assist in investor identification.

The Receiver also continues to communicate with investor groups in various contexts. Such interactions include ongoing discussions with counsel for a group of investors who claim that their money was invested with Traffic Monsoon through a person who is now involved in a security enforcement action outside of the United States.

Finally, the Receiver has access to Traffic Monsoon's PayPal, Payza and Solid Trust Pay accounts (as defined in Prior Status Reports), primarily for the purpose of responding to numerous "chargeback" requests made by investors.[26]  This work has continued during the Reporting Period.

G.       _Attending to General Administration of the Receivership Estate_

During the Reporting Period, the Receiver, Dorsey, and BRG have attended to numerous matters related to the administration of the Receivership Estate.  These tasks include, but are not limited to, monitoring and managing bank accounts; following accounting protocols; preparing SFARs (as defined below); managing the Receivership Website and information provided through the Call Center; evaluating and paying costs related to administration; evaluating issues related to compliance with applicable tax laws; filing papers required by applicable tax laws; interfacing with financial account institutions; coordinating with governmental entities as requested; and, when necessary, responding to statements made or inquires by Scoville and/or his counsel.

---

[26] _See_ Docket No. 91 (First Status Report, at 12 (discussing chargeback issues)).

**IV.**   **Standardized Fund Accounting Report ("SFAR")**

A summary of the financial condition of the Receivership Estate for each quarter of the Reporting Period is set forth in the SFARs attached hereto as Exhibits A-D.  At the end of the Reporting Period, the Receivership Estate had funds in the total amount of $53,280,963.36.[27] Interest income has totaled $738,989.09,[28] and expenses have totaled $388,810.86.[29]

**V.**   **Administrative Expenses During the Reporting Period**

The fees and out of pocket expenses of the Receiver, Dorsey and BRG must be approved by the Court prior to payment.  The Court has entered an *Order Establishing Administrative Expense Payment Procedures* (the *"Fee Procedures Order"*),[30] setting forth procedures for the request and payment of professional fees and expenses in this case.  Among other things, the Fee Procedures Order authorizes the Receiver and her professionals to file monthly "Notices of Request for Payment."  Absent objection in accordance with the Fee Procedures Order, the Receiver may pay 80% of fees and 100% of out-of-pocket expenses requested in a Notice of Request for Payment.  All monthly disbursements and any other requests for fees and expenses not requested pursuant to a Notice for Request for Payment are subject to Court approval through "Fee Applications" filed quarterly.

---

[27] *See* Exh. D (SFAR for period ending June 30, 2019).

[28] *See* Exhs. A-D (Lines 4 recording interest).

[29] *Id.* (Line10 recording disbursements).

[30]  Docket No. 101.

4836-1066-5629\1

A.      _Fee Applications Relevant to this Reporting Period_

On June 21, 2018, the Receiver filed a _Fourth Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered From October 1, 2017 Through December 31, 2017_ (the "Fourth Application").[31]  The Receiver also filed on June 25, 2018 a _Fifth Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered From January 1, 2018 Through March 31, 2018_ (the "Fifth Application").[32]  On July 13, 2018, the Court noted on the Docket that it had conducted a preliminary review of the Fourth and Fifth Applications, and requested information about some of the legal fees billed.  On August 8, 2018, the Receiver filed a _Response_ to the Court's request for information, and pursuant thereto, counsel agreed to reduce its fees in the total amount of $3,750.50.[33]  On August 31, 2018, the Court entered an _Order_ granting the Fourth Application as amended by the Response,[34] and an _Order_ granting the Fifth Application as amended by the Response.[35]  The fees and expenses allowed by those Orders have been paid.[36]

On September 12, 2018, the Receiver filed a _Sixth Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered From April 1, 2018 Through June 30, 2018_ (the "Sixth Application").[37]  On October 22, 2018, the Court entered an _Order_ approving the

---

[31] Docket No. 152.

[32] Docket No. 154.

[33] Docket No. 161.

[34] Docket No. 163.

[35] Docket No. 164.

[36] _See_ Exh. A (SFAR for the period ending September 30, 2018).

[37] Docket No. 165.

4836-1066-5629\1

Sixth Application, and authorizing the Receiver to pay the fees and expenses requested.[38]  These fees have been paid and all out-of-pocket expenses outlined in the Sixth Application have been reimbursed.[39]

        B.     *Fees and Expenses Incurred During the Current Reporting Period*

The Receiver intends to file a *Seventh Interim Fee Application* for this Reporting Period shortly after the filing of this Status Report, requesting fees and expenses for June 1, 2018 through June 30, 2019.  That Application will outline the total hours spent by the Receiver, Dorsey and BRG, the fees requests for their services, and reimbursement of out-of-pocket expenses incurred during the Reporting Period.  None of these fees and expenses have been paid to date, other than those authorized to be paid under the Fee Procedures Order.  Specifically, the Receiver filed Notices of Request for Payment for July, August, September and October 2018,[40] and no objections to those Notices were filed.  Accordingly, 80% of the fees outlined in those Notices were paid, and 100% of the expenses outlined were reimbursed as authorized by the Fee Procedure Order.[41]

## VI.   **Conclusion**

The Receiver currently holds over $53 million, and is anxious to distribute these funds to parties with claims against the Receivership Estate.  While the Receiver understands that distributions cannot occur before the Appeal is finally resolved, the Receiver believes that

---

[38] Docket No. 169.

[39] *See* Exh. B (SFAR for the period ending December 31, 2018).

[40] Docket Nos. 167, 168, 171, 172.

[41] *See* Exhibit B (SFAR for the period ending December 31, 2018).

commencing a claims process (where claims are submitted, analyzed, and allowed/disallowed) is

of paramount importance in this case so that, ultimately, these funds can be distributed to

claimants as soon as possible after the Appeal is resolved.

   Dated this 19th day of July, 2019.

         **RECEIVER**


          */s/ Peggy Hunt*
         *Peggy Hunt, Receiver*

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2019, I caused the foregoing *Seventh Status Report (July 1, 2018 Through June 30, 2019)* to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record in this case.

*/s/ Candy Long*

15

4836-1066-5629\1

# EXHIBIT A

**STANDARDIZED FUND ACCOUNTING REPORT for Traffic Monsoon, LLC Receivership - Cash Basis**
Receivership; Civil Court Case No. 2:16-00832
REPORTING PERIOD 07/01/2018 TO 09/30/2018

| FUND ACCOUNTING (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 07/01/18) | | | $52,929,094.69 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | **Business Income** | - | - | |
| Line 3 | **Cash and Securities** | - | - | |
| Line 4 | **Interest/Dividend Income** | $99,874.84 | $99,874.84 | |
| Line 5 | **Business Asset Liquidation** | - | - | |
| Line 6 | **Personal Asset Liquidation** | - | - | |
| Line 7 | **Third-Party Litigation** | - | - | |
| Line 8 | **Miscellaneous - Other** | - | - | |
| | **Total Funds Available (Lines 1-8):** | | $99,874.84 | $53,028,969.53 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | **Disbursements to Senior Secured Lenders/Investors** | - | - | |
| Line 10 | **Disbursements for Receivership Operations** | | $177,202.98 | |
| *Line 10* | *Internal Loans* | - | | |
| *Line 10a* | *Disbursements to Receiver or Other Professionals* | $177,202.98 | | |
| | 1. Fees: | - | | |
| | **Receiver** | $24,074.46 | | |
| | **Legal Advisers** | $83,477.54 | | |
| | **Accountants** | $66,166.02 | | |
| | **Consultants** | $3,484.96 | | |
| *Line 10b* | *Business Asset Expenses* | - | | |
| *Line 10c* | *Personal Asset Expenses* | - | | |
| *Line 10d* | *Hospital Settlements & Investment Expenses* | - | | |
| *Line 10e* | *Third-Party Litigation Expenses* | - | | |
| | 1. Attorney Fees | - | | |
| | 2. Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | - | | |
| *Line 10f* | *Tax Administrator Fees and Bonds* | - | | |
| *Line 10g* | *Federal and State Tax Payments* | - | | |
| | **Total Disbursements for Receivership Operations** | - | $177,202.98 | $177,202.98 |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | - | - | |
| *Line 11* | *Distribution Plan Development Expenses* | - | | |
| *Line 11a* | *Distribution Plan Development Expenses:* | - | | |
| | 1. Fees: | - | | |
| | **Fund Administrator** | - | | |
| | **Independent Distribution Consultant (IDC)** | - | | |
| | **Receiver** | - | | |
| | **Legal Advisers** | - | | |
| | **Accountants** | - | | |
| | **Consultants** | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | - | | |
| *Line 11b* | *Distribution Plan Implementation Expenses:* | - | | |
| | 1. Fees: | - | | |
| | **Fund Administrator** | - | | |
| | **IDC** | - | | |

|  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
|  | Receiver | - |  |  |
|  | Legal Advisers | - |  |  |
|  | Accountants | - |  |  |
|  | Consultants | - |  |  |
|  | 2. Administrative Expenses | - |  |  |
|  | 3. Investor Identification: | - |  |  |
|  | Notice/Publishing Approved Plan | - |  |  |
|  | Claimant Identification | - |  |  |
|  | Claims Processing | - |  |  |
|  | Web Site Maintenance/Call Center | - |  |  |
|  | 4. Fund Administrator Bond | - |  |  |
|  | 5. Miscellaneous | - |  |  |
|  | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - |  |  |
|  | *Total Plan Implementation Expenses* |  | - |  |
|  | **Total Disbursements for Distribution Expenses Paid by the Fund** |  | - | - |
| Line 12 | **Disbursements to Court/Other:** |  |  |  |
| Line 12 | *Disbursements to Court* |  |  |  |
| Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | - |  |  |
| Line 12b | *Federal Tax Payments* | - |  |  |
|  | **Total Disbursements to Court/Other:** |  | - |  |
|  | **Total Funds Disbursed (Lines 9-12):** |  |  | $177,202.98 |
| Line 13 | **Ending Balance (As of 09/30/18):** |  |  | $52,851,766.55 |
| Line 14 | **Ending Balance of Fund - Net Assets:** |  |  |  |
| Line 14a | *Cash & Cash Equivalents* |  |  | $52,851,766.55 |
| Line 14b | *Investments* |  |  |  |
| Line 14c | *Other Assets or Uncleared Funds* |  |  | - |
|  | **Total Ending Balance of Fund - Net Assets** |  |  | $52,851,766.55 |

|  | **OTHER SUPPLEMENTAL INFORMATION:** | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 15 | **Report of Items NOT To Be Paid by the Fund:** |  |  |  |
|  | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | - | - |  |
| Line 15 | *Disbursements for Plan Administration Expenses* |  |  |  |
| Line 15a | *Plan Development Expenses Not Paid by the Fund:* | - |  |  |
|  | 1. Fees: | - |  |  |
|  | Fund Administrator | - |  |  |
|  | IDC | - |  |  |
|  | Receiver | - |  |  |
|  | Legal Advisers | - |  |  |
|  | Accountants | - |  |  |
|  | Consultants | - |  |  |
|  | 2. Administrative Expenses | - |  |  |
|  | 3. Approved Living Allowance | - |  |  |
|  | 4. Miscellaneous | - |  |  |
|  | *Total Plan Development Expenses Not Paid by the Fund* |  | - |  |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | - |  |  |
|  | 1. Fees: | - |  |  |
|  | Fund Administrator | - |  |  |
|  | IDC | - |  |  |
|  | Receiver | - |  |  |
|  | Legal Advisers | - |  |  |
|  | Accountants | - |  |  |

| | | | | |
|---|---|---|---|---|
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. FAIR Reporting Expenses | - | | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | - | |
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | - | | |
| | **Total Disbursements for Plan Administrative Expenses Not Paid by the fund** | | - | - |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** | - | - | |
| Line 16a | *Investment Expenses/CRIS Fees* | - | | |
| Line 16b | *Federal Tax Payments* | - | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund:** | | - | |
| Line 17 | **DC & State Tax Payments** | - | - | |
| Line 18 | **No. of Claims:** | | | - |
| Line 18a | *# of Claims Received This Reporting Period* | | | - |
| Line 18b | *# of Claims Received Since Inception of Fund* | | | - |
| Line 19 | **No. of Claimants / Investors:** | | | - |
| Line 19a | *# of Claimants / Investors Paid This Reporting Period* | | | - |
| Line 19b | *# of Claimants / Investors Paid Since Inception of Fund* | | | - |

Receiver:

By: _[signature]_

(signature)

Mary Margaret Hunt

(printed name)

Receiver

(title)

Date: 11/2/18

# EXHIBIT B

**STANDARDIZED FUND ACCOUNTING REPORT for Traffic Monsoon, LLC Receivership - Cash Basis**

Receivership; Civil Court Case No. 2:16-00832
REPORTING PERIOD 10/01/2018 TO 12/31/2018

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 10/01/18) | | | 52,851,766.55 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | - | |
| Line 3 | Cash and Securities | - | - | |
| Line 4 | Interest/Dividend Income | 188,314.86 | 188,314.86 | |
| Line 5 | Business Asset Liquidation | - | - | |
| Line 6 | Personal Asset Liquidation | - | - | |
| Line 7 | Third-Party Litigation | - | - | |
| Line 8 | Miscellaneous-Other | - | - | |
| | Total Funds Available (Lines 1-8): | | 188,314.86 | 53,040,081.41 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Senior Secured Lenders/Investors | - | - | |
| Line 10 | Disbursements for Receivership Operations | | 92,510.10 | |
| Line 10 | *Internal Loans* | - | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | 92,510.10 | | |
| | 1. Fees: | - | | |
| | Receiver | 21,607.29 | | |
| | Legal Advisors | 49,030.19 | | |
| | Accountants | 19,241.66 | | |
| | Consultants | 2,630.96 | | |
| Line 10b | Business Asset Expenses | - | | |
| Line 10c | Personal Asset Expenses | - | | |
| Line 10d | Hospital Settlements & Investment Expenses | - | | |
| Line 10e | Third Party Litigation Expenses | - | | |
| | 1. Attorney Fees | - | | |
| | 2 Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | | - | |
| Line 10f | *Tax Administrator Fees and Bonds* | - | | |
| Line 10g | *Federal and State Tax Payments* | - | | |
| | Total Disbursements for Receivership Operations | | 92,510.10 | 92,510.10 |
| Line 11 | Disbursments for Distribution Expenses Paid by the Fund: | - | - | |
| Line 11 | *Distribution Plan Development Expenses* | - | | |
| Line 11a | *Distribution Plan Development Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | | - | |
| Line 11b | *Distribution Plan Implementation Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - | | |
| | *Total Plan Implementation Expenses* | | - | |
| | **Total Disbursement for Distribution Expenses Paid by the Fund** | | - | - |
| Line 12 | **Disbursements to Court/Other:** | | - | |
| Line 12 | Disbursements to Court | - | | |
| | *Investment Expenses/Court Registry Investment System (CRIS)* | | | |
| Line 12a | *Fees* | - | | |
| Line 12b | *Federal Tax Payments* | - | | |
| | **Total Disbursements to Court/Other:** | | - | - |
| | **Total Funds Disbursed (Lines 9-12)** | | | 92,510.10 |
| Line 13 | **Ending Balance (As of 12/31/18)** | | | 52,947,571.31 |
| Line 14 | **Ending Balance of Fund - Net Assets:** | | | |
| Line 14a | *Cash & Cash Equivalents* | | | 52,947,571.31 |
| Line 14b | *Investments* | | | - |
| Line 14c | *Other Assets or Uncleared Funds* | | | - |
| | **Total Ending Balance of Fund - Net Assets** | | | 52,947,571.31 |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | **OTHER SUPPLEMENTAL INFORMATION:** | | | |
| | Report of Items NOT to be paid by the Fund: | | | |
| | **Disbursements of Plan Administration Expenses Not Paid by the Fund:** | | | |
| Line 15 | | - | - | |
| Line 15 | Disbursements for Plan Administration Expenses | - | | |
| Line 15a | *Plan Development Expenses Not Paid bu the Fund:* | - | | |
| | 1. Fees | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | - | |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. FAIR Reporting Expenses | - | | |
| | *Total Plan Implementation Expesnses Not Paid by the Fund* | | - | |

| | | | | |
|---|---|---|---|---|
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | - | | |
| | Total Disbursements for Plan Administrative Expenses Not Paid by the fund | | - | - |
| Line 16 | Disbursements to Court/Other Not Paid by the Fund: | - | - | |
| Line 16a | *Investment Expenses/CRIS Fees* | - | | |
| Line 16b | *Federal Tax Payments* | - | | |
| | Total Disbursements to Court/Other Not Paid by the Fund | | - | - |
| Line 17 | DC & State Tax Payments | - | - | |
| | | | | |
| Line 18 | No. of Claims | | | |
| Line 18a | # of Claims Received This Reporting Period | | | - |
| Line 18 b | # of Claims Received Since Inception of Fund | | | - |
| Line 19 | No. of Claimants/Investors: | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | - |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | | | - |

Receiver:

By: _____
(signature)

Mary Margeret Hunt
(printed Name)

Receiver
(title)

Date:   7-19-19

# EXHIBIT C

**STANDARDIZED FUND ACCOUNTING REPORT for Traffic Monsoon, LLC Receivership - Cash Basis**
Receivership; Civil Court Case No. 2:16-00832
REPORTING PERIOD 01/01/2019 TO 03/31/2019

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 10/01/18) | | | 52,947,571.31 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | - | |
| Line 3 | Cash and Securities | - | - | |
| Line 4 | Interest/Dividend Income | 220,044.61 | 220,044.61 | |
| Line 5 | Business Asset Liquidation | - | - | |
| Line 6 | Personal Asset Liquidation | - | - | |
| Line 7 | Third-Party Litigation | - | - | |
| Line 8 | Miscellaneous-Other | - | - | |
| | Total Funds Available (Lines 1-8) | | 220,044.61 | 53,167,615.92 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Senior Secured Lenders/Investors | - | - | |
| Line 10 | Disbursements for Receivership Operations | | 117,407.34 | |
| Line 10 | *Internal Loans* | - | | |
| Line10a | *Disbursements to Receiver or Other Professionals* | 117,407.34 | | |
| | 1. Fees: | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | , | |
| | Consultants | 117,407.34 | | |
| Line 10b | Business Asset Expenses | - | | |
| Line 10c | Personal Asset Expenses | - | | |
| Line 10d | Hospital Settlements & Investment Expenses | - | | |
| Line 10e | Third Party Litigation Expenses | - | | |
| | 1. Attorney Fees | - | | |
| | 2 Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | | - | |
| Line 10f | *Tax Administrator Fees and Bonds* | - | | |
| Line 10g | *Federal and State Tax Payments* | - | | |
| | Total Disbursements for Receivership Operations | | 117,407.34 | 117,407.34 |
| Line 11 | Disbursements for Distribution Expenses Paid by the Fund: | - | - | |
| Line 11 | *Distribution Plan Development Expenses* | - | | |
| Line 11a | *Distribution Plan Development Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | | - | |
| Line 11b | *Distribution Plan Implementation Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - | | |
| | *Total Plan Implementation Expenses* | | - | |
| | **Total Disbursement for Distribution Expenses Paid by the Fund** | | - | - |
| Line 12 | **Disbursements to Court/Other:** | | - | |
| Line 12 | *Disbursements to Court* | - | | |
| | *Investment Expenses/Court Registry Investment System (CRIS)* | | | |
| Line 12a | *Fees* | - | | |
| Line 12b | *Federal Tax Payments* | - | | |
| | **Total Disbursements to Court/Other:** | | - | - |
| | **Total Funds Disbursed (Lines 9-12)** | | | 117,407.34 |
| Line 13 | **Ending Balance (As of 12/31/18)** | | | 53,050,208.58 |
| Line 14 | **Ending Balance of Fund - Net Assets:** | | | |
| Line 14a | *Cash & Cash Equivalents* | | | 53,050,208.58 |
| Line 14b | *Investments* | | | - |
| Line 14c | *Other Assets or Uncleared Funds* | | | - |
| | **Total Ending Balance of Fund - Net Assets** | | | 53,050,208.58 |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | **OTHER SUPPLEMENTAL INFORMATION:** | | | |
| | **Report of Items NOT to be paid by the Fund:** | | | |
| | **Disbursements of Plan Administration Expenses Not Paid by the Fund:** | | | |
| Line 15 | | - | - | |
| Line 15 | *Disbursements for Plan Administration Expenses* | - | | |
| Line 15a | *Plan Development Expenses Not Paid bu the Fund:* | - | | |
| | 1. Fees | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | - | |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. FAIR Reporting Expenses | - | | |
| | *Total Plan Implementation Expesnses Not Paid by the Fund* | | - | |

| | | | |
|---|---|---|---|
| Line 15c | Tax Administrator Fees & Bonds Not Paid by the Fund | - | |
| | Total Disbursements for Plan Administrative Expenses Not Paid by the fund | | - | - |
| Line 16 | Disbursements to Court/Other Not Paid by the Fund: | - | - |
| Line 16a | Investment Expenses/CRIS Fees | - | |
| Line 16b | Federal Tax Payments | - | |
| | Total Disbursements to Court/Other Not Paid by the Fund | - | - |
| Line 17 | DC & State Tax Payments | - | - |
| | | | |
| Line 18 | No. of Claims | | |
| Line 18a | # of Claims Received This Reporting Period | | - |
| Line 18 b | # of Claims Received Since Inception of Fund | | - |
| Line 19 | No. of Claimants/Investors: | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | - |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | | - |

Receiver:

By: _____
(signature)

Mary Margeret Hunt
(printed Name)

Receiver
(title)

Date:  7 - 19 - 19

# EXHIBIT D

**STANDARDIZED FUND ACCOUNTING REPORT for Traffic Monsoon, LLC Receivership - Cash Basis**

Receivership; Civil Court Case No. 2:16-00832

REPORTING PERIOD 04/01/2019 TO 06/30/2019

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 01/01/19) | | | 53,050,208.58 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | - | |
| Line 3 | Cash and Securities | - | - | |
| Line 4 | Interest/Dividend Income | 230,754.78 | 230,754.78 | |
| Line 5 | Business Asset Liquidation | - | - | |
| Line 6 | Personal Asset Liquidation | - | - | |
| Line 7 | Third-Party Litigation | - | - | |
| Line 8 | Miscellaneous-Other | - | - | |
| | **Total Funds Available (Lines 1-8):** | | 230,754.78 | 53,280,963.36 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Senior Secured Lenders/Investors | - | - | |
| Line 10 | Disbursements for Receivership Operations | | 1,690.44 | |
| *Line 10* | *Internal Loans* | - | | |
| *Line 10a* | *Disbursements to Receiver or Other Professionals* | 1,690.44 | | |
| | 1. Fees: | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | 1,660.74 | | |
| *Line 10b* | Business Asset Expenses | 29.70 | | |
| *Line 10c* | Personal Asset Expenses | - | | |
| *Line 10d* | Hospital Settlements & Investment Expenses | - | | |
| *Line 10e* | Third Party Litigation Expenses | - | | |
| | 1. Attorney Fees | - | | |
| | 2 Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | | - | |
| *Line 10f* | *Tax Administrator Fees and Bonds* | - | | |
| *Line 10g* | *Federal and State Tax Payments* | - | | |
| | **Total Disbursements for Receivership Operations** | | 1,690.44 | 1,690.44 |
| Line 11 | Disbursements for Distribution Expenses Paid by the Fund: | - | - | |
| *Line 11* | *Distribution Plan Development Expenses* | - | | |
| *Line 11a* | *Distribution Plan Development Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | | - | |
| *Line 11b* | *Distribution Plan Implementation Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - | | |
| | *Total Plan Implementation Expenses* | | - | |
| | **Total Disbursement for Distribution Expenses Paid by the Fund** | | - | - |
| Line 12 | **Disbursements to Court/Other:** | | - | |
| Line 12 | *Disbursements to Court* | - | | |
| | *Investment Expenses/Court Registry Investment System (CRIS)* | | | |
| Line 12a | *Fees* | - | | |
| Line 12b | *Federal Tax Payments* | | | |
| | **Total Disbursements to Court/Other:** | | - | - |
| | **Total Funds Disbursed (Lines 9-12)** | | | 1,690.44 |
| Line 13 | **Ending Balance (As of 12/31/18)** | | | 53,279,272.92 |
| Line 14 | **Ending Balance of Fund - Net Assets:** | | | |
| Line 14a | *Cash & Cash Equivalents* | | | 53,279,272.92 |
| Line 14b | *Investments* | | | - |
| Line 14c | *Other Assets or Uncleared Funds* | | | - |
| | **Total Ending Balance of Fund - Net Assets** | | | 53,279,272.92 |

| | OTHER SUPPLEMENTAL INFORMATION: | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | **Report of Items NOT to be paid by the Fund:** | | | |
| | **Disbursements of Plan Administration Expenses Not Paid by the Fund:** | | | |
| Line 15 | | - | - | |
| Line 15 | *Disbursements for Plan Administration Expenses* | - | | |
| Line 15a | *Plan Development Expenses Not Paid bu the Fund:* | - | | |
| | 1. Fees | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | - | |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. FAIR Reporting Expenses | - | | |
| | *Total Plan Implementation Expesnes Not Paid by the Fund* | | - | |

| | | | | |
|---|---|---|---|---|
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | - | | |
| | **Total Disbursements for Plan Administrative Expenses Not Paid by the fund** | | - | - |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** | - | - | |
| Line 16a | *Investment Expenses/CRIS Fees* | - | | |
| Line 16b | *Federal Tax Payments* | - | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund** | | - | - |
| Line 17 | **DC & State Tax Payments** | - | - | |
| | | | | |
| Line 18 | No. of Claims | | | |
| Line 18a | # of Claims Received This Reporting Period | | | - |
| Line 18 b | # of Claims Received Since Inception of Fund | | | - |
| Line 19 | No. of Claimants/Investors: | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | - |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | | | - |

Receiver:

By: _____
(signature)

Mary Margeret Hunt
(printed Name)

Receiver
(title)

Date:   7-19-19