Peggy Hunt (Utah State Bar No. 6060)
Michael Thomson (Utah State Bar No. 9707)
John J. Wiest (Utah State Bar No. 15767)
**DORSEY & WHITNEY LLP**
111 South Main Street, 21st Floor
Salt Lake City, UT  84111-2176
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email:  hunt.peggy@dorsey.com
        thomson.michael@dorsey.com
        wiest.john@dorsey.com

*Attorneys for Court-Appointed Receiver Peggy Hunt*

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>     Plaintiff.<br><br> v.<br><br>TRAFFIC MONSOON, LLC, a Utah Limited Liability Company, and CHARLES DAVID SCOVILLE, an individual,<br><br>     Defendants. | **RECEIVER'S OBJECTION TO DEFENDANT CHARLES D. SCOVILLE'S MOTION FOR ATTORNEYS' FEES**<br><br><br>2:16-cv-00832-JNP<br><br>The Honorable Jill N. Parrish |

Peggy Hunt, as Court-appointed Receiver (the "Receiver") for Traffic Monsoon, LLC

("Traffic Monsoon"), and all assets of Charles D. Scoville obtained directly or indirectly from

Traffic Monsoon (the "Receivership Estate"), by and through counsel, hereby objects to the

*Motion for Attorneys' Fees* [Docket No. 197] (the "Request") filed by defendant Charles D.

Scoville ("Scoville"). This Objection is supported by the Receiver's Declaration (the "Hunt

Declaration") which is filed concurrently herewith, and for the reasons set forth in the Hunt

1

4818-9924-8290\12

Declaration and below, the Receiver maintains that the Request should be denied. In further support hereof, the Receiver states as follows:

## I.      INTRODUCTION

On February 16, 2018, after receiving a proposed order which had been stipulated to by counsel for the Receiver, the Securities and Exchange Commission, and Scoville[1], this Court ordered, *inter alia*, that: "Scoville and his counsel shall have no right to payment or reimbursement from the Receivership [Estate] for any fees, expenses, or costs incurred in this action or any appeal therefrom." *Second Amended Order Appointing Receiver* [Docket No. 120] ("Receivership Order"), ¶ 5. Scoville has incurred a quarter million dollars in appellate attorneys' fees, and now asks that he be allowed to pay those fees with assets of the Receivership Estate to the detriment of the victims of Scoville's Ponzi scheme. Even if the Receivership Order were modified, the ultimate question for the Court is who has a better claim on these funds, Scoville's appellate attorneys or Scoville's victims? The only equitable answer is that Scoville's victims have the better claim, and therefore the Court should deny the Request.

## II.     RELEVANT FACTS

1.      The Court appointed the Receiver for the purpose of "marshaling and preserving" the Receivership Estate. Receivership Order, ¶ 1.

2.      As of September 11, 2019, bank accounts for the Receivership Estate have deposits totaling approximately $53.1 million. Hunt Declaration, ¶ 2.

3.      Based on her investigation of Traffic Monsoon's pre-receivership operations, the Receiver estimates that over 101,840 Traffic Monsoon investors incurred losses and that those losses exceed $114 million. Accordingly, the Receiver does not have sufficient funds to make whole the Traffic Monsoon investors who lost money. *Id.* at ¶ 3.

---

[1] On the morning of February 16, 2018, a stipulated proposed order was submitted to the Court. The Receivership Order was entered by the Court later that afternoon, and Paragraph 5 of the Receivership Order incorporates the key issues which were stipulated to by the parties in the proposed order, including the issue of attorneys' fees.

4.      On March 30, 2017, after an evidentiary hearing, the Court issued a *Preliminary Injunction* [Docket No. 80] (the "Preliminary Injunction") and *Memorandum Decision and Order Granting a Preliminary Injunction and Denying the Defendants' Motion to Set Aside the Receivership* [Docket No. 79] (the "Memorandum Decision"), finding, among other things, that Traffic Monsoon operated as a Ponzi Scheme. *See Memorandum Decision*, p. 34, 42.

5.      Scoville appealed the Preliminary Injunction, Memorandum Decision, and Receivership Order to the United States Court of Appeals for the Tenth Circuit. Case No. 17-4059, 10th Cir. (2017) (the "Tenth Circuit Appeal").

6.      As Scoville states in the Request, the attorneys primarily responsible for drafting Scoville's briefing in the Tenth Circuit Appeal were Micah Echols and Tom Stewart of Marquis Aurbach Coffing. *Request*, p. 6, Ex. A.

7.      The Receiver has been informed that Mr. Echols is Scoville's cousin. Hunt Declaration, ¶ 4.

8.      On February 16, 2018, prior to oral argument in the Tenth Circuit Appeal, this Court ordered, based on the parties' stipulated order: "Scoville and his counsel shall have no right to payment or reimbursement from the Receivership [Estate] for any fees, expenses, or costs incurred in this action or any appeal therefrom." Receivership Order, ¶ 5.

9.      On January 24, 2019, the Tenth Circuit filed its *Opinion* affirming the Receivership Order and Preliminary Injunction, and finding, among other things, "that the SEC has asserted sufficient evidence to make it likely that the SEC will be able to prove that Defendants were operating a fraudulent scheme—a Ponzi scheme—selling Adpacks and that scheme violated the antifraud statutes invoked in this litigation." *SEC v. Scoville*, No. 17-4059, 2019 U.S. App. LEXIS 2316, at *2-3 (10th Cir. Jan. 24, 2019).

10.     On June 21, 2019, Scoville filed a *Petition for Writ of Certiorari* in the United States Supreme Court, Case No. 18-1566, asking the Supreme Court to review the Tenth

Circuit's decision (the "<u>Supreme Court Petition</u>"; together with the Tenth Circuit Appeal, the "<u>Appeals</u>").

11.     The Appeals have been detrimental to the Receivership Estate inasmuch as they have delayed the Receiver's administration of the Receivership Estate for the benefit of those who incurred losses. Hunt Declaration, ¶ 5.

12.     The law firm of Williams & Connolly LLP ("<u>Williams & Connolly</u>") represented Scoville in filing the Supreme Court Petition. *Request*, p. 6.

13.     The Supreme Court Petition does not challenge this Court's determination that Traffic Monsoon was operated as a Ponzi scheme. Rather, the issue raised before the Supreme Court is limited to the Commission's extraterritorial enforcement of the securities laws of the United States under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010).

14.     On August 22, 2019, Scoville filed the Request, seeking $188,397.31 in fees and costs for Marquis Aurbach Coffing related to the Appeals, and $81,695.91 in fees and costs for Williams & Connolly related to the Supreme Court Petition.

## III.   ARGUMENT

The Court should exercise its discretion to deny the Request for the basic reason that Scoville has not shown the equities weigh in favor of taking money from the Receivership Estate to compensate his attorneys rather than the over 101,840 victims of Traffic Monsoon. In fact, the equities weigh against the Request; the victims of Scoville's Ponzi scheme should not have to pay for appellate lawyers to argue a narrow issue of securities law which, even if decided in Scoville's favor, will not affect this Court's finding that Scoville defrauded these victims of over one hundred million dollars.

Whether to release receivership funds to pay Scoville's attorneys is within the Court's discretion. *FTC v. Elite IT Partners, Inc.*, No. 2:19-cv-125, 2019 U.S. Dist. LEXIS 63434, at *2-3 (D. Utah Apr. 5, 2019); *CFTC v. Noble Metals Int'l*, 67 F.3d 766, 775 (9th Cir. 1995). Notably,

4

in exercising its discretion, the Court should consider that "[b]ecause it is the defendant who seeks relief, the defendant carries the evidentiary burden to demonstrate the equities tip in favor of the release of receivership funds." *FTC v. Elite IT Partners, Inc.*, at *2-3.

In a case such as this one, where the funds of the Receivership Estate are insufficient to satisfy all the claims of defrauded victims of a Ponzi scheme, the equities the Court must consider are who deserves the money more: Scoville's victims or his attorneys. *FTC v. Sharp*, No. CV-S-89-870 RDF (RJJ), 1991 U.S. Dist. LEXIS 19295, at *2-4 (D. Nev. July 22, 1991). The fact that the Receivership Estate cannot satisfy all victims' claims is "reason enough in the circumstances of this case for the district court, in the exercise of its discretion, to deny the attorney fee application." *CFTC v. Noble Metals Int'l*, 67 F.3d at 775; *see also F.T.C. v. World Wide Factors, LTD.*, 882 F.2d 344, 348 (9th Cir. 1989) (approving limitation on attorney fees "out of concern for preserving funds for ultimate distribution to defrauded customers") (*citing FSLIC v. Dixon,* 835 F.2d 554, 564-65 (5th Cir. 1987)); *accord CFTC v. Morse,* 762 F.2d 60, 63 (8th Cir. 1985). This is so because victims of fraud have a strong claim on receivership estate funds while defense attorneys, who accept the risk of non-payment when they agree to defend an indigent defendant whose assets are controlled by a receiver, have a weak claim. *FTC v. Sharp* at *4. In the present case, it is not seriously disputed that Traffic Monsoon's harmed investors are victims of fraud, nor can it be disputed that Scoville's appellate attorneys accepted the risk of nonpayment from the outset of their engagement. This is especially so for Marquis Aurbach Coffing, because the Receiver understands that Micah Echols is related to Scoville.  It does not seem appropriate for the Receivership Estate, which will not be able to make Traffic Monsoon's victims whole, to pay any money to a relative of Scoville.  Accordingly, the equities weigh strongly against paying Scoville's appellate attorneys' fees from the Receivership Estate.

This Court found that Scoville operated Traffic Monsoon as a Ponzi scheme, and that because a Ponzi scheme is an inherently fraudulent enterprise, the SEC is likely to prevail on the

merits of its claims against the Defendants for securities fraud. *See Memorandum Decision* [Docket No. 79] at p. 34, 42. The Tenth Circuit affirmed this finding on appeal. *SEC v. Scoville*, 913 F.3d 1204, 1223-24 (10th Cir. 2019). Indeed, Scoville does not now contest the finding that Traffic Monsoon operated as a Ponzi scheme. He states that the fees he is requesting—the attorneys' fees for his Appeals—are "entirely related to issues concerning the SEC's extraterritorial enforcement of the securities laws of the United States under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010)." Request, p. 2. In other words, the Appeals are "entirely" about the extraterritorial application of U.S. securities laws, and *not* about whether the Defendants violated those laws by operating a Ponzi scheme. Accordingly, there is no pending appeal concerning this Court's findings that Scoville operated Traffic Monsoon as a Ponzi scheme and defrauded its investors who lost money, and these defrauded investors therefore have a strong equitable claim to the funds of the Receivership Estate.

Against the investors' equitable claims, the claims of Scoville's attorneys pale in comparison. These attorneys accepted the risk of nonpayment when they agreed to represent Scoville, knowing he could not pay them himself and that payment from the Receivership Estate was anything but assured. Several courts have held that attorneys representing an indigent client whose assets are in the hands of a receiver accept the risk of nonpayment from the beginning of their engagement. For example, in *FTC v. Sharp*, at *3-4, the Court held that trial counsel for the defendant "should have known that payment for his services was not guaranteed" when he agreed to take the case:

> [Counsel] knew that [the defendant] could not afford to pay him. He also knew that payment from the Receiver's estate was subject to the Court's approval. Neither the wording of the Restraining Order or the Preliminary Injunction imply that the Court would automatically approve a request for attorneys' fees. As an attorney, [counsel] is presumed to have known that the Court had discretion to approve or deny a request for payment of attorney's fees from the Receiver's estate. In summary, [counsel] could not have reasonably

4818-9924-8290\12

> believed that this Court's approval of his request for attorneys' fees was assured.

*See also FTC v. Williams*, No. 1:14-CV-1599-HLM, 2015 U.S. Dist. LEXIS 126522, at *5-8 (N.D. Ga. Sep. 11, 2015) (same). Similarly, Scoville's attorneys knew (or should have known) from the moment they began to represent him that he could not pay them and that they should not expect to be paid from the Receivership Estate. This issue was addressed directly in the Receivership Order entered on February 16, 2018, stating that Scoville had "*no right*" to payment or reimbursement from the Receivership Estate for attorneys' fees. *Receivership Order*, ¶ 5 (emphasis added). In spite of this clear language—issued before oral argument took place in the Tenth Circuit Appeal, and long before any time was billed for the Supreme Court Petition— Scoville's attorneys proceeded to bill a further $131,755.62 for the Appeals, thereby reaffirming their acceptance of the risk that their fees would go unpaid.

At least four additional factors further weaken the Request. *First*, these attorneys are Scoville's appellate attorneys, not his trial attorneys. Scoville references in the Request some statements from the Court indicating that the Court wanted a "meaningful discussion" of the issues related to issuance of the Preliminary Injunction. *See* Request, p. 4. It is conceivable that a defendant such as Scoville could argue an equitable claim to receivership estate funds to pay for defense at trial in order to have such a discussion in the first instance. However, any argument along this line vanishes when it comes to appellate attorneys. Under the United States Constitution, no defendant has a right to assistance of counsel in a discretionary appeal, not even criminal defendants. *See Ross v. Moffitt*, 417 U.S. 600 (1974). In contrast to a criminal appellant seeking to restore his or her physical liberty, Scoville's Appeals relate to the narrow issue of the effect of revisions to the jurisdictional provisions of federal securities laws on their extraterritorial application in the context of the *Morrison* case. If the criminal appellant has no right to counsel at the public expense, then Scoville certainly has no right to retain appellate counsel at the expense of the victims of his fraud.

7

*Second*, there is evidence that the Appeals, particularly the Supreme Court Petition, have more to do with establishing rulings on a narrow point of securities law than vindicating Scoville or Traffic Monsoon's business model. Scoville has not appealed the findings that Traffic Monsoon is a Ponzi scheme, and even if he prevails at the Supreme Court in establishing that federal securities fraud provisions do not apply outside the United States, that would only affect the *reach* of this Court's holding that Traffic Monsoon was a Ponzi scheme, not the underlying holding itself. According to the invoices attached to the Request, Williams & Connolly never once spoke with or consulted Scoville himself. Such an arrangement indicates that the Supreme Court Petition is more impact litigation than personal advocacy on Scoville's behalf.[2] Whatever the merits of such litigation in fleshing out knotty points of law, the victims of Traffic Monsoon should not have to fund it.

*Third*, the case law Scoville cites in the Request does not support the proposition that a Ponzi schemer should get to use receivership funds to pay for appeals. In *SEC v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427 (S.D.N.Y. 2001), the court agreed to release frozen funds to pay for attorneys' fees, but in that case the defendants' liability was far less certain than in the present case, and the fees were for trial attorneys, not appellate attorneys. In *SEC v. Dowdell*, 175 F. Supp. 2d 850, 855-85656 (W.D. Va. 2001), the court agreed to release frozen funds to pay for the defendants' trial attorney expenses in order to achieve a "fair result" at the preliminary injunction proceeding, not on appeal. Similarly, in *SEC v. DeYoung*, 2:14-cv-00309-RJS-DBP (D. Utah), the Court released funds to pay for *trial* attorneys' fees. *SEC v. Int'l Loan*

---

[2] That the Supreme Court Petition is impact litigation which should not be funded by the Receivership Estate is further supported by the fact that the outcome in the Supreme Court will not likely impact the ultimate outcome in this case. Even if the Supreme Court granted the Supreme Court Petition and ultimately agreed with Scoville's interpretation of the jurisdictional issues in *Morrison*, this would not resolve the issue of foreign net winners in Scoville's favor. In the Memorandum Decision, this Court found that the Commission is likely to succeed on its claims with respect to transactions with foreigners under the alternative grounds of the *Morrison* transactional test. The Tenth Circuit, in its opinion upholding the Memorandum Decision, indicated that it would also find for the Commission on those grounds. Thus, on remand from the Supreme Court, the Tenth Circuit would likely uphold this Court's alternative ruling on the *Morrison* transactional test.

*Network, Inc.*, 770 F. Supp. 678, 680 (D.D.C. 1991), only mentions the fact that the freeze order was modified to pay the defendants' attorneys' fees without any explanation, but again, this was at the trial level, not on appeal. The statement in *FTC v. Ideal Fin. Sols., Inc.*, No. 2:13-cv-00143-JAD-GWF, 2014 U.S. Dist. LEXIS 125896, at *6 (D. Nev. Sep. 9, 2014), that the Court, in balancing the equities, should "consider the fact the wrongdoing has not yet been proven" is irrelevant in the present case where this Court has already found that Scoville operated Traffic Monsoon as a Ponzi scheme. Accordingly, Scoville has not put forward any case law to tip the equities in favor of paying his appellate attorneys at the expense of Traffic Monsoon victims.

      *Fourth*, several thousand dollars of the fees in the Request relate to asking for extensions of deadlines in the Appeals. Based on the redacted invoices attached to the Request, Marquis Aurback Coffing charged at least $6,651 for legal work related to extending briefing deadlines in the Tenth Circuit Appeal and requesting successive stays of the issuance of the mandate from the Tenth Circuit. *See* Request, Ex. A. Additionally, Williams & Connolly charged approximately $3,500 for legal work requesting extensions of the deadline to file the Supreme Court Petition. *See id.* at Ex. B. The victims of Scoville's Ponzi scheme should not have to pay for extensions of deadlines which have only delayed the Receiver's prompt administration of this case. *See* Hunt Declaration, ¶ 5.

## IV.   CONCLUSION

      For the reasons set forth herein, the Receiver requests that the Court deny the Request with prejudice.

      DATED this 19th day of September, 2019.

                  **DORSEY & WHITNEY LLP**

                  */s/ Michael F. Thomson*
                  Peggy Hunt
                  Michael F. Thomson
                  John J. Wiest
                  *Attorneys for Receiver, Peggy Hunt*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of September, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all counsel of record in this case.

*/s/ Michael F. Thomson*

4818-9924-8290\12