Peggy Hunt (Utah State Bar No. 6060)
**DORSEY & WHITNEY LLP**
111 South Main Street, 21st Floor
Salt Lake City, UT  84111-2176
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: hunt.peggy@dorsey.com

*Court-Appointed Receiver, Peggy Hunt*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff.<br><br>   V.<br><br>TRAFFIC MONSOON, LLC, a Utah Limited Liability Company, and CHARLES DAVID SCOVILLE, an individual,<br><br>         Defendants. | **RECEIVER'S EIGHTH STATUS REPORT**<br>*(JULY 1, 2019 THROUGH MARCH 31, 2020)*<br><br>2:16-cv-00832-JNP<br><br>The Honorable Jill N. Parrish |

Peggy Hunt, the Court-appointed Receiver (the "Receiver") for Traffic Monsoon, LLC, and the assets of Charles David Scoville that were obtained directly or indirectly from Traffic Monsoon, hereby submits this *Eighth Status Report* (the "Status Report") for the period of July1, 2019 through March 31, 2020 (the "Reporting Period").  This Status Report is posted on the website for the receivership at www.trafficmonsoonreceivership.com (the "Receivership Website").

## TABLE OF CONTENTS

1.  Introduction ................................................................................................................2

2.  Summary of Key Events in This Case ........................................................................3

3.  Work Done By the Receiver and Her Professionals During the Reporting Period ............5

    A.  The Claims Process ............................................................................................5

    B.  Litigation on Behalf of the Receivership Estate ......................................................7

    C.  Investigating Unauthorized Manchester Flat Transfer ..............................................8

    D.  Communicating with Investors and Chargeback Responses ...................................9

    E.  Attending to General Administration of the Receivership Estate ...........................10

4.  Standardized Fund Accounting Report ("SFAR") ......................................................11

5.  Administrative Expenses During the Reporting Period ...............................................11

    A.  Approved Fee Applications Relevant to This Reporting Period ...........................12

    B.  Fees and Expenses Incurred During the Current Reporting Period .......................12

6.  Conclusion ...............................................................................................................13

4837-3715-8585\1

1.  **Introduction**

This Status Report includes a brief summary of key events in this case to date as set forth in Part II below.  Part III is a summary of the Receiver's work during the Reporting Period.  Part IV provides a financial summary of the Receivership Estate, and administrative expenses that have been incurred and paid during the Reporting Period are discussed in Part V.  All of the documents filed with the Court that are referenced in this Status Report are posted on the Receivership's website at www.trafficmonsoonreceivership.com (the "Receivership Website").

Please note that a more detailed discussion about the background in this case is set forth in the *Receiver's First Status Report (July 26, 2016 Through March 31, 2017)* (the "First Status Report"),[1] which incorporated the Receiver's *Declarations* outlining the initial findings of her investigation.[2] Since filing that First Status Report, the Receiver has continued to file Status Reports that, in addition to the updates posted on the Receivership Website, may be consulted for information about this case.  To date the following additional Status Reports have been filed: *Receiver's Second Status Report (April 1, 2017 Through June 30, 2017)*;[3] *Receiver's Third Status Report (July 1, 2017 Through September 30, 2017)*[4]; *Receiver's Fourth Status Report (October 1, 2017 Through December 31, 2017)*;[5] *Receiver's Fifth Status Report (January 1,*

---

[1] Docket No. 91.

[2] *See Declaration of Receiver Peggy Hunt (Communications)* (the "Communications Declaration"), Docket No. 54; and the *Declaration of Peggy Hunt (Business Operations)* (the "Business Operations Declaration"), Docket No. 55.

[3] Docket No. 104.

[4] Docket No. 108.

[5] Docket No. 122.

*2018 Through March 31, 2018);[6] Receiver's Sixth Status Report (April 1, 2018 Through June 30, 2018);[7]* and *Receiver's Seventh Status Report (July 1, 2018 Through June 30, 2019)[8]*(the "Seventh Status Report") (these Reports, together are the "Prior Status Reports").  All of the Prior Status Reports are posted on the Receivership Website.

2. **Summary of Key Events in This Case**

Parties interested in a detailed outline of the key events in the above-captioned case should refer to the Receiver's Prior Status Reports and the Receivership Website.  Among other things, information is provided about (a) the Receiver, her legal counsel, Dorsey & Whitney LLP ("Dorsey"), her forensic and general accountants, Berkley Research Group ("BRG"), and the claims agent in this case, Epiq Global ("Epiq"); and (b) the Receiver's ongoing investigation and estate administration.  Additionally, Prior Status Reports outline the facts giving rise to the commencement of this case by the United States Securities and Exchange Commission (the "SEC") against Traffic Monsoon, LLC ("Traffic Monsoon") and Charles David Scoville ("Scoville" and, together with Traffic Monsoon, the "Defendants").  They also outline the Court's various orders in this case, including its *Temporary Restraining Order and Order Freezing Assets*, the *Order Appointing Receiver* and amendments (collectively, the "Receivership Order")*,* the proceedings related to and entry of a *Preliminary Injunction*, and the Defendants' appeals of the Court's Orders (collectively, the "Appeal").  Note that as of the filing of this Status Report, all of the Defendants' appeals have now concluded.  The Orders, including

---

[6] Docket No. 153.

[7] Docket No. 162.

[8] Docket No. 194.

the Receivership Order and the Preliminary Injunction, have been affirmed by the United States Court of Appeals for the Tenth Circuit,[9] and the Defendants' *Petition for a Writ of Certiorari* (the "Cert. Petition") filed in the United States Supreme Court has been denied.[10]

While the exact terms of the Preliminary Injunction should be reviewed, the Preliminary Injunction generally prohibits Scoville from operating Traffic Monsoon "or a business model substantially similar to Traffic Monsoon's sale of AdPacks."[11]  The Preliminary Injunction also imposes an asset freeze of all "assets, of whatever kind and wherever situated, of Traffic Monsoon, LLC and Charles D. Scoville that were obtained directly or indirectly from Traffic Monsoon, LLC. . ."[12] and stays all litigation in any court against either or both of the Defendants.[13]  In conjunction with the Preliminary Injunction, the Court entered a *Memorandum Decision and Order*,[14] which includes significant factual findings and a comprehensive legal analysis that are summarized in part in the Receiver's First Status Report.  Important is that the Court concluded that a clear showing had been made that the SEC was likely to succeed in establishing that Traffic Monsoon was a Ponzi scheme.

---

[9] *See Order* of January 24, 2019 (published at 913 F.3d 1204 (10th Cir. 2019)).

[10] *See* S. Ct. Case No. 18-1566.

[11] Docket No. 80 (Preliminary Injunction, p. 1).

[12] Docket No. 80 (Preliminary Injunction, p. 2).

[13] Docket No. 80 (Preliminary Injunction, p. 3).

[14] Docket No. 79.

3.  <u>__Work Done By the Receiver and Her Professionals During the Reporting Period__</u>

The primary work performed by the Receiver and her professionals during the Reporting Period is outlined below:

A.      <u>__The Claims Process__</u>

During the Reporting Period, the Receiver attended two status conferences with the Court at which time she addressed the need to open a claim process.  Prior requests to do so had been postponed by the Court pending resolution of the Appeal.[15]  In conjunction with the second status conference, the Receiver filed a *Declaration*[16] setting forth the basis for granting the *Motion Seeking Approval of (1) Claims Process; (2) Setting Claims Bar Date; and (3) Certain Notice Procedures* that had been filed in early 2019.[17]  After the Cert. Petition was denied, the Court informed the Receiver that a claims process would be authorized, and the Receiver filed a *Renewed and Amended Motion Seeking Approval of (1) Claims Process; (2) Setting Claims Bar Date; and (3) Certain Notice Procedures*, which was granted by the Court by *Order* entered on December 20, 2019 (the "<u>Claims Procedure Order</u>").[18]  The Claims Procedure Order set <u>April 10, 2020</u> as the deadline, or "<u>Claims Bar Date</u>", to submit Proofs of Claim to the Receiver.

Since the entry of the Claims Procedure Order, the Receiver has worked diligently in conjunction with Dorsey and Epiq, to run a claims process.  A "<u>Bar Date Notice</u>" informing potential claimants of the Claims Bar Date and procedures for submitting Proofs of Claims was

---

[15] *See* Docket No. 178 and Docket entry dated March 21, 2019.

[16] Docket No. 228.

[17] Docket No. 227.

[18] Docket No. 232.

5

initially served on all potential claimants between January 8, 2020 and January 10, 2019.  The

Receivership Website was updated with information about submitting Proofs of Claim and with

a link for claimants to electronically submit Proofs of Claim in accordance with the Claims

Procedure Order – the "Claims Portal". A total of 560,309 emails were served in conjunction

with this process.  Additionally, because many investors communicated through FaceBook, the

Receiver purchased targeted ads with a link to the Receivership Website to be posted on that

platform.  Initial response to the request for claims was relatively tepid, likely due to the time

between the filing of this case and the commencement of the claims process.  Accordingly, the

Receiver determined that it was prudent to expend additional Receivership Estate funds to re-

serve the Bar Date Notice.  A "reminder" email was served between March 16, 2020, and March

20, 2020, and a "final reminder" email is being served between April 1, 2020, and April 5, 2020.

Additionally, the FaceBook advertisement was refreshed during this period.  All of the emails

included the Claims Bar Date, notice that failure to file a Proof of Claim prior to Claims Bar

Date would bar a right to distribution from the Receivership Estate, and a link to the Claims

Portal.

The Receiver, Dorsey and Epiq have spent significant time during the Reporting Period

communicating with investors about the claims process, both before it commenced, and after Bar

Date Notices were served.  All communications have made clear that claimants must submit their

Proofs of Claim electronically through the Claims Portal.  As of the date of this Status Report, a

total of 14,063 Proofs of Claim have been submitted.  Many have agreed to the Receiver's claim

amount, but others have asserted claims in excess of the claim amount, which will require

necessary review and reconciliation in the coming months.

**B.**      <u>Litigation on Behalf of the Receivership Estate</u>

During the Reporting Period, the Receiver and Dorsey continued an investigation of claims against investors who profited from their involvement in Traffic Monsoon ("<u>Net Winners</u>") as well as others.  The Court authorized the Receiver to commence litigation related to claims held by the Receivership Estate,[19] and based on her initial investigation, the Receiver filed a *Class Action Complaint* (the "<u>Complaint</u>") in this Court against 11 named Net Winners (the "<u>Named Defendants</u>") and a proposed class of approximately 4,819 other Net Winners.[20] All of the Named Defendants have been served except Imtiaz Aslam. None of the Named Defendants have responded to the Complaint, and the Receiver is in the process of obtaining Certificates of Default and Default Judgments against the Named Defendants who have been served and failed to respond.

In anticipation of obtaining default judgments against the various Named Defendants, the Receiver has researched the process for enforcing default judgments in the various countries where the Named Defendants are located. The Receiver sought court approval to employ a Canadian law firm, BLG, to assist her in enforcing an anticipated default judgment against Named Defendant Vincent Boutin in Quebec, Canada. After the Court denied the Receiver's motion to employ BLG,[21] the Receiver decided to hold off on pursuing Boutin until after the Claims Bar Date, at which point the Receiver will review the filed Proofs of Claim and

---

[19] Docket No. 181.

[20] *Hunt v. Aslam*, Case No. 2:19-cv-275 (D. Utah).

[21] Docket No. 213.

determine whether the amounts claimed justify spending more time and funds pursuing international defendants.

The Receiver has employed FTI Consulting, LLP, to investigate potential recoveries against the 7 Named Defendants located in the United Kingdom.  Based on the information she obtained from FTI, the Receiver is analyzing the best way to enforce potential default judgments against the Named Defendants in the United Kingdom so as to maximize the benefit to the Receivership Estate.

The Receiver also has determined that there may be other claims held by the Receivership Estate, and Dorsey has been researching issues related to those matters.  As of the close of this Reporting Period, the Receiver is waiting until the expiration of the Claims Bar Date to determine if the expense of additional litigation is warranted in light of the claims asserted against the Receivership Estate.

### C.     Investigating Unauthorized Manchester Flat Transfer

One of the assets of the Receivership Estate is an interest in a flat located in Manchester, United Kingdom, and a related parking space that Scoville purchased in August 2015 using funds obtained from Traffic Monsoon (the "Manchester Flat").  In the Sixth Status Report, the Receiver outlined facts she has discovered about an unauthorized transfer of the Manchester Flat, and her investigation of that unauthorized transfer.  During the Reporting Period, the Receiver has continued to investigate this issue.

On the Receiver's motion,[22] the Court sent a Letter of Request to the English Court requesting that the English Court issue a subpoena to the UK law firm that handled the sale of

---

[22] Docket Nos. 199, 200.

the Manchester Flat.[23] The English Court duly issued a subpoena to the UK law firm ordering it to produce (i) documents showing the identity of the party who purported to act on behalf of Scoville in authorizing and effecting the sale of the Manchester Flat (i.e., "Know Your Customer" or "KYC" documents); and (ii) documents showing how the sale proceeds were disbursed upon closing of sale, including details concerning the account to which the sale proceeds transferred and the beneficiary of that account. The UK law firm complied with the subpoena and produced the relevant documents to the Receiver, but this process took some time based on separate follow up requests. Upon reviewing the documents, the Receiver determined that the person who, purporting to be Charles Scoville, communicated with the UK law firm and personally directed the sale of the Manchester Flat was not actually Charles Scoville. The Receiver also learned the proceeds of the sale of Manchester Flat went to an account in the name of Charles Scoville at Santander Bank in the UK. The Receiver issued a subpoena to Santander Bank's U.S. entity requesting information about this account, and was informed that she would need to subpoena Santander Bank's UK entity. The Receiver anticipates asking the Court to send another Letter of Request to the English Court requesting issuance of a subpoena to Santander Bank in the UK to obtain information about this account and where the sale proceeds may have gone.

### D. Communicating with Investors and Chargeback Responses

As discussed above, the Receiver, directly and through Dorsey and Epiq, has spent considerable time communicating with investors during the Reporting Period through the "Receivership Website," the "Receivership Email Address" and "Call Center" (as defined in

---

[23] Docket No. 203.

Prior Status Reports).  Persons who communicate with the Receiver are typically requesting information about how to submit Proofs of Claim and when they will receive their money back. In addition to keeping investors apprised of the status of the case, the Receiver uses information obtained from these interactions to assist in investor identification.

The Receiver also continues to communicate with investor groups in various contexts. Such interactions include ongoing discussions with counsel for a group of investors who claim that their money was invested with Traffic Monsoon through a person who is now involved in a security enforcement action outside of the United States.

Finally, the Receiver has access to Traffic Monsoon's PayPal, Payza and Solid Trust Pay accounts (as defined in Prior Status Reports), primarily for the purpose of responding to numerous "chargeback" requests made by investors.[24]  This work has continued during the Reporting Period.

     **E.**      **Attending to General Administration of the Receivership Estate**

During the Reporting Period, the Receiver and her professionals have attended to numerous matters related to the administration of the Receivership Estate.  These tasks include, but are not limited to, seeking the employment of professionals deemed necessary to allow the Receiver to execute her duties; monitoring and managing bank accounts; negotiating, when appropriate, applicable interest rates for funds on deposit; reviewing professional billings and requesting adjustments when appropriate; following accounting protocols; preparing SFARs (as defined below); managing the Receivership Website and information provided through the Call Center; evaluating and paying costs related to administration and litigation; evaluating issues

---

[24] *See* Docket No. 91 (First Status Report, at 12 (discussing chargeback issues)).

related to compliance with applicable tax laws; filing papers required by applicable tax laws; interfacing with financial account institutions; coordinating with governmental entities as requested; and, when necessary, responding to statements made or inquires by Scoville and/or his counsel.

## 4.   **Standardized Fund Accounting Report ("SFAR")**

A summary of the financial condition of the Receivership Estate for each quarter of the Reporting Period is set forth in the SFARs attached hereto as Exhibits A-C.  At the end of the Reporting Period, the Receivership Estate had funds in the total amount of $53,161,577.19.[25] Interest income has totaled $549,643.26,[26] and expenses have totaled $667,338.99.[27]

## 5.   **Administrative Expenses During the Reporting Period**

The fees and out of pocket expenses of the Receiver, Dorsey and BRG must be approved by the Court prior to payment.  The Court has entered an *Order Establishing Administrative Expense Payment Procedures* (the *"*Fee Procedures Order*"),*[28] setting forth procedures for the request and payment of professional fees and expenses in this case.  Among other things, the Fee Procedures Order authorizes the Receiver and her professionals to file monthly "Notices of Request for Payment."  Absent objection in accordance with the Fee Procedures Order, the Receiver may pay 80% of fees and 100% of out-of-pocket expenses requested in a Notice of Request for Payment.  All monthly disbursements and any other requests for fees and expenses

---

[25] *See* Exh. C (SFAR for period ending March 31, 2020).

[26] *See* Exhs. A-C (SAFR, Line 4 recording interest).

[27] *Id.* (SFAR, Line10 recording disbursements).

[28]  Docket No. 101.

not requested pursuant to a Notice for Request for Payment are subject to Court approval through "Fee Applications".

###    A.       Approved Fee Applications Relevant to this Reporting Period

On August 22, 2019, the Receiver filed a *Seventh Interim Fee Application* for Receiver and Receiver's Professionals requesting fees and expenses for services rendered from July 1, 2018 through June 30, 2019.[29]  The Court entered an Order during the Reporting Period on October 1, 2019, approving that Fee Application, and all fees and expenses requested therein have been paid.[30]

###    B.       Fees and Expenses Incurred During the Current Reporting Period

Shortly after filing this Status Report, the Receiver intends to file an *Eighth Interim Fee Application* for the period of July 1, 2019 through March 31, 2020.  That Application will outline the total hours spent by the Receiver, Dorsey and BRG, the fees requested for their services, and reimbursement of out-of-pocket expenses incurred during the Reporting Period.  None of these fees and expenses have been paid to date, other than those authorized to be paid under the Fee Procedures Order.  Specifically, the Receiver filed Notices of Request for Payment for July, August and September of 2019,[31] and no objections to those Notices were filed.  Accordingly, 80% of the fees outlined in those Notices were paid, and 100% of the expenses outlined were reimbursed as authorized by the Fee Procedure Order.[32]

---

[29] Docket No. 196.

[30] *See* Exh. B (SFAR for the period ending December 31, 2019).

[31] Docket Nos. 198, 211, 229.

[32] *See* Exhs. A-C.

**6.  <u>Conclusion</u>**

The Receiver currently holds over $53 million, and is anxious to distribute these funds to parties with allowable claims against the Receivership Estate.  After the Claims Bar Date expires, the Receiver will commence the claims allowance process and then propose a plan of distribution in this case.

Dated this 3rd day of April, 2020.

**RECEIVER**

_/s/ Peggy Hunt_
*Peggy Hunt, Receiver*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of April, 2020, I caused the foregoing *Eighth Status*

*Report (July 1, 2019 Through March 31, 2020)* to be electronically filed with the Clerk of the

Court using the CM/ECF system which will send notification of the filing to all counsel of record

in this case.

_____*/s/ Candy Long*_____

# EXHIBIT A

**STANDARDIZED FUND ACCOUNTING REPORT for Traffic Monsoon, LLC Receivership - Cash Basis**
Receivership; Civil Court Case No. 2:16-00832
REPORTING PERIOD 07/01/2019 TO 09/30/2019

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 01/01/19) | | | 53,279,272.92 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | - | |
| Line 3 | Cash and Securities | - | - | |
| Line 4 | Interest/Dividend Income | 238,799.76 | 238,799.76 | |
| Line 5 | Business Asset Liquidation | - | - | |
| Line 6 | Personal Asset Liquidation | - | - | |
| Line 7 | Third-Party Litigation | - | - | |
| Line 8 | Miscellaneous-Other | - | - | |
| | **Total Funds Available (Lines 1-8):** | | 238,799.76 | 53,518,072.68 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Senior Secured Lenders/Investors | - | | |
| Line 10 | Disbursements for Receivership Operations | | 324,043.57 | |
| Line 10 | *Internal Loans* | - | | |
| Line10a | *Disbursements to Receiver or Other Professionals* | 323,943.57 | | |
| | 1. Fees: | - | | |
| | Receiver | 6,711.84 | | |
| | Legal Advisors | 17,853.45 | | |
| | Accountants | 18,286.80 | | |
| | Consultants | 281,091.48 | | |
| Line 10b | Business Asset Expenses | - | | |
| Line 10c | Personal Asset Expenses | - | | |
| Line 10d | Hospital Settlements & Investment Expenses | - | | |
| Line 10e | Third Party Litigation Expenses | - | | |
| | 1. Attorney Fees | - | | |
| | 2 Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | | - | |
| Line 10f | *Tax Administrator Fees and Bonds* | - | | |
| Line 10g | *Federal and State Tax Payments* | 100.00 | | |
| | **Total Disbursements for Receivership Operations** | | 324,043.57 | 324,043.57 |
| Line 11 | **Disbursments for Distribution Expenses Paid by the Fund:** | - | - | |
| Line 11 | *Distribution Plan Development Expenses* | - | | |
| Line 11a | *Distribution Plan Development Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | | - | |
| Line 11b | *Distribution Plan Implementation Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |

|  |  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|---|
|  |  | Notice/Publishing Approved Plan | - |  |  |
|  |  | Claimant Identification | - |  |  |
|  |  | Claims Processing | - |  |  |
|  |  | Web Site Maintenance/Call Center | - |  |  |
|  |  | 4. Fund Administrator Bond | - |  |  |
|  |  | 5. Miscellaneous | - |  |  |
|  |  | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - |  |  |
|  |  | *Total Plan Implementation Expenses* |  | - |  |
|  |  | **Total Disbursement for Distribution Expenses Paid by the Fund** |  | - | - |
| Line 12 |  | **Disbursements to Court/Other:** |  | - |  |
|  | *Line 12* | *Disbursements to Court* | - |  |  |
|  |  | *Investment Expenses/Court Registry Investment System (CRIS)* |  |  |  |
|  | *Line 12a* | *Fees* | - |  |  |
|  | *Line 12b* | *Federal Tax Payments* | - |  |  |
|  |  | **Total Disbursements to Court/Other:** |  | - | - |
|  |  | **Total Funds Disbursed (Lines 9-12)** |  |  | 324,043.57 |
| Line 13 |  | **Ending Balance (As of 12/31/18)** |  |  | 53,194,029.11 |
| Line 14 |  | **Ending Balance of Fund - Net Assets** |  |  |  |
|  | *Line 14a* | *Cash & Cash Equivalents* |  |  | 53,194,029.11 |
|  | *Line 14b* | *Investments* |  |  | - |
|  | *Line 14c* | *Other Assets or Uncleared Funds* |  |  | - |
|  |  | **Total Ending Balance of Fund - Net Assets** |  |  | 53,194,029.11 |

|  |  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|---|
|  | **OTHER SUPPLEMENTAL INFORMATION:** |  |  |  |  |
|  | **Report of Items NOT to be paid by the Fund:** |  |  |  |  |
|  | **Disbursements of Plan Administration Expenses Not Paid by the Fund:** |  |  |  |  |
| Line 15 |  |  | - | - |  |
| *Line 15* | *Disbursements for Plan Administration Expenses* |  | - |  |  |
| *Line 15a* | *Plan Development Expenses Not Paid bu the Fund:* |  | - |  |  |
|  | 1. Fees |  | - |  |  |
|  | Fund Administrator |  | - |  |  |
|  | IDC |  | - |  |  |
|  | Receiver |  | - |  |  |
|  | Legal Advisers |  | - |  |  |
|  | Accountants |  | - |  |  |
|  | Consultants |  | - |  |  |
|  | 2. Administrative Expenses |  | - |  |  |
|  | 3. Approved Living Allowance |  | - |  |  |
|  | 4. Miscellaneous |  | - |  |  |
|  | *Total Plan Development Expenses Not Paid by the Fund* |  |  | - |  |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* |  | - |  |  |
|  | 1. Fees |  | - |  |  |
|  | Fund Administrator |  | - |  |  |
|  | IDC |  | - |  |  |
|  | Receiver |  | - |  |  |
|  | Legal Advisers |  | - |  |  |
|  | Accountants |  | - |  |  |
|  | Consultants |  | - |  |  |
|  | 2. Administrative Expenses |  | - |  |  |
|  | 3. Investor Identification: |  | - |  |  |
|  | Notice/Publishing Approved Plan |  | - |  |  |
|  | Claimant Identification |  | - |  |  |
|  | Claims Processing |  | - |  |  |
|  | Web Site Maintenance/Call Center |  | - |  |  |
|  | 4. Fund Administrator Bond |  | - |  |  |
|  | 5. Miscellaneous |  | - |  |  |
|  | 6. FAIR Reporting Expenses |  | - |  |  |
|  | *Total Plan Implementation Expensses Not Paid by the Fund* |  |  | - |  |

| | | | | |
|---|---|---|---|---|
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | - | | |
| | **Total Disbursements for Plan Administrative Expenses Not Paid by the fund** | | - | - |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** | - | - | |
| Line 16a | *Investment Expenses/CRIS Fees* | - | | |
| Line 16b | *Federal Tax Payments* | - | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund** | | - | - |
| Line 17 | **DC & State Tax Payments** | - | - | |
| | | | | |
| Line 18 | No. of Claims | | | |
| Line 18a | # of Claims Received This Reporting Period | | | - |
| Line 18 b | # of Claims Received Since Inception of Fund | | | - |
| Line 19 | No. of Claimants/Investors: | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | - |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | | | - |

Receiver:

By:  _____
     (signature)

Mary Margeret Hunt
     (printed Name)

Receiver
     (title)

Date:  _____12–11–19_____

# EXHIBIT B

STANDARDIZED FUND ACCOUNTING REPORT for **Traffic Monsoon, LLC Receivership - Cash Basis**
Receivership; Civil Court Case No. 2:16-00832
REPORTING PERIOD 10/01/2019 TO 12/31/2019

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 10/01/19) | | | 53,194,029.11 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | - | |
| Line 3 | Cash and Securities | - | - | |
| Line 4 | Interest/Dividend Income | 209,608.38 | 209,608.38 | |
| Line 5 | Business Asset Liquidation | - | - | |
| Line 6 | Personal Asset Liquidation | - | - | |
| Line 7 | Third-Party Litigation | - | - | |
| Line 8 | Miscellaneous-Other | - | - | |
| | **Total Funds Available (Lines 1-8):** | | 209,608.38 | 53,403,637.49 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Senior Secured Lenders/Investors | - | | |
| Line 10 | Disbursements for Receivership Operations | | 268,134.50 | |
| Line 10 | *Internal Loans* | | | |
| Line10a | *Disbursements to Receiver or Other Professionals* | 268,134.50 | | |
| | 1. Fees: | | | |
| | Receiver | 27,778.77 | | |
| | Legal Advisors | 175,044.41 | | |
| | Accountants | 24,143.72 | | |
| | Consultants | 41,167.60 | | |
| Line 10b | Business Asset Expenses | - | | |
| Line 10c | Personal Asset Expenses | - | | |
| Line 10d | Hospital Settlements & Investment Expenses | - | | |
| Line 10e | Third Party Litigation Expenses | - | | |
| | 1. Attorney Fees | - | | |
| | 2 Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | - | | |
| Line 10f | *Tax Administrator Fees and Bonds* | - | | |
| Line 10g | *Federal and State Tax Payments* | - | | |
| | **Total Disbursements for Receivership Operations** | | 268,134.50 | 268,134.50 |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | - | - | |
| Line 11 | *Distribution Plan Development Expenses* | - | | |
| Line 11a | *Distribution Plan Development Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | | | |
| | *Total Plan Development Expenses* | - | | |
| Line 11b | *Distribution Plan Implementation Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |

|  |  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|---|
|  |  | Notice/Publishing Approved Plan | - |  |  |
|  |  | Claimant Identification | - |  |  |
|  |  | Claims Processing | - |  |  |
|  |  | Web Site Maintenance/Call Center | - |  |  |
|  |  | 4. Fund Administrator Bond | - |  |  |
|  |  | 5. Miscellaneous | - |  |  |
|  |  | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - |  |  |
|  |  | *Total Plan Implementation Expenses* |  | - |  |
|  |  | **Total Disbursement for Distribution Expenses Paid by the Fund** |  | - | - |
| **Line 12** |  | **Disbursements to Court/Other:** |  |  |  |
|  | *Line 12* | *Disbursements to Court* |  |  |  |
|  |  | Investment Expenses/Court Registry Investment System (CRIS) |  |  |  |
|  | *Line 12a* | *Fees* | - |  |  |
|  | *Line 12b* | *Federal Tax Payments* | - |  |  |
|  |  | **Total Disbursements to Court/Other:** |  | - | - |
|  |  | **Total Funds Disbursed (Lines 9-12)** |  |  | 268,134.50 |
| **Line 13** |  | **Ending Balance (As of 12/31/19)** |  |  | 53,135,502.99 |
| **Line 14** |  | **Ending Balance of Fund - Net Assets:** |  |  |  |
|  | *Line 14a* | *Cash & Cash Equivalents* |  |  | 53,135,502.99 |
|  | *Line 14b* | *Investments* |  |  | - |
|  | *Line 14c* | *Other Assets or Uncleared Funds* |  |  | - |
|  |  | **Total Ending Balance of Fund - Net Assets** |  |  | 53,135,502.99 |

|  |  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|---|
|  |  | **OTHER SUPPLEMENTAL INFORMATION:** |  |  |  |
| **Line 15** |  | **Report of Items NOT to be paid by the Fund:** |  |  |  |
|  |  | **Disbursements of Plan Administration Expenses Not Paid by the Fund:** | - | - |  |
|  | *Line 15* | *Disbursements for Plan Administration Expenses* | - |  |  |
|  | *Line 15a* | *Plan Development Expenses Not Paid bu the Fund:* | - |  |  |
|  |  | 1. Fees | - |  |  |
|  |  | Fund Administrator | - |  |  |
|  |  | IDC | - |  |  |
|  |  | Receiver | - |  |  |
|  |  | Legal Advisers | - |  |  |
|  |  | Accountants | - |  |  |
|  |  | Consultants | - |  |  |
|  |  | 2. Administrative Expenses | - |  |  |
|  |  | 3. Approved Living Allowance | - |  |  |
|  |  | 4. Miscellaneous | - |  |  |
|  |  | *Total Plan Development Expenses Not Paid by the Fund* |  | - |  |
|  | *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | - |  |  |
|  |  | 1. Fees: | - |  |  |
|  |  | Fund Administrator | - |  |  |
|  |  | IDC | - |  |  |
|  |  | Receiver | - |  |  |
|  |  | Legal Advisers | - |  |  |
|  |  | Accountants | - |  |  |
|  |  | Consultants | - |  |  |
|  |  | 2. Administrative Expenses | - |  |  |
|  |  | 3. Investor Identification: | - |  |  |
|  |  | Notice/Publishing Approved Plan | - |  |  |
|  |  | Claimant Identification | - |  |  |
|  |  | Claims Processing | - |  |  |
|  |  | Web Site Maintenance/Call Center | - |  |  |
|  |  | 4. Fund Administrator Bond | - |  |  |
|  |  | 5. Miscellaneous | - |  |  |
|  |  | 6. FAIR Reporting Expenses | - |  |  |
|  |  | *Total Plan Implementation Expesnses Not Paid by the Fund* |  | - |  |

| | | | | |
|---|---|---|---|---|
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | - | | |
| | **Total Disbursements for Plan Administrative Expenses Not Paid by the fund** | | - | - |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | - | - | |
| Line 16a | *Investment Expenses/CRIS Fees* | - | | |
| Line 16b | *Federal Tax Payments* | - | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund** | | - | - |
| **Line 17** | **DC & State Tax Payments** | - | - | |
| | | | | |
| **Line 18** | No. of Claims | | | |
| Line 18a | # of Claims Received This Reporting Period | | | - |
| Line 18 b | # of Claims Received Since Inception of Fund | | | - |
| **Line 19** | No. of Claimants/Investors: | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | - |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | | | - |

Receiver:

By: _____

(signature)

Mary Margeret Hunt _____

(printed Name)

Receiver _____

(title)

Date: 4-3-2020

# EXHIBIT C

**STANDARDIZED FUND ACCOUNTING REPORT for Traffic Monsoon, LLC Receivership - Cash Basis**
Receivership; Civil Court Case No. 2:16-00832
REPORTING PERIOD 01/01/2020 TO 03/31/2020

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 01/01/20) | | | 53,135,502.99 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | - | |
| Line 3 | Cash and Securities | - | - | |
| Line 4 | Interest/Dividend Income | 101,235.12 | 101,235.12 | |
| Line 5 | Business Asset Liquidation | - | - | |
| Line 6 | Personal Asset Liquidation | - | - | |
| Line 7 | Third-Party Litigation | - | - | |
| Line 8 | Miscellaneous-Other | - | - | |
| | Total Funds Available (Lines 1-8): | | 101,235.12 | 53,236,738.11 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Senior Secured Lenders/Investors | - | - | |
| Line 10 | Disbursements for Receivership Operations | | 75,160.92 | |
| *Line 10* | *Internal Loans* | - | | |
| *Line10a* | *Disbursements to Receiver or Other Professionals* | 75,160.92 | | |
| | 1. Fees: | | | |
| | Receiver | 2,844.00 | | |
| | Legal Advisors | 12,838.45 | | |
| | Accountants | 3,918.40 | | |
| | Consultants | 55,560.07 | | |
| *Line 10b* | Business Asset Expenses | - | | |
| *Line 10c* | Personal Asset Expenses | - | | |
| *Line 10d* | Hospital Settlements & Investment Expenses | - | | |
| *Line 10e* | Third Party Litigation Expenses | - | | |
| | 1. Attorney Fees | - | | |
| | 2 Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | | - | |
| *Line 10f* | *Tax Administrator Fees and Bonds* | - | | |
| *Line 10g* | *Federal and State Tax Payments* | - | | |
| | Total Disbursements for Receivership Operations | | 75,160.92 | 75,160.92 |
| Line 11 | Disbursments for Distribution Expenses Paid by the Fund: | - | - | |
| *Line 11* | *Distribution Plan Development Expenses* | - | | |
| *Line 11a* | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | | - | |
| *Line 11b* | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - | | |
| | *Total Plan Implementation Expenses* | | - | |
| | **Total Disbursement for Distribution Expenses Paid by the Fund** | | - | - |
| **Line 12** | **Disbursements to Court/Other:** | | - | |
| *Line 12* | *Disbursements to Court* | | | |
| | *Investment Expenses/Court Registry Investment System (CRIS)* | | | |
| *Line 12a* | *Fees* | - | | |
| *Line 12b* | *Federal Tax Payments* | | | |
| | **Total Disbursements to Court/Other:** | | | - |
| | Total Funds Disbursed (Lines 9-12) | | | 75,160.92 |
| **Line 13** | **Ending Balance (As of 03/31/20)** | | | 53,161,577.19 |
| **Line 14** | **Ending Balance of Fund - Net Assets:** | | | |
| *Line 14a* | *Cash & Cash Equivalents* | | | 53,161,577.19 |
| *Line 14b* | *Investments* | | | - |
| *Line 14c* | *Other Assets or Uncleared Funds* | | | - |
| | **Total Ending Balance of Fund - Net Assets** | | | 53,161,577.19 |

| | OTHER SUPPLEMENTAL INFORMATION: | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | **Report of Items NOT to be paid by the Fund:** | | | |
| | **Disbursements of Plan Administration Expenses Not Paid by the Fund:** | | | |
| **Line 15** | | - | - | |
| *Line 15* | *Disbursements for Plan Administration Expenses* | | | |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* | - | | |
| | 1. Fees | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | - | |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. FAIR Reporting Expenses | - | | |
| | *Total Plan Implementation Expsnses Not Paid by the Fund* | | - | |

| | | | | |
|---|---|---|---|---|
| Line 15c | Tax Administrator Fees & Bonds Not Paid by the Fund | - | | |
| | Total Disbursements for Plan Administrative Expenses Not Paid by the fund | | - | - |
| Line 16 | Disbursements to Court/Other Not Paid by the Fund: | - | - | |
| Line 16a | Investment Expenses/CRIS Fees | - | | |
| Line 16b | Federal Tax Payments | - | | |
| | Total Disbursements to Court/Other Not Paid by the Fund | | - | - |
| Line 17 | DC & State Tax Payments | - | - | |
| | | | | |
| Line 18 | No. of Claims | | | |
| Line 18a | # of Claims Received This Reporting Period | | | - |
| Line 18 b | # of Claims Received Since Inception of Fund | | | - |
| Line 19 | No. of Claimants/Investors: | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | - |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | | | - |

Receiver:

By: _____
   (signature)

Mary Margeret Hunt
_____
(printed Name)

Receiver
_____
(title)

Date: _____ 4-3-2020 _____