Peggy Hunt (Utah State Bar No. 6060)
Sarah Goldberg (Utah State Bar No. 13222)
John J. Wiest (Utah State Bar No. 15767)
**GREENBERG TRAURIG, LLP**
222 South Main Street, 5th Floor
Salt Lake City, UT  84101
Telephone: (801) 478-6900
huntp@gtlaw.com
goldbergsa@gtlaw.com
wiestj@gtlaw.com
*Court-Appointed Receiver, Peggy Hunt*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>             Plaintiff<br><br>    v.<br><br>TRAFFIC MONSOON, LLC, a Utah Limited Liability Company, and CHARLES DAVID SCOVILLE, an individual,<br><br>             Defendants. | **RECEIVER'S TENTH STATUS REPORT** *(JULY 1, 2020 THROUGH SEPTEMBER 30, 2020)*<br><br>2:16-cv-00832-JNP<br><br>The Honorable Jill N. Parrish |

Peggy Hunt, the Court-appointed Receiver (the "Receiver") for Traffic Monsoon, LLC, and the assets of Charles David Scoville that were obtained directly or indirectly from Traffic Monsoon, hereby submits this *Tenth Status Report* (the "Status Report") for the period of July 1, 2020 through September 30, 2020 (the "Reporting Period").  This Status Report is posted on the website for the receivership at www.trafficmonsoonreceivership.com (the "Receivership Website").

## I.      Introduction

This Status Report includes a summary of key events in this case to date as set forth in Part II below.  Part III is a summary of the Receiver's work during the Reporting Period.  Part IV provides a financial summary of the Receivership Estate, and administrative expenses that have been incurred and paid during the Reporting Period are discussed in Part V.  All of the documents filed with the Court that are referenced in this Status Report are posted on the Receivership's website at www.trafficmonsoonreceivership.com (the "Receivership Website").

Please note that a more detailed discussion about the background in this case is set forth in the *Receiver's First Status Report (July 26, 2016 Through March 31, 2017)* (the "First Status Report"),[1] which incorporated the Receiver's *Declarations* outlining the initial findings of her investigation.[2]  Since filing that First Status Report, the Receiver has continued to file Status Reports that, in addition to the updates posted on the Receivership Website, may be consulted for information about this case. To date the following additional Status Reports have been filed: *Receiver's Second Status Report (April 1, 2017 Through June 30, 2017)*;[3] *Receiver's Third Status Report (July 1, 2017 Through September 30, 2017)*[4]; *Receiver's Fourth Status Report (October 1, 2017 Through December 31, 2017)*;[5] *Receiver's Fifth Status Report (January 1,*

---

[1] Docket No. 91.

[2] *See Declaration of Receiver Peggy Hunt (Communications)* (the "Communications Declaration"), Docket No. 54; and the *Declaration of Peggy Hunt (Business Operations)* (the "Business Operations Declaration"), Docket No. 55.

[3] Docket No. 104.

[4] Docket No. 108.

[5] Docket No. 122.

*ACTIVE 52743525v1*

*2018 Through March 31, 2018);[6] Receiver's Sixth Status Report (April 1, 2018 Through June 30, 2018)* (the "Sixth Status Report");[7] *Receiver's Seventh Status Report (July 1, 2018 Through June 30, 2019);[8] Receiver's Eighth Status Report (July 1, 2019 Through March 30, 2020)*;[9] and *Receiver's Ninth Status Report (April 1, 2020 Through June 30, 2020)*[10] (collectively, the "Prior Status Reports").  The Prior Status Reports are posted on the Receivership Website.

## II.     Summary of Key Events in This Case

Persons interested in a detailed outline of the key events in this case should refer to the Receiver's Prior Status Reports and the Receivership Website.  Among other things, information is provided about (a) the Receiver, her legal counsel, Greenberg Traurig, LLP ("GT"), her forensic and general accountants, Berkley Research Group ("BRG"), and the claims agent in this case, Epiq Global ("Epiq"); and (b) the Receiver's ongoing investigation and estate administration.  Additionally, Prior Status Reports outline the facts giving rise to the commencement of this case by the United States Securities and Exchange Commission (the "SEC") against Traffic Monsoon, LLC ("Traffic Monsoon") and Charles David Scoville ("Scoville" and, together with Traffic Monsoon, the "Defendants").  They also outline the Court's various orders in this case, including its *Temporary Restraining Order and Order Freezing Assets*, the *Order Appointing Receiver* and amendments (collectively, the

---

[6] Docket No. 153.

[7] Docket No. 162

[8] Docket No. 194.

[9] Docket No. 239.

[10] Docket No. 268.
ACTIVE 52743525v1

"Receivership Order")*, the proceedings related to and entry of a *Preliminary Injunction*, and the Defendants' appeals of the Court's Orders (collectively, the "Appeals").

As of the filing of this Status Report, the Defendants' Appeals of the Court's Orders in this case have concluded.  The Orders, including the Receivership Order and the Preliminary Injunction, have been affirmed by the United States Court of Appeals for the Tenth Circuit,[11] and the Defendants' *Petition for a Writ of Certiorari* (the "Cert. Petition") filed in the United States Supreme Court has been denied.[12]

While the exact terms of the Preliminary Injunction should be reviewed, the Preliminary Injunction generally prohibits Scoville from operating Traffic Monsoon "or a business model substantially similar to Traffic Monsoon's sale of AdPacks."[13]  The Preliminary Injunction also imposes an asset freeze of all "assets, of whatever kind and wherever situated, of Traffic Monsoon, LLC and Charles D. Scoville that were obtained directly or indirectly from Traffic Monsoon, LLC. . . "[14] and stays all litigation in any court against either or both of the Defendants.[15]  In conjunction with the Preliminary Injunction, the Court entered a *Memorandum Decision and Order*,[16] which includes significant factual findings and a comprehensive legal

---

[11] *See SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019).

[12] *See* S. Ct. Case No. 18-1566.  The Court denied Scoville's requests for attorney's fees related to the Appeals. *See* Docket 244.

[13] Docket No. 80 (Preliminary Injunction, p. 1).

[14] Docket No. 80 (Preliminary Injunction, p. 2).

[15] Docket No. 80 (Preliminary Injunction, p. 3).

[16] Docket No. 79.

*ACTIVE 52743525v1*

analysis that are summarized in part in the Receiver's First Status Report.  Important is that the Court concluded that a clear showing had been made that the SEC was likely to succeed in establishing that Traffic Monsoon was a Ponzi scheme.

With the conclusion of the Appeals, Scoville was required to answer the SEC's Complaint in this case, seeking civil remedies against him.  Scoville did not file an answer and thus, on April 2, 2020, the SEC filed a *Motion for Default Judgment*, which is currently pending before the Court.[17]

Criminal charges have also been brought against the Defendants.[18]  On August 5, 2020, the United States obtained an indictment against the Defendants, charging them with wire fraud under 18 U.S.C. § 1343 and tax fraud under 26 U.S.C. § 7206.[19]

### III.   Work Done By the Receiver and Her Professionals During the Reporting Period

The primary work performed by the Receiver and her professionals during the Reporting Period is outlined below:

### A.   The Claims Process

Pursuant to the *Order Granting Renewed and Amended Motion Seeking Approval of (1) Claims Process; (2) Setting Claims Bar Date; and (3) Certain Notice Procedures*,[20] the deadline to submit Proofs of Claim in this case expired at 11:59 p.m. (Mountain Time) on April 10, 2020

---

[17] Docket Nos. 238, 243.

[18] *See United States v. Scoville et al.*, Case No. 2:20-cr-00242 (D. Utah).

[19] *Id.* Docket No. 1.

[20] Docket No. 232.

*ACTIVE 52743525v1*

("Claims Bar Date").  A summary of the notice of the Claim Bar Date and service of notice as

well as the summary of the Proofs of Claim submitted through June 22, 2020 is set forth in the

*Receiver's Claim Status Report* filed on June 24, 2020 which is incorporated herein.[21]

During the Reporting Period, the Receiver, together with her professionals, engaged in an

analysis of the over 23,000 Proofs of Claim that were submitted.  Over 12,500 claimants

submitted Proofs of Claim stipulating to the amount of their claim as calculated by the Receiver

(the "Scheduled Claim Amount").[22]  The remaining Proofs of Claim were analyzed and

categorized by potential objection.  Generally, objectionable Proofs of Claim fall into several

categories: untimely-filed Proofs of Claim; multiple Proofs of Claim being filed for the same

claim, including duplicates and amendments; Proofs of Claim asserting claims greater than the

Scheduled Claim Amount; Proofs of Claim submitted without a proper validation code; Proofs of

Claim filed by persons that the Receiver has no record of having invested with Traffic Monsoon;

and Proofs of Claim that do not state an amount.  Having identified the basis for objection, the

Receiver than conduced an analysis as to the most fair and efficient way to object to the claims

considering, among other things, cost and the potential for confusion by those receiving one or

more objections to their Proofs of Claim.  At the close of the Reporting Period, the Receiver had

begun formulating procedures for objecting to Proofs of Claim.  The result of this work will be

reported in the next Status Report.

---

[21] Docket No. 257.

[22] *Id.*
ACTIVE 52743525v1

### B.        Litigation on Behalf of the Receivership Estate

During the Reporting Period, the Receiver and her professionals continued an investigation of claims against investors who profited from their involvement in Traffic Monsoon ("Net Winners") as well as others.  The Court authorized the Receiver to commence litigation related to claims held by the Receivership Estate,[23] and based on her initial investigation, the Receiver filed a *Class Action Complaint* (the "Complaint") in this Court against 11 named Net Winners (the "Named Defendants") and a proposed class of approximately 4,819 other Net Winners.[24]  All of the Named Defendants have been served except Imtiaz Aslam. None of the Named Defendants who have been served have responded to the Complaint.

Now, because the uncontested claims asserted against the Receivership Estate are more than the approximately $53 million currently held by the Receiver,[25] the Receiver has determined that it is necessary to further pursue this litigation.  The Receiver spent time during the Reporting Period in conjunction with her professionals investigating the Named Defendants. She has also commenced the process of seeking default judgments against certain Named Defendants. On or about August 21, 2020, the Receiver filed *Motions for Default Judgment* against Named Defendants Ernest Ganz III and David Barker, both of whom reside in the United States, and those Motions are currently pending before the Court.[26]

---

[23] Docket No. 181.

[24] *Hunt v. Aslam*, Case No. 2:19-cv-275 (D. Utah).

[25] *See* Claim Status Report, Docket No. 257.

[26] *See Hunt v. Aslam*, Case No. 2:19-cv-275, Docket Nos. 57, 60.
ACTIVE 52743525v1

The Receiver also has determined that there may be other claims held by the Receivership Estate. The Receiver and her professionals are evaluating those claims now that litigation has been determined to be necessary to maximize the value of the Receivership Estate.

### C.     Investigating Unauthorized Manchester Flat Transfer

One of the assets of the Receivership Estate is an interest in a flat located in Manchester, United Kingdom, and a related parking space that Scoville purchased in August 2015 using funds obtained from Traffic Monsoon (the "Manchester Flat").  In the Sixth Status Report, the Receiver outlined facts she has discovered about an unauthorized transfer of the Manchester Flat, and her investigation of that unauthorized transfer. [27]  Obtaining information about this transfer has been drawn-out due to numerous factors discussed in Prior Status Reports.  The Receiver has determined that monies related to the Manchester Flat were deposited to Santander Bank in the United Kingdom.  During the current Reporting Period, the Receiver through her professionals requested an additional Letter Rogatory related to obtaining information regarding the disbursement of these funds, which the Court granted on September 23, 2020.[28]

### D.     Attending to General Administration of the Receivership Estate

During the Reporting Period, the Receiver and her professionals have attended to numerous matters related to the administration of the Receivership Estate.  These tasks include, but are not limited to, monitoring and managing bank accounts; negotiating, when appropriate, applicable interest rates for funds on deposit; reviewing professional billings and requesting adjustments when appropriate; following accounting protocols; preparing SFARs (as defined

---

[27] Docket No. 162

[28] Docket Nos. 265, 266, 269.
ACTIVE 52743525v1

below); communicating with investors; managing the Receivership Website and information provided through the Call Center; evaluating and paying costs related to administration and litigation; evaluating issues related to compliance with applicable tax laws; filing papers required by applicable tax laws; interfacing with financial account institutions; coordinating with governmental entities as requested; and, when necessary, responding to statements made or inquires by Scoville and/or his counsel.

### IV.   Standardized Fund Accounting Report ("SFAR")

A summary of the financial condition of the Receivership Estate for each quarter of the Reporting Period is set forth in the SFAR attached hereto as **Exhibit 1**.  At the end of the Reporting Period, the Receivership Estate had funds in the total amount of $52,328,825.35.[29] Interest income has totaled $3,027.65,[30] and expenses have totaled $188,103.98.[31] The expenses include disbursements to Epiq for data hosting and services, including services related to the Receivership Website, the Call Center and the claims process.  During the Reporting Period, the Receiver negotiated a lower rate on data hosting with Epiq and that rate will apply going forward.  Expenses have also included taxes that were required to be paid to the State of Utah on income of the Receivership Estate because Utah does not permit the application of loss

---

[29] *See* Exh. 1 (SFAR for period ending September 30, 2020).

[30] *See id.* (Line 4 recording interest). With the recent drop in interest rates, interest on the Receivership Estate's accounts dropped significantly.  During the Reporting Period, the Receiver has negotiated with the bank holding the accounts to provide a more favorable rate given the amount on deposit.  She was successful in these efforts, but given the markets, interest income remains relatively low.

[31] *See id.* (Line 10 recording disbursements).

*ACTIVE 52743525v1*

carryovers.  Recently, the State adopted legislation allowing for the application of loss carryovers and the Receiver has authorized BRG to request a refund of those taxes.

## V.    Administrative Expenses During the Reporting Period

The fees and out of pocket expenses of the Receiver, GT, and BRG must be approved by the Court prior to payment.  The Court has entered an *Order Establishing Administrative Expense Payment Procedures* (the "Fee Procedures Order"),[32] setting forth procedures for the request and payment of professional fees and expenses in this case.  Among other things, the Fee Procedures Order authorizes the Receiver and her professionals to file monthly "Notices of Request for Payment."  Absent objection in accordance with the Fee Procedures Order, the Receiver may pay 80% of fees and 100% of out-of-pocket expenses requested in a Notice of Request for Payment.  All monthly disbursements and any other requests for fees and expenses not requested pursuant to a Notice for Request for Payment are subject to Court approval through "Fee Applications".

### a.    Approved Fee Applications Relevant to this Reporting Period

On or about September 24, 2020, the Receiver filed a *Ninth Interim Fee Application* for Receiver and Receiver's Professionals requesting fees and expenses for services rendered from April 1, 2020 through June 30, 2020.[33]  The Court entered an *Order* after the close of the Reporting Period, on October 30, 2020, approving that Fee Application.[34]  The fees and expenses

---

[32]  Docket No. 101.

[33] Docket No. 270.

[34] Docket No. 276.

*ACTIVE 52743525v1*

have now been paid, but were not paid prior to the close of the Reporting Period.  Thus, these payments will be reported in the next Status Report and SFAR.

####     b.     Fees and Expenses Incurred During the Current Reporting Period

Shortly after filing this Status Report, the Receiver intends to file a *Tenth Interim Fee Application* for the period of July 1, 2020 through September 30, 2020.  That Application will outline the total hours spent by the Receiver, GT and BRG, the fees requested for their services, and reimbursement of out-of-pocket expenses incurred during the Reporting Period.  None of these fees and expenses have been paid to date, other than those authorized to be paid under the Fee Procedures Order, all of which will be reported in the intended Fee Application.  Specifically, the Receiver filed *Notices of Request for Payment* for July, August and September of 2020,[35] and no objections to those Notices were filed.  Accordingly, 80% of the fees outlined in those Notices were paid, and 100% of the expenses outlined were reimbursed as authorized by the Fee Procedure Order.

## VI.     Conclusion

The Receiver currently holds over $52 million which she would like to distribute to those with allowed claims against the Receivership Estate.  The Receiver is working to develop the most effective and efficient procedures to attend to the Proofs of Claim that require objections.  Once some of the objections have been resolved, the Receiver will be in a better position to

---

[35] Docket Nos. 272, 273, 278.

*ACTIVE 52743525v1*

propose a Plan of Distribution to Court for approval.

Dated this 9th day of December, 2020.

**RECEIVER**

_/s/ Peggy Hunt_
*Peggy Hunt, Receiver*

*ACTIVE 52743525v1*

12

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December, 2020, I caused the foregoing *Tenth Status Report (July 1, 2020 Through September 30, 2020)* to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record in this case.

/s/ Candy Long

*ACTIVE 52743525v1*

Exhibit 1

**STANDARDIZED FUND ACCOUNTING REPORT for Traffic Monsoon, LLC Receivership - Cash Basis**

Receivership; Civil Court Case No. 2:16-00832

REPORTING PERIOD 07/01/2020 TO 09/30/2020

**Fund Accounting (See Instructions):**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 04/01/20) | | | 52,513,901.68 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | - | |
| Line 3 | Cash and Securities | - | - | |
| Line 4 | Interest/Dividend Income | 3,027.65 | 3,027.65 | |
| Line 5 | Business Asset Liquidation | - | - | |
| Line 6 | Personal Asset Liquidation | - | - | |
| Line 7 | Third-Party Litigation | - | - | |
| Line 8 | Miscellaneous-Other | - | - | |
| | Total Funds Available (Lines 1-8): | | 3,027.65 | 52,516,929.33 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Senior Secured Lenders/Investors | - | - | |
| Line 10 | Disbursements for Receivership Operations | | 188,103.98 | |
| Line 10 | *Internal Loans* | - | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | 186,436.98 | | |
| | 1. Fees: | - | | |
| | Receiver | 3,213.72 | | |
| | Legal Advisors | 4,986.00 | | |
| | Accountants | 20,518.45 | | |
| | Consultants | 157,718.81 | | |
| Line 10b | Business Asset Expenses | - | | |
| Line 10c | Personal Asset Expenses | - | | |
| Line 10d | Hospital Settlements & Investment Expenses | - | | |
| Line 10e | Third Party Litigation Expenses | - | | |
| | 1. Attorney Fees | - | | |
| | 2 Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | | - | |
| Line 10f | *Tax Administrator Fees and Bonds* | - | | |
| Line 10g | *Federal and State Tax Payments* | 1,667.00 | | |
| | Total Disbursements for Receivership Operations | | 188,103.98 | 188,103.98 |
| Line 11 | Disbursments for Distribution Expenses Paid by the Fund: | - | - | |
| Line 11 | *Distribution Plan Development Expenses* | - | | |
| Line 11a | *Distribution Plan Development Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | | - | |
| Line 11b | *Distribution Plan Implementation Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |

|  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
|  | Notice/Publishing Approved Plan | - |  |  |
|  | Claimant Identification | - |  |  |
|  | Claims Processing | - |  |  |
|  | Web Site Maintenance/Call Center | - |  |  |
|  | 4. Fund Administrator Bond | - |  |  |
|  | 5. Miscellaneous | - |  |  |
|  | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - |  |  |
|  | *Total Plan Implementation Expenses* |  | - |  |
|  | **Total Disbursement for Distribution Expenses Paid by the Fund** |  | - | - |
| Line 12 | **Disbursements to Court/Other:** |  | - |  |
| Line 12 | *Disbursements to Court* | - |  |  |
| Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | - |  |  |
| Line 12b | *Federal Tax Payments* | - |  |  |
|  | **Total Disbursements to Court/Other:** |  | - | - |
|  | **Total Funds Disbursed (Lines 9-12)** |  |  | 188,103.98 |
| Line 13 | **Ending Balance (As of 06/30/20)** |  |  | 52,328,825.35 |
| Line 14 | **Ending Balance of Fund - Net Assets:** |  |  |  |
| Line 14a | *Cash & Cash Equivalents* |  |  | 52,328,825.35 |
| Line 14b | *Investments* |  |  | - |
| Line 14c | *Other Assets or Uncleared Funds* |  |  | - |
|  | **Total Ending Balance of Fund - Net Assets** |  |  | 52,328,825.35 |

|  | **OTHER SUPPLEMENTAL INFORMATION:** |  |  |  |
|---|---|---|---|---|
|  |  | Detail | Subtotal | Grand Total |
|  | **Report of Items NOT to be paid by the Fund:** |  |  |  |
| Line 15 | **Disbursements of Plan Administration Expenses Not Paid by the Fund:** | - | - |  |
| Line 15 | *Disbursements for Plan Administration Expenses* | - |  |  |
| Line 15a | *Plan Development Expenses Not Paid bu the Fund:* | - |  |  |
|  | 1. Fees | - |  |  |
|  | Fund Administrator | - |  |  |
|  | IDC | - |  |  |
|  | Receiver | - |  |  |
|  | Legal Advisers | - |  |  |
|  | Accountants | - |  |  |
|  | Consultants | - |  |  |
|  | 2. Administrative Expenses | - |  |  |
|  | 3. Approved Living Allowance | - |  |  |
|  | 4. Miscellaneous | - |  |  |
|  | *Total Plan Development Expenses Not Paid by the Fund* |  | - |  |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | - |  |  |
|  | 1. Fees: | - |  |  |
|  | Fund Administrator | - |  |  |
|  | IDC | - |  |  |
|  | Receiver | - |  |  |
|  | Legal Advisers | - |  |  |
|  | Accountants | - |  |  |
|  | Consultants | - |  |  |
|  | 2. Administrative Expenses | - |  |  |
|  | 3. Investor Identification: | - |  |  |
|  | Notice/Publishing Approved Plan | - |  |  |
|  | Claimant Identification | - |  |  |
|  | Claims Processing | - |  |  |
|  | Web Site Maintenance/Call Center | - |  |  |
|  | 4. Fund Administrator Bond | - |  |  |
|  | 5. Miscellaneous | - |  |  |
|  | 6. FAIR Reporting Expenses | - |  |  |
|  | *Total Plan Implementation Expesnses Not Paid by the Fund* |  | - |  |

| | | | | |
|---|---|---|---|---|
| Line 15c | Tax Administrator Fees & Bonds Not Paid by the Fund | - | | |
| | Total Disbursements for Plan Administrative Expenses Not Paid by the fund | | - | - |
| Line 16 | Disbursements to Court/Other Not Paid by the Fund: | - | - | |
| Line 16a | Investment Expenses/CRIS Fees | - | | |
| Line 16b | Federal Tax Payments | - | | |
| | Total Disbursements to Court/Other Not Paid by the Fund | - | - | |
| Line 17 | DC & State Tax Payments | - | - | |
| | | | | |
| Line 18 | No. of Claims | | | |
| Line 18a | # of Claims Received This Reporting Period | | | - |
| Line 18 b | # of Claims Received Since Inception of Fund | | | - |
| Line 19 | No. of Claimants/Investors: | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | - |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | | | - |

Receiver:

By: _____
(signature)

Mary Margeret Hunt
_____
(printed Name)

Receiver
_____
(title)

Date: _____ 12/9/2020 _____