Peggy Hunt (Utah State Bar No. 6060)
John J. Wiest (Utah State Bar No. 15767)
**GREENBERG TRAURIG, LLP**
222 South Main Street, 5th Floor
Salt Lake City, UT  84101
Telephone: (801) 478-6900
huntp@gtlaw.com
wiestj@gtlaw.com

*Attorneys for Peggy Hunt as Court-Appointed Receiver*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff<br><br>    v.<br><br>TRAFFIC MONSOON, LLC, a Utah Limited Liability Company, and CHARLES DAVID SCOVILLE, an individual,<br><br>          Defendants. | **RECEIVER'S TWELFTH STATUS REPORT**<br>*(JANUARY 1, 2021 THROUGH MARCH 31, 2021)*<br><br>2:16-cv-00832-JNP<br><br>The Honorable Jill N. Parrish |

Peggy Hunt, the Court-appointed Receiver (the "Receiver") for Traffic Monsoon, LLC,

and the assets of Charles David Scoville that were obtained directly or indirectly from Traffic

Monsoon, hereby submits this *Twelfth Status Report* (the "Status Report") for the period of

January 1, 2021 through March 31, 2021 (the "Reporting Period").  This Status Report is posted

on the website for the receivership at www.trafficmonsoonreceivership.com (the "Receivership

Website").

I.      **Introduction**

This Status Report includes a summary of key events in this case to date as set forth in

Part II below.  Part III is a summary of the Receiver's work during the Reporting Period.  Part IV

provides a financial summary of the Receivership Estate, and administrative expenses that have

been incurred and paid during the Reporting Period are discussed in Part V.  All of the

documents filed with the Court that are referenced in this Status Report are posted on the

Receivership's website at www.trafficmonsoonreceivership.com (the "Receivership Website").

Please note that a more detailed discussion about the background in this case is set forth

in the *Receiver's First Status Report (July 26, 2016 Through March 31, 2017)* (the "First Status

Report"),[1] which incorporated the Receiver's *Declarations* outlining the initial findings of her

investigation.[2]  Since filing that First Status Report, the Receiver has continued to file Status

Reports that, in addition to the updates posted on the Receivership Website, may be consulted for

information about this case. To date the following additional Status Reports have been filed:

*Receiver's Second Status Report (April 1, 2017 Through June 30, 2017)*;[3] *Receiver's Third*

*Status Report (July 1, 2017 Through September 30, 2017)*[4]; *Receiver's Fourth Status Report*

*(October 1, 2017 Through December 31, 2017)*;[5] *Receiver's Fifth Status Report (January 1,*

---

[1] Docket No. 91.

[2] *See Declaration of Receiver Peggy Hunt (Communications)* (the "Communications Declaration"), Docket No. 54;
and the *Declaration of Peggy Hunt (Business Operations)* (the "Business Operations Declaration"), Docket No. 55.

[3] Docket No. 104.

[4] Docket No. 108.

[5] Docket No. 122.

*ACTIVE 56928422v4*

*2018 Through March 31, 2018);[6] Receiver's Sixth Status Report (April 1, 2018 Through June 30, 2018)* (the "Sixth Status Report");[7] *Receiver's Seventh Status Report (July 1, 2018 Through June 30, 2019);[8] Receiver's Eighth Status Report (July 1, 2019 Through March 30, 2020);[9] Receiver's Ninth Status Report (April 1, 2020 Through June 30, 2020);[10] Tenth Status Report (July 1, 2020 Through September 30, 2020;[11]* and *Eleventh Status Report (October 1, 2020 Through December 31, 2020)[12]* (collectively, the "Prior Status Reports").  The Prior Status Reports are posted on the Receivership Website.

## II.      Summary of Key Events in This Case

Persons interested in a detailed outline of the key events in this case should refer to the Receiver's Prior Status Reports and the Receivership Website.  Among other things, information is provided about (a) the Receiver, her legal counsel, Greenberg Traurig, LLP ("GT"), her forensic and general accountants, Berkley Research Group ("BRG"), and the claims agent in this case, Epiq Global ("Epiq"); and (b) the Receiver's ongoing investigation and estate administration.  Additionally, Prior Status Reports outline the facts giving rise to the commencement of this case by the United States Securities and Exchange Commission (the

---

[6] Docket No. 153.

[7] Docket No. 162

[8] Docket No. 194.

[9] Docket No. 239.

[10] Docket No. 268.

[11] Docket No. 279.

[12] Docket No. 297.

*ACTIVE 56928422v4*

"SEC") against Traffic Monsoon, LLC ("Traffic Monsoon") and Charles David Scoville

("Scoville" and, together with Traffic Monsoon, the "Defendants").  They also outline the

Court's various orders in this case, including its *Temporary Restraining Order and Order

Freezing Assets*, the *Order Appointing Receiver* and amendments (collectively, the

"Receivership Order")*,* the proceedings related to and entry of a *Preliminary Injunction*, and the

Defendants' appeals of the Court's Orders (collectively, the "Appeals").

As of the filing of this Status Report, the Appeals have concluded.  The Orders, including

the Receivership Order and the Preliminary Injunction, have been affirmed by the United States

Court of Appeals for the Tenth Circuit,[13] and the Defendants' *Petition for a Writ of Certiorari*

filed in the United States Supreme Court has been denied.[14]

While the exact terms of the Preliminary Injunction should be reviewed, the Preliminary

Injunction generally prohibits Scoville from operating Traffic Monsoon "or a business model

substantially similar to Traffic Monsoon's sale of AdPacks."[15]  The Preliminary Injunction also

imposes an asset freeze of all "assets, of whatever kind and wherever situated, of Traffic

Monsoon, LLC and Charles D. Scoville that were obtained directly or indirectly from Traffic

Monsoon, LLC. . . "[16] and stays all litigation in any court against either or both of the

---

[13] *See SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019).

[14] *See* S. Ct. Case No. 18-1566.  The Court denied Scoville's requests for attorney's fees related to the Appeals.  *See* Docket 244.

[15] Docket No. 80 (Preliminary Injunction, p. 1).

[16] Docket No. 80 (Preliminary Injunction, p. 2).

*ACTIVE 56928422v4*

Defendants.[17]  In conjunction with the Preliminary Injunction, the Court entered a *Memorandum Decision and Order*,[18] which includes significant factual findings and a comprehensive legal analysis that are summarized in part in the Receiver's First Status Report.  Important is that the Court concluded that a clear showing had been made that the SEC was likely to succeed in establishing that Traffic Monsoon was a Ponzi scheme.

With the conclusion of the Appeals, Scoville was required to answer the SEC's Complaint seeking civil remedies against him in this case.  Scoville did not file an answer.  On January 5, 2021, at the SEC's request, the Court entered on an *Order Granting Motion for Default Judgment*,[19] against Scoville, enjoining Scoville and his agents from operating any business similar to Traffic Monsoon and ordering Scoville to disgorge $2,537,642.93 for victim compensation.  The Court also ordered Scoville to pay a civil penalty of $2,426,749.00.

Criminal charges have also been brought against the Defendants.[20]  On August 5, 2020, the United States obtained an indictment against the Defendants, charging them with wire fraud under 18 U.S.C. § 1343 and tax fraud under 26 U.S.C. § 7206.[21]

III.    **Work Done By the Receiver and Her Professionals During the Reporting Period**

The primary work performed by the Receiver and her professionals during the Reporting Period is outlined below:

---

[17] Docket No. 80 (Preliminary Injunction, p. 3).

[18] Docket No. 79.

[19] Docket Nos. 284.

[20] *See United States v. Scoville et al.*, Case No. 2:20-cr-00242 (D. Utah).

[21] *Id.* Docket No. 1.

A.       **The Claims Process**

Pursuant to the *Order Granting Renewed and Amended Motion Seeking Approval of (1)*

*Claims Process; (2) Setting Claims Bar Date; and (3) Certain Notice Procedures*[22] the deadline

to submit Proofs of Claim in this case expired at 11:59 p.m. (Mountain Time) on April 10, 2020.

As part of the approved claim submission process, Claimants were provided the amount of their

claim as calculated by the Receiver (the "Scheduled Claim Amount"), and given the option to

accept the Scheduled Claim Amount, or reject the Scheduled Claim Amount, assert a different

amount and provide information about their asserted claim.

A summary of the over 23,000 Proofs of Claim submitted through June 22, 2020 is set

forth in the *Receiver's Claim Status Report* which is incorporated herein.[23]  Excluding the Proof

of Claim of one claimant asserting a claim in the amount of $99,999,999,999,999.99 (the "$99

Trillion Claim"), the Proofs of Claim asserted totaled $219,218,810 as of March 2021.[24]  The

approved claims procedures proved to be successful, as over 12,500 claimants submitted Proofs

of Claim stipulating to the Scheduled Claim Amount, thus requiring no further action related to

the allowance or disallowance of their Proofs of Claim. These uncontested claims total

$36,383,808. The remaining contested Proofs of Claim, total approximately $182,835,002.

During the Reporting Period, the Receiver and her professionals have been working on matters

related to contested Proofs of Claim as discussed below.

---

[22] Docket No. 232.

[23] Docket No. 257.

[24] Docket No. 314 (*Receiver's Status Report Regarding Omnibus Objections to Proofs of Claim*), p. 7 (outlining additional Proofs of Claim submitted after the filing of the initial Claims Status Report).

### B.     Claim Objections

For the Receiver to propose a Plan of Distribution and make a meaningful distribution to those with allowed claims, she has determined that it is necessary to object to contested Proofs of Claim.  Accordingly, she proposed objection procedures which were approved by the Court pursuant to an *Order Granting Receiver's Ex Parte Motion for Approval of Claim Objection Process and Settlement Authority*[25] (the "Approved Objection Procedures").  During the Reporting Period, the Receiver has continued to build on work done earlier related to claim objections,[26] including additional analysis of contested Proofs of Claim.

On January 8, 2021, the Receiver served omnibus objections to 6,065 Proofs of Claim in accordance with the Approved Objection Procedures.[27]  A summary of these objections is set forth in the *Receiver's Status Report Regarding Omnibus Objections to Proofs of Claim* filed on March 19, 2021, which is incorporated herein.[28]  The omnibus objections proved to be very cost-effective inasmuch as many Claimants either did not respond to the objections or agreed with the objections and accepted that their Proofs of Claim should be disallowed or allowed in a reduced amount.[29]

On April 1, 2021, the Receiver filed a *Verified Motion Requesting Order (I) Disallowing Certain Proofs of Claim in Their Entirety and (II) Allowing Certain Proofs of Claim in a*

---

[25] Docket No. 275.

[26] *See* Docket Nos. 279, ps. 5-6, and 297, ps. 4-6.

[27] *See* Docket Nos. 299 – 305.

[28] Docket No. 314.

[29] *Id.*

*Modified Amount (No Response Claims)* (the "No Response Claims Motion").[30]  The No

Response Claims Motion, which was filed pursuant to the Allowed Objection Procedures and is

currently pending before the Court, requests that the Court enter an Order either disallowing or

allowing in reduced amounts contested Proofs of Claim to which the Receiver objected in her

omnibus objections and received no response.  Also on April 1, 2021, the Receiver filed *a Notice*

*of (I) Disallowance of Certain Proofs of Claim in Their Entirety and (II) Allowance of Certain*

*Proofs of Claim in a Modified Amount,*[31] to reflect the resolution of objections to Proofs of

Claim based on Claimants' responses to and agreement with the Receiver's objections to their

Proofs of Claim.

  As a result of the omnibus objections and assuming the Court enters an order granting the

No Response Claims Motion, 5,596 contested Proofs of Claims asserting over $90.6 million in

claims will be reduced to allowed claims in the amount of $3,038,419.33.[32]  There remain

approximately 500 Proofs of Claim to which the Receiver objected in the omnibus objections

and received a response.  These contested Proofs of Claim assert approximately $3.25 million in

claims.  The Receiver and her professionals are reviewing these Proofs of Claim and the

corresponding responses to determine the most efficient and effective way of resolving the

Receiver's objections in accordance with the Approved Objection Procedures.

---

[30] Docket No. 320.

[31] Docket No. 317.

[32] Docket Nos. 317, Ex. 1, and 320, Ex. 2.

ACTIVE 56928422v4

There remain approximately 4,500 Proofs of Claim, including the $99 Trillion Claim, which the Receiver has not yet objected to and which require resolution.  Excluding the $99 Trillion Claim, the amount of these remaining Proofs of Claim total approximately $88.9 million. During the Reporting Period, the Receiver and her professionals have formulated additional omnibus objections to certain Proofs of Claim, and these objections were served in accordance with the Approved Objection Procedures on May 3, 2021.  The Receiver also anticipates serving targeted objections to certain Proofs of Claim that have specific issues not appropriately dealt with in an omnibus objection.  More information about these objections will be provided in the next Status Report.  With these objections made, the Receiver is hopeful that the amount of contested Proofs of Claim will be reduced to an amount that she can propose a viable Plan of Distribution.

C.      **Italian Investor Claims**

Significant progress has been made during the Reporting Period regarding claims of a set of investors located in Italy, who invested monies in Traffic Monsoon through Fabiano Santos ("Santos") and his entity, Advertising Corp. Santos, who is currently under criminal investigation in Italy for fraud, submitted several Proofs of Claim and, with the exception of one in the amount of $1,000,000, all of the Proofs of Claim have been objected to. The Receiver is working with an attorney in GT's Milan office to evaluate the link between Santos, the Italian investors, and Traffic Monsoon and to determine the best way to ensure that any distribution from the Receivership Estate on account of these investments goes to the true victims of Traffic Monsoon.

D.      **Asset Recovery**

During the Reporting Period, the Receiver and her professionals continued to pursue

those who profited from their investment in Traffic Monsoon ("Net Winners") as well as others.

Default Judgments were obtained against Ernest Ganz III and David Barker,[33] both Net Winners

who reside in the United States.  She has now domesticated those Default Judgments and intends

to take appropriate action related thereto.  On February 26, 2021, the Receiver also filed *Motions

for Default Judgment* regarding five Net Winners located in the United Kingdom,[34] and those

Motions are currently pending before the Court.

The Receiver also has determined that there may be other claims held by the

Receivership Estate, particularly related to certain entities' failure to turn over assets of the

Receivership Estate in accordance with the Receivership Order and the Preliminary Injunction.

During the Reporting Period, the Receiver took actions to obtain additional funds from Allied

Wallet, an e-wallet company that turned over approximately $4.3 million on the Receiver's

demand.  The Receiver maintains that the Receivership Estate has a claim against Allied Wallet

in an amount of over $1.8 million as a result of fees and charges which Allied Wallet debited

from Traffic Monsoon's account both before and after the commencement of this case.  Allied

Wallet contested the Receiver's claims, arguing that the fees and charges were allowable under

Traffic Monsoon's contract and applicable law, and the parties were attempting to resolve their

disputes consensually.  Then, BDO LLP was appointed by an English court to liquidate Allied

Wallet.  The Receiver and her professionals have been working with the liquidator regarding the

---

[33] *See Hunt v. Aslam*, Case No. 2:19-cv-275, Docket Nos. 65, 66.

[34] *Hunt v. Aslam*, Case No. 2:19-cv-275, Docket Nos. 75, 78, 81, 84, 87.

ACTIVE 56928422v4

Receivership Estate's claims against Allied Wallet and, during the Reporting Period, a formal claim was submitted to the liquidator which is being reviewed.

The Receiver also has continued to investigate issues related to claims against MH Pillars Ltd., d/b/a Payza, another e-wallet company that it is believed held funds of Traffic Monsoon at the time that the Court froze Traffic Monsoon's assets. Through consensual exchanges of information, the Receiver obtained significant records from Payza that allowed her to recreate Traffic Monsoon's records. The Receiver made demand on Payza for Traffic Monsoon funds that it appeared Payza held at the time this case was commenced, but Payza refused to turn over any funds, claiming that if it was holding Traffic Monsoon funds, they were subject to chargebacks by account holders. The Receiver discovered that the principals of Payza have been indicted and its assets have been the subject of criminal forfeiture proceedings. The Receiver is working with the Department of Justice on issues related to the Payza and Traffic Monsson.

### E.      Investigating Unauthorized Manchester Flat Transfer

One of the assets of the Receivership Estate is an interest in a flat located in Manchester, United Kingdom, and a related parking space that Scoville purchased in August 2015 using funds obtained from Traffic Monsoon (the "Manchester Flat"). In the Sixth Status Report, the Receiver outlined facts she has discovered about an unauthorized transfer of the Manchester Flat, and her investigation of that unauthorized transfer.[35] Obtaining information about this transfer has been drawn-out due to numerous factors discussed in Prior Status Reports. The Receiver has determined that monies related to the Manchester Flat were deposited to Santander Bank in the

---

[35] Docket No. 162

ACTIVE 56928422v4

United Kingdom, and she now has information about who received those funds.[36]  The Receiver

and her professionals are evaluating claims that might exist related to this matter taking into

consideration who received the money and a cost-benefit analysis.

      **F.**      **Attending to General Administration of the Receivership Estate**

During the Reporting Period, the Receiver and her professionals have attended to

numerous matters related to the administration of the Receivership Estate.  These tasks include,

but are not limited to, monitoring and managing bank accounts; negotiating, when appropriate,

applicable interest rates for funds on deposit; reviewing professional billings and requesting

adjustments when appropriate; following accounting protocols; preparing SFARs (as defined

below); communicating with investors; managing the Receivership Website and information

provided through the Call Center; evaluating and paying costs related to administration and

litigation; evaluating issues related to compliance with applicable tax laws; filing papers required

by applicable tax laws;[37] interfacing with financial account institutions; coordinating with

governmental entities as requested; and, when necessary, responding to statements made or

inquires by Scoville and/or his counsel.

    **IV.**      **Standardized Fund Accounting Report ("SFAR")**

A summary of the financial condition of the Receivership Estate for each quarter of the

Reporting Period is set forth in the SFAR attached hereto as **Exhibit 1**.  At the end of the

---

[36] *See* Docket Nos. 265, 266, 269.

[37] During the Reporting Period, the Receiver obtained a refund from the State of Utah in the amount of $1,593.96 based on tax returns amended to take advantage of tax legislation related to COVID-19. *See* Exh. 1 (SFAR, Line 8).

Reporting Period, the Receivership Estate had funds in the total amount of $51,556,655.93.[38]

Interest income has totaled $6,360.82,[39] and expenses have totaled $224,713.77.[40] The expenses

include disbursements to Epiq for data hosting and services, including services related to the

Receivership Website, the Call Center and the claims process.

V.      **Administrative Expenses During the Reporting Period**

The fees and out of pocket expenses of the Receiver, GT, and BRG must be approved by

the Court prior to payment.  The Court has entered an *Order Establishing Administrative*

*Expense Payment Procedures* (the "Fee Procedures Order"),[41] setting forth procedures for the

request and payment of professional fees and expenses in this case.  Among other things, the Fee

Procedures Order authorizes the Receiver and her professionals to file monthly "Notices of

Request for Payment."  Absent objection in accordance with the Fee Procedures Order, the

Receiver may pay 80% of fees and 100% of out-of-pocket expenses requested in a Notice of

Request for Payment.  All monthly disbursements and any other requests for fees and expenses

not requested pursuant to a Notice for Request for Payment are subject to Court approval through

"Fee Applications".

---

[38] *See* Exh. 1 (SFAR, Line 14).

[39] *See id.* (Line 4). With the recent drop in interest rates, interest on the Receivership Estate's accounts dropped significantly.  The Receiver negotiated with the bank holding the accounts to provide a more favorable rate given the amount on deposit, but given the markets, interest income remains relatively low.

[40] *See id.* (Line 10).

[41] Docket No. 101.

*ACTIVE 56928422v4*

a.    **Approved Fee Applications Relevant to this Reporting Period**

On or about February 19, 2021, the Receiver filed a *Eleventh Interim Fee Application* for

Receiver and Receiver's Professionals requesting fees and expenses for services rendered from

October 1, 2020 through December 31, 2020.[42]  The Court entered an *Order* on February 24,

2021, approving that Fee Application,[43] and those fees and expenses have now been paid.[44]

b.    **Fees and Expenses Incurred During the Current Reporting Period**

Shortly after filing this Status Report, the Receiver intends to file a *Twelfth Interim Fee*

*Application* for the period of January 12021 through March 31, 2021.  That Application will

outline the total hours spent by the Receiver, GT and BRG, the fees requested for their services,

and reimbursement of out-of-pocket expenses incurred during the Reporting Period.  None of the

fees and expenses have been paid to date, other than those authorized to be paid under the Fee

Procedures Order, all of which will be reported in the intended Fee Application.  Specifically, the

Receiver filed *Notices of Request for Payment* for January and February 2021,[45] and no

objections to those Notices were filed.  Accordingly, 80% of the fees outlined in those Notices

were paid, and 100% of the expenses outlined were reimbursed as authorized by the Fee

Procedure Order.  The Receiver also submitted a proposed *Notice of Request for Payment* for

March 2021 to the SEC after the Reporting Period and will file it with the Court after receiving

---

[42] Docket No. 309.

[43] Docket No. 310.

[44] *See* Exh. 1 (SFAR, Line 10).

[45] Docket Nos. 315, 316.

*ACTIVE 56928422v4*

the SEC's comments.  Absent objection, those fees and expenses will be partially paid in accordance with the Fee Procedure Order.

## VI.   Conclusion

The Receiver currently holds over $51.5 million which she would like to distribute to those with allowed claims against the Receivership Estate.  As discussed above, the claims resolution process is well under way, and the Receiver will endeavor to resolve contested claim as quickly and efficiently as possible so that she can propose a Plan of Distribution to the Court for approval.

Dated this 10th day of May, 2021.

**RECEIVER**

   */s/ Peggy Hunt*
   *Peggy Hunt, Receiver*

14

*ACTIVE 56928422v4*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May, 2021, I caused the foregoing *Twelfth Status Report (January 1, 2021 Through March 31, 2021)* to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record in this case.

/s/ Candy Long

ACTIVE 56928422v4

# Exhibit 1

**STANDARDIZED FUND ACCOUNTING REPORT for Traffic Monsoon, LLC Receivership - Cash Basis**
Receivership; Civil Court Case No. 2:16-00832
REPORTING PERIOD 01/01/2021 TO 03/31/2021

**Fund Accounting (See Instructions):**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 04/01/20) | | | 51,773,414.92 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | - | |
| Line 3 | Cash and Securities | - | - | |
| Line 4 | Interest/Dividend Income | 6,360.82 | 6,360.82 | |
| Line 5 | Business Asset Liquidation | - | - | |
| Line 6 | Personal Asset Liquidation | - | - | |
| Line 7 | Third-Party Litigation | - | - | |
| Line 8 | Miscellaneous-Other | 1,593.96 | 1,593.96 | |
| | Total Funds Available (Lines 1-8): | | 7,954.78 | 51,781,369.70 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Senior Secured Lenders/Investors | - | - | |
| Line 10 | Disbursements for Receivership Operations | | 224,713.77 | |
| Line 10 | *Internal Loans* | - | | |
| Line10a | *Disbursements to Receiver or Other Professionals* | 224,713.77 | | |
| | 1. Fees: | - | | |
| | Receiver | 11,248.02 | | |
| | Legal Advisors | 22,607.26 | | |
| | Accountants | 4,298.00 | | |
| | Consultants | 186,560.49 | | |
| Line 10b | Business Asset Expenses | - | | |
| Line 10c | Personal Asset Expenses | - | | |
| Line 10d | Hospital Settlements & Investment Expenses | - | | |
| Line 10e | Third Party Litigation Expenses | - | | |
| | 1. Attorney Fees | - | | |
| | 2 Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | | - | |
| Line 10f | *Tax Administrator Fees and Bonds* | - | | |
| Line 10g | *Federal and State Tax Payments* | - | | |
| | Total Disbursements for Receivership Operations | | 224,713.77 | 224,713.77 |
| Line 11 | Disbursments for Distribution Expenses Paid by the Fund: | - | - | |
| Line 11 | *Distribution Plan Development Expenses* | - | | |
| Line 11a | *Distribution Plan Development Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | | - | |
| Line 11b | *Distribution Plan Implementation Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - | | |
| | *Total Plan Implementation Expenses* | | - | |
| | Total Disbursement for Distribution Expenses Paid by the Fund | | - | - |
| **Line 12** | **Disbursements to Court/Other:** | | - | |
| *Line 12* | *Disbursements to Court* | - | | |
| | *Investment Expenses/Court Registry Investment System (CRIS)* | | | |
| *Line 12a* | *Fees* | - | | |
| *Line 12b* | *Federal Tax Payments* | - | | |
| | Total Disbursements to Court/Other: | | - | - |
| | **Total Funds Disbursed (Lines 9-12)** | | | 224,713.77 |
| **Line 13** | **Ending Balance (As of 06/30/20)** | | | 51,556,655.93 |
| **Line 14** | **Ending Balance of Fund - Net Assets:** | | | |
| *Line 14a* | *Cash & Cash Equivalents* | | | 51,556,655.93 |
| *Line 14b* | *Investments* | | | - |
| *Line 14c* | *Other Assets or Uncleared Funds* | | | - |
| | **Total Ending Balance of Fund - Net Assets** | | | 51,556,655.93 |

| | OTHER SUPPLEMENTAL INFORMATION: | | | |
|---|---|---|---|---|
| | | **Detail** | **Subtotal** | **Grand Total** |
| | Report of Items NOT to be paid by the Fund: | | | |
| | Disbursements of Plan Administration Expenses Not Paid by the | | | |
| **Line 15** | **Fund:** | - | - | |
| *Line 15* | *Disbursements for Plan Administration Expenses* | - | | |
| *Line 15a* | *Plan Development Expenses Not Paid bu the Fund:* | - | | |
| | 1. Fees | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | - | |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisers | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. FAIR Reporting Expenses | - | | |
| | *Total Plan Implementation Expensnes Not Paid by the Fund* | | - | |

| | | | | | |
|---|---|---|---|---|---|
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | - | | | |
| | **Total Disbursements for Plan Administrative Expenses Not Paid by the fund** | | | - | - |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** | - | - | | |
| Line 16a | *Investment Expenses/CRIS Fees* | - | | | |
| Line 16b | *Federal Tax Payments* | - | | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund** | | | - | - |
| Line 17 | **DC & State Tax Payments** | - | - | | |
| | | | | | |
| Line 18 | No. of Claims | | | | |
| Line 18a | # of Claims Received This Reporting Period | | | | - |
| Line 18 b | # of Claims Received Since Inception of Fund | | | | - |
| Line 19 | No. of Claimants/Investors: | | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | | - |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | | | | - |

Receiver:

By: _____
(signature)

Mary Margeret Hunt
(printed Name)

Receiver
(title)

Date: _____4/19/21_____