Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
**GREENBERG TRAURIG, LLP**
222 South Main Street, 5th Floor
Salt Lake City, UT  84101
Telephone: (801) 478-6900
huntp@gtlaw.com
thomsonm@gtlaw.com

*Attorneys for Peggy Hunt as Court-Appointed Receiver*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff<br><br>v.<br><br>TRAFFIC MONSOON, LLC, a Utah Limited Liability Company, and CHARLES DAVID SCOVILLE, an individual,<br><br>Defendants. | **RECEIVER'S FIFTEENTH STATUS REPORT**<br>*(OCTOBER 1, 2021 THROUGH DECEMBER 31, 2021)*<br><br>2:16-cv-00832-JNP<br><br>The Honorable Jill N. Parrish |

Peggy Hunt, the Court-appointed Receiver (the "Receiver") for Traffic Monsoon, LLC

("Traffic Monsoon"), and the assets of Charles David Scoville that were obtained directly or

indirectly from Traffic Monsoon, hereby submits this *Fifteenth Status Report* (the "Status

Report") for the period of October 1, 2021 through December 31, 2021 (the "Reporting Period").

This Status Report is posted on the website for the receivership at

www.trafficmonsoonreceivership.com (the "Receivership Website").

I.     __Introduction__

This Status Report includes a summary of key events in this case to date as set forth in Part II below.  Part III is a summary of the Receiver's work during the Reporting Period.  Part IV provides a financial summary of the Receivership Estate, and administrative expenses that have been incurred and paid during the Reporting Period are discussed in Part V.  All of the documents filed with the Court that are referenced in this Status Report are posted on the Receivership's website at www.trafficmonsoonreceivership.com (the "Receivership Website").

Please note that a more detailed discussion about the background in this case is set forth in the *Receiver's First Status Report (July 26, 2016 Through March 31, 2017)* (the "First Status Report"),[1] which incorporated the Receiver's *Declarations* outlining the initial findings of her investigation.[2]  Since filing that First Status Report, the Receiver has continued to file Status Reports that, in addition to the updates posted on the Receivership Website, may be consulted for information about this case. To date the following additional Status Reports have been filed: *Second Status Report (April 1, 2017 Through June 30, 2017)*;[3] *Third Status Report (July 1, 2017 Through September 30, 2017)*[4]; *Fourth Status Report (October 1, 2017 Through December 31, 2017)*;[5] *Fifth Status Report (January 1, 2018 Through March 31, 2018)*;[6] *Sixth Status Report*

---

[1] Docket No. 91.

[2] *See Declaration of Receiver Peggy Hunt (Communications)* (the "Communications Declaration"), Docket No. 54; and the *Declaration of Peggy Hunt (Business Operations)* (the "Business Operations Declaration"), Docket No. 55.

[3] Docket No. 104.

[4] Docket No. 108.

[5] Docket No. 122.

[6] Docket No. 153.

*(April 1, 2018 Through June 30, 2018)*;[7] *Seventh Status Report (July 1, 2018 Through June 30, 2019)*;[8] *Eighth Status Report (July 1, 2019 Through March 30, 2020)*;[9] *Ninth Status Report (April 1, 2020 Through June 30, 2020)*;[10] *Tenth Status Report (July 1, 2020 Through September 30, 2020*;[11] *Eleventh Status Report (October 1, 2020 Through December 31, 2020)*;[12] *Twelfth Status Report (January 1, 2021 Through March 31, 2021)*;[13] *Thirteenth Status Report (April 1, 2021 Through June 30, 2021)*;[14] and *Fourteenth Status Report (July 1, 2021 Through September 30, 2021)*[15](collectively, the "Prior Status Reports"). The Prior Status Reports are posted on the Receivership Website.

## II.     Summary of Key Events in This Case

Persons interested in a detailed outline of the key events in this case should refer to the Receiver's Prior Status Reports and the Receivership Website.  Among other things, information is provided about (a) the Receiver, her legal counsel, Greenberg Traurig, LLP ("GT"), her forensic and general accountants, Berkeley Research Group ("BRG"), and the claims agent in this case, Epiq Global ("Epiq"); and (b) the Receiver's ongoing investigation and estate

---

[7] Docket No. 162

[8] Docket No. 194.

[9] Docket No. 239.

[10] Docket No. 268.

[11] Docket No. 279.

[12] Docket No. 297.

[13] Docket No. 330.

[14] Docket No. 378.

[15] Docket No. 395.

administration.  Additionally, the Prior Status Reports outline the facts giving rise to the commencement of this case by the United States Securities and Exchange Commission (the "SEC") against Traffic Monsoon and Charles David Scoville ("Scoville" and, together with Traffic Monsoon, the "Defendants").  They also outline the Court's various orders in this case, including its *Temporary Restraining Order and Order Freezing Assets*, the *Order Appointing Receiver* and amendments (collectively, the "Receivership Order")*,* the proceedings related to and entry of a *Preliminary Injunction*, and the Defendants' appeals of the Court's Orders (collectively, the "Appeals").

As of the filing of this Status Report, the Appeals have concluded.  The Orders, including the Receivership Order and the Preliminary Injunction, have been affirmed by the United States Court of Appeals for the Tenth Circuit,[16] and the Defendants' *Petition for a Writ of Certiorari* filed in the United States Supreme Court has been denied.[17]

While the exact terms of the Preliminary Injunction should be reviewed, the Preliminary Injunction generally prohibits Scoville from operating Traffic Monsoon "or a business model substantially similar to Traffic Monsoon's sale of AdPacks."[18] The Preliminary Injunction also imposes an asset freeze of all "assets, of whatever kind and wherever situated, of Traffic Monsoon, LLC and Charles D. Scoville that were obtained directly or indirectly from Traffic

---

[16] *See SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019).

[17] *See* S. Ct. Case No. 18-1566.  The Court denied Scoville's requests for attorney's fees related to the Appeals.  *See* Docket 244.

[18] Docket No. 80 (Preliminary Injunction, p. 1).

Monsoon, LLC. . . "[19] and stays all litigation in any court against either or both of the Defendants.[20]  In conjunction with the Preliminary Injunction, the Court entered a *Memorandum Decision and Order*,[21] which includes significant factual findings and a comprehensive legal analysis that are summarized in part in the Receiver's First Status Report.  Important is that the Court concluded that a clear showing had been made that the SEC was likely to succeed in establishing that Traffic Monsoon was a Ponzi scheme.

With the conclusion of the Appeals, Scoville was required to answer the SEC's Complaint seeking civil remedies against him in this case.  Scoville did not file an answer.  On January 5, 2021, at the SEC's request, the Court entered an *Order Granting Motion for Default Judgment* against Scoville,[22] enjoining Scoville and his agents from operating any business similar to Traffic Monsoon and ordering Scoville to disgorge $2,537,642.93 for victim compensation.  The Court also ordered Scoville to pay a civil penalty of $2,426,749.00.

The Court entered an *Order to Show Cause*[23] requesting information from the SEC related to the status of its claims against Traffic Monsoon in this case.  Both the Receiver and the SEC filed *Responses* to the Court's Order to Show Cause,[24] and a hearing was held on June 21, 2021.  At that hearing, the Court gave the SEC additional time to determine the appropriate course of action as to

---

[19] Docket No. 80 (Preliminary Injunction, p. 2).

[20] Docket No. 80 (Preliminary Injunction, p. 3).

[21] Docket No. 79.

[22] Docket Nos. 284.

[23] *See* June 1, 2021 Docket Entry.

[24] Docket Nos. 365 and 366.

Traffic Monsoon.  The Receiver and the SEC have conferred since that hearing and during the current Reporting Period on the issues raised by the Court. BRG, at the Receiver's request, has provided information to assist with these issues, and the SEC filed a *Status Report* on these issues (to which the Receiver filed a *Joinder*) on November 22, 2021.[25] As set forth in the SEC's *Status Report*, the SEC and the Receiver resolved the calculation of the disgorgement amount for a proposed stipulated judgment against Traffic Monsoon and during the Reporting Period further negotiated terms of the final stipulated judgment. Just prior to the close of the current Reporting Period, the Receiver agreed to a proposed *Consent to Judgment* and *Final Judgment* for Traffic Monsoon, and SEC approval was pending.  Further details about these matters will be discussed in the Receiver's next Status Report.

Criminal charges have also been brought against the Defendants.[26] On August 5, 2020, the United States obtained an indictment against the Defendants, charging them with wire fraud under 18 U.S.C. § 1343 and tax fraud under 26 U.S.C. § 7206.[27] This case is pending.

### III.    Work Done by the Receiver and Her Professionals During the Reporting Period

In addition to negotiating the Consent to Judgment and Final Judgment against Traffic Monsoon outlined above, the primary work performed by the Receiver and her professionals during the Reporting Period is outlined below:

---

[25] *See* Docket Nos. 393 and 394.

[26] *See United States v. Scoville et al.*, Case No. 2:20-cr-00242 (D. Utah).

[27] *Id.* Docket No. 1.

A.    **The Claims Process**

Pursuant to the *Order Granting Renewed and Amended Motion Seeking Approval of (1) Claims Process; (2) Setting Claims Bar Date; and (3) Certain Notice Procedures*[28] the deadline to submit Proofs of Claim in this case expired at 11:59 p.m. (Mountain Time) on April 10, 2020. As part of the approved claim submission process, Claimants were provided the amount of their claim as calculated by the Receiver (the "Scheduled Claim Amount") and given the option to accept the Scheduled Claim Amount, or reject the Scheduled Claim Amount, assert a different amount and provide information about their asserted claim.

A summary of the over 23,000 Proofs of Claim submitted through June 22, 2020 is set forth in the *Receiver's Claim Status Report* which is incorporated herein.[29] Excluding the Proof of Claim of one claimant asserting a claim in the amount of $99,999,999,999,999.99 (the "$99 Trillion Claim"), the Proofs of Claim asserted totaled $219,218,810 as of March 2021.[30]  The approved claims procedures proved to be successful, as over 12,500 claimants submitted Proofs of Claim stipulating to the Scheduled Claim Amount, thus requiring no further action related to the allowance or disallowance of their Proofs of Claim. These uncontested claims total $36,383,808. The remaining contested Proofs of Claim total approximately $182,835,002. During the Reporting Period, the Receiver and her professionals have been working on matters related to contested Proofs of Claim as discussed below.

---

[28] Docket No. 232.

[29] Docket No. 257.

[30] Docket No. 314 (*Receiver's Status Report Regarding Omnibus Objections to Proofs of Claim*), p. 7 (outlining additional Proofs of Claim submitted after the filing of the initial Claims Status Report).

B.     **Claim Objections**

For the Receiver to propose a Plan of Distribution and make a meaningful distribution to

those with allowed claims, she has determined that it is necessary to object to contested Proofs of

Claim. Accordingly, she proposed objection procedures which were approved by the Court

pursuant to an *Order Granting Receiver's Ex Parte Motion for Approval of Claims Objection*

*Process and Settlement Authority*[31] (the "Approved Objection Procedures"). During the

Reporting Period, the Receiver has continued to build on earlier work related to claim

objections,[32] including additional analysis of contested Proofs of Claim.

As reported in the Prior Status Reports,[33] on May 3, 2021, the Receiver served two

omnibus objections[34] in accordance with the Approved Objection Procedures on holders of 71

Proofs of Claims as follows: (1) *Objection Contesting Amount of Proofs of Claim (Insufficient*

*Documentation)*;[35] and (2) *Objection Contesting Amount of Proofs of Claim (Did Not Attest and*

*Insufficient Documentation).*[36] The deadline to respond to these objections expired on June 2,

2021, and only seven responses were submitted. On July 9, 2021, the Receiver filed a *Second*

*Verified Motion Requesting Order (I) Disallowing Certain Proofs of Claim in Their Entirety and*

*(II) Allowing Certain Proofs of Claim in a Modified Amount (No Response Claims)* (the "Second

---

[31] Docket No. 277.

[32] *See* Docket Nos. 279, pp. 5-6, 297, pp. 4-6, 330, pp. 6-9, 378, pp. 6-11, and 395, pp. 6-10.

[33] Docket Nos. 378, pp. 7-9 and 395, pp. 8-9.

[34] *See* Docket Nos. 338 - 339 (*Affidavits of Service*).

[35] Docket No. 328.

[36] Docket No. 329.

*ACTIVE 61631884v2*

Verified Motion")[37] for those claimants who did not respond to these Objections.  This Second Verified Motion was granted by the Court during the Reporting Period by an *Order* entered on October 28, 2021.[38]

Furthermore, as reported in Prior Status Reports,[39] the Receiver served targeted objections related to eight Proofs of Claim on May 18 and May 26, 2021,[40] as set forth in the *Notices of Objections to Proofs of Claim* filed with the Court.[41] Responses to these objections were required to be submitted by no later than June 17, 2021, and June 25, 2021, respectively, and only one response was submitted. Regarding those seven claimants who did not respond to these objections, on July 26, 2021, the Receiver filed a *Third Verified Motion Requesting Order (I) Disallowing Certain Proofs of Claim in Their Entirety and (II) Allowing Certain Proofs of Claim in a Modified Amount (No Response Claims)* (the "Third Verified Motion"),[42] and a *Fourth Verified Motion Requesting Order Disallowing Proof of Claim No. 51348 in its Entirety (No Response Claim)*[43] (the "Fourth Verified Motion"). During the Reporting Period, the Court entered *Orders* granting the Third Verified Motion and Fourth Verified Motion.[44]

---

[37] Docket No. 395, pp. 6-10.

[38] Docket No. 387.

[39] Docket Nos. 378 and 395.

[40] *See* Docket Nos. 343 - 350 (*Affidavits of Service*).

[41] Docket Nos. 332 and 333.

[42] Docket No. 373.

[43] Docket No. 376.

[44] Docket Nos. 386, 389 (entered Oct. 27 and 28, 2021).

*ACTIVE 61631884v2*

As a result of the above-noted Objections and Orders, 5,671 contested Proofs of Claims asserting over $157.7 million in claims have been reduced to allowed claims in the amount of $3,216,482.77. In addition, the $99 Trillion Claim has been disallowed in its entirety because the Claimant did not submit a response to an Objection.

In addition to obtaining Orders related to the above-referenced Objections, during the Reporting Period the Receiver prepared and served three more claim objections. Specifically, on November 1, 2021, the Receiver served targeted *Objections* to twenty-one Proofs of Claim[45] as noted in the *Notice of Objections to Proofs of Claim* filed with the Court on November 2, 2021.[46] The deadline to respond to these Objections expired on December 1, 2021.  Also, on December 13, 2021, the Receiver served and filed two omnibus *Objections to Proofs of Claim,*[47] objecting to a total of 1,580 Proofs of Claim that provided insufficient supporting documentation or asserted claims in excess of the Receiver's records.  The deadline to respond to these Objections expired on January 14, 2022.  The Receiver will provide further information about these Objections in her next Status Report.

During the Reporting Period, the Receiver and her professionals have continued to review contested Proofs of Claim and, where applicable, corresponding responses to the served Objections to determine the most efficient and effective way of resolving the Receiver's objections in accordance with the Approved Objection Procedures. It is anticipated that additional objections will be made. The Receiver is hopeful that the amount of contested Proofs

---

[45] *See Affidavits of Service*, Docket Nos. 398 – 418.

[46] Docket No. 392.

[47] Docket Nos. 420 – 421.

of Claim will be reduced to an amount that will allow her to propose a viable Plan of Distribution in 2022.

### C.      Italian Investor Claims

The Receiver has continued to work on issues related to Proofs of Claim submitted by a set of investors located in Italy, who invested monies in Traffic Monsoon through Fabiano Santos ("Santos") and his entity, Advertising Corp. Santos, who is currently under criminal investigation in Italy for fraud, also submitted several Proofs of Claim presumably based on the investments he made using the Italian investors' money. As a result of actions taken regarding the Santos-related Proofs of Claim, the Receiver has begun negotiations with the investor group that should culminate in a settlement agreement related to their Proofs of Claim.

### D.      Asset Recovery

During the Reporting Period, the Receiver and her professionals continued to pursue those who profited from their investment in Traffic Monsoon ("Net Winners") as well as others. As previously reported, *Default Judgments* were obtained against Ernest Ganz III and David Barker,[48] both Net Winners who reside in the United States.  The Receiver has domesticated those Default Judgments and is taking appropriate action related thereto.

The Receiver has continued to seek appropriate recourse against Net Winners located outside of the United States. Default Judgments have been entered against Net Winners in the United Kingdom,[49] and during the Reporting Period, the Receiver has been working with her counsel located in the United Kingdom to pursue avenues of recovery as to these Default

---

[48] *See Hunt v. Aslam*, Case No. 2:19-cv-275, Docket Nos. 65, 66.

[49] *Hunt v. Aslam*, Case No. 2:19-cv-275, Docket Nos. 97, 98, 99, 100, 101.

Judgments. Additionally, during the Reporting Period the Court entered Default Judgments against Vincent Boutin,[50] a Net Winner located in Canada, and Piotr Chajkowski,[51] a Net Winner located in Poland, and the Receiver is taking appropriate action with regard to those Judgments.

The Receiver also has determined that there may be other claims held by the Receivership Estate, particularly related to certain entities' failure to turn over assets of the Receivership Estate in accordance with the Receivership Order and the Preliminary Injunction. During the Reporting Period, the Receiver took actions to obtain additional funds from Allied Wallet, an e-wallet company that turned over approximately $4.3 million on the Receiver's demand. The Receiver maintains that the Receivership Estate has a claim against Allied Wallet in an amount of over $1.8 million as a result of fees and charges which Allied Wallet debited from Traffic Monsoon's account both before and after the commencement of this case.  Allied Wallet contested the Receiver's claims, arguing that the fees and charges were allowable under Traffic Monsoon's contract and applicable law, and the parties were attempting to resolve their disputes consensually.  Then, BDO LLP was appointed by an English court to liquidate Allied Wallet.  A formal claim on behalf of Traffic Monsoon was submitted to the liquidator and, during the Reporting Period, the Receiver provided additional information to the liquidator about the claim and her professionals have had continued communications with the liquidator's counsel.

The Receiver also has continued to investigate issues related to claims against MH Pillars Ltd., d/b/a Payza, another e-wallet company that it is believed held funds of Traffic Monsoon at

---

[50] *Hunt v. Aslam*, Case No. 2:19-cv-275, Docket No. 112.

[51] *Hunt v. Aslam*, Case No. 2:19-cv-275, Docket No. 113.

the time that the Court froze Traffic Monsoon's assets. Through consensual exchanges of information, the Receiver obtained significant records from Payza that allowed her to recreate Traffic Monsoon's records. The Receiver made demand on Payza for Traffic Monsoon funds that it appeared Payza held at the time this case was commenced, but Payza refused to turn over any funds, claiming that if it was holding Traffic Monsoon funds, they were subject to chargebacks by account holders. Principals of Payza have since been indicted and Payza's assets have been the subject of criminal forfeiture proceedings.  The Receiver was not provided notice of an opportunity to submit a claim in the forfeiture proceedings. During the Reporting Period, the Receiver engaged in research and communications with numerous authorities concerning the appropriate avenue to pursue the Receivership Estate's claim, and prepared a petition seeking allowance of a claim.

### E.  **Attending to General Administration of the Receivership Estate**

During the Reporting Period, the Receiver and her professionals have attended to numerous matters related to the administration of the Receivership Estate.  These tasks include, but are not limited to, monitoring and managing bank accounts; negotiating, when appropriate, applicable interest rates for funds on deposit; reviewing professional billings and requesting adjustments when appropriate; following accounting protocols; preparing SFARs (as defined below); communicating with investors; managing the Receivership Website and information provided through the Call Center; evaluating and paying costs related to administration and litigation; evaluating issues related to compliance with applicable tax laws; filing papers required by applicable tax laws; interfacing with financial account institutions; and coordinating with governmental entities as requested.

IV.    **Standardized Fund Accounting Report ("SFAR")**

A summary of the financial condition of the Receivership Estate for each quarter of the Reporting Period is set forth in the SFAR attached hereto as **Exhibit 1**. At the end of the Reporting Period, the Receivership Estate had funds in the total amount of $50,288,320.47.[52] Interest income has totaled $6,363.42,[53] and expenses have totaled $459,810.54.[54] The expenses include disbursements to Epiq for data hosting and services, including services related to the Receivership Website, the Call Center and the claims process.

V.    **Administrative Expenses During the Reporting Period**

The fees and out of pocket expenses of the Receiver, GT, and BRG must be approved by the Court prior to payment. The Court has entered an *Order Establishing Administrative Expense Payment Procedures* (the "Fee Procedures Order"),[55] setting forth procedures for the request and payment of professional fees and expenses in this case. Among other things, the Fee Procedures Order authorizes the Receiver and her professionals to file monthly "Notices of Request for Payment." Absent objection in accordance with the Fee Procedures Order, the Receiver may pay 80% of fees and 100% of out-of-pocket expenses requested in a Notice of Request for Payment. All monthly disbursements and any other requests for fees and expenses not requested pursuant to a Notice for Request for Payment are subject to Court approval through "Fee Applications".

---

[52] *See* Exh. 1 (SFAR, Line 14).

[53] *See id.* (Line 4). With the drop in interest rates, interest on the Receivership Estate's accounts dropped significantly. The Receiver negotiated with the bank holding the accounts to provide a more favorable rate given the amount on deposit, but given the current federal funds rate, interest income remains relatively low. The Receiver will continue to monitor interest rate issues and take appropriate actions.

[54] *See id.* (Line 10).

[55] Docket No. 101.

*ACTIVE 61631884v2*

  a.  **Pending Fee Applications**

  On or about December 7, 2021, the Receiver filed a *Fourteenth Interim Fee Application* for Receiver and Receiver's Professionals requesting fees and expenses for services rendered from July 1, 2021 through September 30, 2021.[56] This Application is currently pending before the Court.

  b.  **Fees and Expenses Incurred During the Current Reporting Period**

  Shortly after filing this Status Report, the Receiver intends to file a *Fifteenth Interim Fee Application* for the period of October 1, 2021 through December 31, 2021. That Application will outline the total hours spent by the Receiver, GT, BRG, and approved Canadian counsel, the fees requested for their services, and reimbursement of out-of-pocket expenses incurred during the Reporting Period.  None of the fees and expenses have been paid to date, other than those authorized to be paid under the Fee Procedures Order, all of which will be reported in the intended Fee Application.  Specifically, during the Reporting Period, the Receiver filed *Notices of Request for Payment* for October and November, 2021.[57] No objections to those Notices were filed.  Accordingly, 80% of the fees outlined in those Notices were paid, and 100% of the expenses outlined were reimbursed as authorized by the Fee Procedure Order.[58]  Additionally, on February 3, 2022, the Receiver filed a *Notice of Request for Payment* for December, 2021.  The time to object to that Notice expires on February 17, 2022.

---

[56] Docket No. 396.

[57] Docket Nos. 397 and 422.

[58] *See* Exh. 1 (SFAR, Line 10).

*ACTIVE 61631884v2*

VI.     <u>**Conclusion**</u>

The Receiver currently holds over $50 million which she would like to distribute to those with allowed claims against the Receivership Estate. As discussed above, the claims resolution process is well under way, and the Receiver will endeavor to resolve contested claims as quickly and efficiently as possible so that she can propose a *Plan of Distribution* to the Court for approval.

Dated this 15th day of February, 2022.

**RECEIVER**

_/s/ Peggy Hunt_____
*Peggy Hunt, Receiver*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2022, I caused the foregoing *Fifteenth Status Report (October 1, 2021 Through December 31, 2021)* to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record in this case.

*/s/ Candy Long*

EXHIBIT 1

STANDARDIZED FUND ACCOUNTING REPORT for **Traffic Monsoon, LLC Receivership - Cash Basis**

Receivership; Civil Court Case No. 2:16-00832

REPORTING PERIOD 10/01/2021 TO 12/31/2021

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 10/01/21) | | | 50,741,767.59 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | - | |
| Line 3 | Cash and Securities | - | - | |
| Line 4 | Interest/Dividend Income | 6,363.42 | 6,363.42 | |
| Line 5 | Business Asset Liquidation | - | - | |
| Line 6 | Personal Asset Liquidation | - | - | |
| Line 7 | Third-Party Litigation | - | - | |
| Line 8 | Miscellaneous-Other | - | - | |
| | Total Funds Available (Lines 1-8): | | 6,363.42 | 50,748,131.01 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Senior Secured Lenders/Investors | - | - | |
| Line 10 | Disbursements for Receivership Operations | | 459,810.54 | |
| Line 10 | *Internal Loans* | - | | |
| Line10a | *Disbursements to Receiver or Other Professionals* | 459,810.54 | | |
| | 1. Fees: | - | | |
| | Receiver | 20,810.06 | | |
| | Legal Advisors | 160,391.57 | | |
| | Accountants | 102,696.06 | | |
| | Consultants | 175,912.85 | | |
| Line 10b | Business Asset Expenses | - | | |
| Line 10c | Personal Asset Expenses | - | | |
| Line 10d | Hospital Settlements & Investment Expenses | - | | |
| Line 10e | Third Party Litigation Expenses | - | | |
| | 1. Attorney Fees | - | | |
| | 2 Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | | - | |
| Line 10f | *Tax Administrator Fees and Bonds* | - | | |
| Line 10g | *Federal and State Tax Payments* | - | | |
| | Total Disbursements for Receivership Operations | | 459,810.54 | 459,810.54 |
| Line 11 | Disbursments for Distribution Expenses Paid by the Fund: | - | - | |
| Line 11 | *Distribution Plan Development Expenses* | - | | |
| Line 11a | *Distribution Plan Development Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | | - | |
| Line 11b | *Distribution Plan Implementation Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |

|  |  | | | |
|---|---|---|---|---|
|  | Notice/Publishing Approved Plan | - | | |
|  | Claimant Identification | - | | |
|  | Claims Processing | - | | |
|  | Web Site Maintenance/Call Center | - | | |
|  | 4. Fund Administrator Bond | - | | |
|  | 5. Miscellaneous | - | | |
|  | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | | | |
|  | *Total Plan Implementation Expenses* | | - | |
|  | **Total Disbursement for Distribution Expenses Paid by the Fund** | | - | - |
| **Line 12** | **Disbursements to Court/Other:** | | - | |
| *Line 12* | *Disbursements to Court* | - | | |
|  | *Investment Expenses/Court Registry Investment System (CRIS)* | | | |
| *Line 12a* | *Fees* | - | | |
| *Line 12b* | *Federal Tax Payments* | - | | |
|  | **Total Disbursements to Court/Other:** | | - | - |
|  | **Total Funds Disbursed (Lines 9-12)** | | | 459,810.54 |
| **Line 13** | **Ending Balance (As of 12/31/21)** | | | 50,288,320.47 |
| **Line 14** | **Ending Balance of Fund - Net Assets:** | | | |
| *Line 14a* | *Cash & Cash Equivalents* | | | 50,288,320.47 |
| *Line 14b* | *Investments* | | | - |
| *Line 14c* | *Other Assets or Uncleared Funds* | | | - |
|  | **Total Ending Balance of Fund - Net Assets** | | | 50,288,320.47 |

|  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
|  | **OTHER SUPPLEMENTAL INFORMATION:** | | | |
|  | **Report of Items NOT to be paid by the Fund:** | | | |
|  | **Disbursements of Plan Administration Expenses Not Paid by the Fund:** | | | |
| **Line 15** | *Disbursements for Plan Administration Expenses* | - | - | |
| *Line 15* | *Plan Development Expenses Not Paid bu the Fund:* | - | | |
| *Line 15a* | 1. Fees | - | | |
|  | Fund Administrator | - | | |
|  | IDC | - | | |
|  | Receiver | - | | |
|  | Legal Advisers | - | | |
|  | Accountants | - | | |
|  | Consultants | - | | |
|  | 2. Administrative Expenses | - | | |
|  | 3. Approved Living Allowance | - | | |
|  | 4. Miscellaneous | - | | |
|  | *Total Plan Development Expenses Not Paid by the Fund* | | - | |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | - | | |
|  | 1. Fees | - | | |
|  | Fund Administrator | - | | |
|  | IDC | - | | |
|  | Receiver | - | | |
|  | Legal Advisers | - | | |
|  | Accountants | - | | |
|  | Consultants | - | | |
|  | 2. Administrative Expenses | - | | |
|  | 3. Investor Identification: | - | | |
|  | Notice/Publishing Approved Plan | - | | |
|  | Claimant Identification | - | | |
|  | Claims Processing | - | | |
|  | Web Site Maintenance/Call Center | - | | |
|  | 4. Fund Administrator Bond | - | | |
|  | 5. Miscellaneous | - | | |
|  | 6. FAIR Reporting Expenses | - | | |
|  | *Total Plan Implementation Expesnses Not Paid by the Fund* | | - | |

| | | | | |
|---|---|---|---|---|
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | - | | |
| | **Total Disbursements for Plan Administrative Expenses Not Paid by the fund** | | - | - |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** | - | - | |
| Line 16a | *Investment Expenses/CRIS Fees* | - | | |
| Line 16b | *Federal Tax Payments* | - | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund** | | - | - |
| Line 17 | **DC & State Tax Payments** | - | - | |
| | | | | |
| Line 18 | No. of Claims | | | |
| Line 18a | # of Claims Received This Reporting Period | | | - |
| Line 18 b | # of Claims Received Since Inception of Fund | | | - |
| Line 19 | No. of Claimants/Investors: | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | - |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | | | - |

Receiver:

By: _____

(Signature)

Mary Margeret Hunt

(printed Name)

Receiver

(title)

Date: 2/10/22