Peggy Hunt (Utah State Bar No. 6060)
Michael F. Thomson (Utah State Bar No. 9707)
**GREENBERG TRAURIG, LLP**
222 South Main Street, Suite 1730
Salt Lake City, UT  84101
Telephone: (801) 478-6900
huntp@gtlaw.com
thomsonm@gtlaw.com

*Attorneys for Peggy Hunt as Court-Appointed Receiver*

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff <br><br> v. <br><br> TRAFFIC MONSOON, LLC, a Utah Limited Liability Company, and CHARLES DAVID SCOVILLE, an individual, <br><br> Defendants. | **RECEIVER'S SIXTEENTH STATUS REPORT** <br> *(JANUARY 1, 2022 THROUGH MARCH 31, 2022)* <br><br> 2:16-cv-00832-JNP <br><br> The Honorable Jill N. Parrish |

Peggy Hunt, the Court-appointed Receiver (the "Receiver") for Traffic Monsoon, LLC

("Traffic Monsoon"), and the assets of Charles David Scoville that were obtained directly or

indirectly from Traffic Monsoon, hereby submits this *Sixteenth Status Report* (the "Status

Report") for the period of January 1, 2022 through March 31, 2022 (the "Reporting Period").

This Status Report is posted on the website for the receivership at

www.trafficmonsoonreceivership.com (the "Receivership Website").

## I.   <u>Introduction</u>

Final judgments have now been entered against Defendants Traffic Monsoon and Charles David Scoville ("<u>Scoville</u>", together with Traffic Monsoon, the "<u>Defendants</u>") in this civil enforcement action, and criminal charges are pending against the Defendants. The Receiver continues to administer the Receivership Estate with the goal of making a distribution of funds to those holding allowed claims against the Receivership Estate. This Status Report provides information about the Receiver's administration of the Receivership Estate during the Reporting Period. The documents filed with the Court referenced in this Status Report are posted on the Receivership's website at www.trafficmonsoonreceivership.com (the "<u>Receivership Website</u>").

## II.   <u>Status Reports</u>

The Receiver files quarterly *Status Reports* which together with information posted on the Receivership Website may be consulted for information about this case, the Receiver's ongoing investigation, and her and administration of the Receivership Estate. To date the following Status Reports have been filed and are available on the Receivership Website: *Receiver's First Status Report (July 26, 2016 Through March 31, 2017);*[1] *Second Status Report (April 1, 2017 Through June 30, 2017);*[2] *Third Status Report (July 1, 2017 Through September*

---

[1] Docket No. 91. At the time that this Status Report was filed, the Receiver also filed Declarations outlining her initial investigation in this case. *See Declaration of Receiver Peggy Hunt (Communications)* (the "<u>Communications Declaration</u>"), Docket No. 54; and the *Declaration of Peggy Hunt (Business Operations)* (the "<u>Business Operations Declaration</u>"), Docket No. 55.

[2] Docket No. 104.

*ACTIVE 64803989v1*

*30, 2017)*[3]; *Fourth Status Report (October 1, 2017 Through December 31, 2017);*[4] *Fifth Status Report (January 1, 2018 Through March 31, 2018);*[5] *Sixth Status Report (April 1, 2018 Through June 30, 2018);*[6] *Seventh Status Report (July 1, 2018 Through June 30, 2019);*[7] *Eighth Status Report (July 1, 2019 Through March 30, 2020)*;[8] *Ninth Status Report (April 1, 2020 Through June 30, 2020);*[9] *Tenth Status Report (July 1, 2020 Through September 30, 2020;*[10] *Eleventh Status Report (October 1, 2020 Through December 31, 2020);*[11] *Twelfth Status Report (January 1, 2021 Through March 31, 2021);*[12] *Thirteenth Status Report (April 1, 2021 Through June 30, 2021)*;[13] *Fourteenth Status Report (July 1, 2021 Through September 30, 2021);*[14] and *Fifteenth Status Report (October 1, 2021 Through December 31, 2021)*[15](collectively, the "Prior Status Reports").

---

[3] Docket No. 108.

[4] Docket No. 122.

[5] Docket No. 153.

[6] Docket No. 162.

[7] Docket No. 194.

[8] Docket No. 239.

[9] Docket No. 268.

[10] Docket No. 279.

[11] Docket No. 297.

[12] Docket No. 330.

[13] Docket No. 378.

[14] Docket No. 395.

[15] Docket No. 457.

In addition to her quarterly Status Reports, the Receiver has filed the following three reports reporting on her administration of the Proofs of Claim submitted in this case: *Receiver's Claim Status Report* (the "First Claims Report");[16] *Receiver's Status Report Regarding Omnibus Objections to Proofs of Claims* (the "Second Claims Report");[17] and *Receiver's Third Status Report Regarding Claims Filing and Objection Process* (the "Third Claims Report", together with the First Claims Report and the Second Claims Report, the "Claims Reports").[18]

## III.    Civil Judgments and Criminal Action Against the Defendants

The Securities and Exchange Commission ("SEC") commenced this civil enforcement action against Defendants in 2016, asserting that Defendants had violated securities laws of the United States. A *Temporary Restraining Order and Order Freezing Assets*[19] was entered by the Court, and the Receiver was appointed to, among other things, take custody and control of Traffic Monsoon and the assets of Scoville.[20] After an evidentiary hearing, the Court entered a *Preliminary Injunction*[21] together with a *Memorandum Decision and Order*[22] finding among other things, that the SEC made a clear showing that it was likely to succeed in establishing that Traffic Monsoon was a Ponzi scheme. Defendants appealed and in January 2019 the United

---

[16] Docket No. 257.

[17] Docket No. 314 (relating to the initial claim objections filed by the Receiver).

[18] Docket No. 470 (discussing entire claim objection process through April 15, 2022).

[19] *See* Docket Nos. 8, 14.

[20] Docket No. 11 (entered July 27, 2016); *see* Docket Nos. 81, 120 (amendments).

[21] Docket No. 80 (entered March 28, 2017).

[22] Docket No. 79 (entered March 28, 2017).

States Court of Appeals for the Tenth Circuit affirmed the Court's orders.[23] The United States Supreme Court also denied the Defendants' *Petition for a Writ of Certiorari* in November 2019.[24]

Final judgments have now been entered in this case against Scoville[25] and Traffic Monsoon.[26] Scoville and his agents are enjoined from operating any business similar to Traffic Monsoon, and Scoville has been ordered to disgorge $2,537,642.93 to the SEC for victim compensation and pay civil penalties in the amount of $2,426,749.00.[27] Traffic Monsoon consented to entry of a final judgment against it, and agreed not to participate in the issuance, purchase, offer, or sale of any security. Traffic Monsoon also agreed to disgorge $145,736,805.22 to the SEC, which is deemed satisfied by the collection efforts to date and the Receiver's future distribution of funds to those holding allowed claims.[28]

In addition to the above-described civil enforcement action, Defendants are facing criminal charges.[29] Specifically, on August 5, 2020, the United States obtained a criminal

---

[23] *See SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019).

[24] *See* S. Ct. Case No. 18-1566. The Court denied Scoville's requests for attorney's fees related to the appeals. *See* Docket No. 244.

[25] Docket No. 285 (*Final Judgment as to Defendant Charles Scoville*, entered Jan. 5, 2021); *see* Docket No. 284 (*Memorandum Decision and Order Granting Motion for Default Judgment Against Charles Scoville,* filed Jan. 5, 2021).

[26] Docket No. 448 (*Final Judgment as to Defendant Traffic Monsoon, LLC*, entered Feb. 4, 2022); *see* Docket No. 446 (*Consent of Defendant Traffic Monsoon, LLC*, filed Feb. 3, 2022).

[27] *See* Docket Nos. 284, 285.

[28] *See* Docket Nos. 446, 448.

[29] *See United States v. Scoville et al.*, Case No. 2:20-cr-00242 (D. Utah).

indictment against Defendants, charging them with wire fraud under 18 U.S.C. § 1343 and tax fraud under 26 U.S.C. § 7206.[30] This criminal case is pending.

**IV.    Work Done by the Receiver and Her Professionals During the Reporting Period**

The primary work performed by the Receiver and her professionals during the Reporting Period is outlined below:

**A.   Proofs of Claim Submitted**

Pursuant to the *Order Granting Renewed and Amended Motion Seeking Approval of (1) Claims Process; (2) Setting Claims Bar Date; and (3) Certain Notice Procedures* (the "Claims Process Order"),[31] the deadline to submit Proofs of Claim in this case expired at 11:59 p.m. (Mountain Time) on April 10, 2020. As part of the procedures approved by the Court in the Claims Process Order, Claimants were provided the amount of their claim as calculated by the Receiver (the "Scheduled Claim Amount") and given the option to accept the Scheduled Claim Amount, or reject the Scheduled Claim Amount, assert a different amount and provide information about their asserted claim.

The Receiver received a total of 23,221 Proofs of Claim as outlined in the Claims Reports incorporated herein.[32] Excluding one Proof of Claim asserting a claim in the amount of $99,999,999,999,999.99, investors submitted Proofs of Claim asserting $216,496,877 in claims. PayPal also submitted a Proof of Claim asserting a secured claim in the amount of $3,144,021.[33]

---

[30] *See id.,* Docket No. 1.

[31] Docket No. 232.

[32] *See* Third Claims Report ¶ 4.

[33] *See* Third Claims Report ¶ 4 and Exh. B.

The procedures approved by the Court as part of the Claims Process Order proved to be successful, as over 14,276 Proofs of Claim asserting claims totaling $43,177,843 were allowed without the need for objection.[34] During the Reporting Period, the Receiver and her professionals have been working on matters related to contested Proofs of Claim as discussed below.

### B.  Claim Objections and the Third Status Report

For disputed Proofs of Claim, the Receiver proposed objection procedures which were approved by the Court pursuant to an *Order Granting Receiver's Ex Parte Motion for Approval of Claims Objection Process and Settlement Authority* (the "Approved Objection Procedures").[35] To date, the Receiver has served a total of twenty-two objections as set forth in the Summary of Served Claim Objections attached as Exhibit A to the Third Status Report.[36] Work related to these objections during the Reporting Period is outlined in subparagraph 1 below. During the Reporting Period, the Receiver and her professionals also conducted a comprehensive review of the status of claims in this case resulting in the Third Claims Report discussed below in subparagraph 2.

### 1.  Work on Claim Objections During the Reporting Period

As set forth in the *Notice of Objections to Proofs of Claim* filed with the Court on November 2, 2021,[37] the Receiver served three targeted *Objections* on the holders of twenty-one

---

[34] *See* Third Claims Report ¶ 5 and Exh. B. This amount has increased from the amounts stated in earlier Claims Reports and Prior Status Reports because of the work done during this Reporting Period discussed below.

[35] Docket No. 277.

[36] Docket No. 470.

[37] Docket No. 392.

Proofs of Claim asserting over $2.2 million in claims.[38] The deadline to respond to these Objections expired on December 1, 2021. Eighteen of the Claimants served did not respond to the Objections and on February 15, 2022, the Receiver filed a *Fifth Verified Motion Requesting Order (I) Disallowing Certain Proofs of Claim in their entirety and (II) Allowing Certain Proofs of Claim in a Modified Amount (No Response Claims)*[39] regarding these Proofs of Claim. The Court granted this Motion on April 25, 2022, reducing asserted claims by approximately 1.3 million.[40]

The Receiver also filed and served two omnibus *Objections to Proofs of Claim* on December 13, 2021,[41] objecting to a total of 1,580 Proofs of Claim that provided insufficient supporting documentation or asserted claims in excess of the Receiver's records. The deadline to respond to these Objections expired on January 14, 2022, and 1,410 claimants did not respond. During the Reporting Period, the Receiver and her professionals commenced work on a *Sixth Verified Motion Requesting Order (I) Disallowing Certain Proofs of Claim in their entirety and (II) Allowing Certain Proofs of Claim in a Modified Amount (No Response Claims)* (the "Sixth Verified Motion")[42] which was filed on April 15, 2022. Information about this Motion will be discussed in the next status report.

---

[38] *See Affidavits of Service*, Docket Nos. 398 – 418.

[39] Docket No. 458.

[40] Docket No. 477; *see* Third Claims Report, Exh. A.

[41] Docket Nos. 420 – 421.

[42] Docket No. 468.

2.       **The Third Claims Report**

The Receiver filed her Third Claims Report on April 15, 2022, after the close of the Reporting Period. Much of the work related to this Third Claims Report, however, was done during the Reporting Period. Specifically, working with Epiq and her professionals, the Receiver conducted a comprehensive analysis and review of the status of all Proofs of Claim submitted to determine the most efficient way to bring the claims process to an end. The information was collected and included in the Third Claims Report.

Based on work done during the Reporting Period, and assuming the Sixth Verified Motion is granted, the Receiver reports that of the 23,221 Proofs of Claim filed, 22,710 have been resolved.[43] Of these amounts, the $99 Trillion Claim and disputed investor claims asserting $123,551,256 have been disallowed – resulting in an approximate 70% reduction of asserted investor claims (not including the $99 Trillion Claim).[44] Allowed investor claims at this time total $55,132,872.[45] There are only 511 claims, asserting $12,923,100, that remain unresolved.[46] The Receiver commenced work during the Reporting Period to address these unresolved claims[47] either by settlement or Court order.[48]

---

[43] Third Claims Report ¶¶ 4, 13 and Exh. B.

[44] Third Claims Report, ¶ 13 and Exh. B.

[45] Third Claims Report, ¶ 14 and Exh. B.

[46] Third Claims Report, ¶¶ 14, 15 and Exh. B.

[47] Other than the PayPal Claim, which remains subject to resolution by Special Counsel.

[48] *See* Third Claims Report, ¶¶ 20-22.

C.  **Italian Investor Claims**

The Receiver has continued to work on issues related to Proofs of Claim submitted by a set of investors located in Italy, who invested monies in Traffic Monsoon through Fabiano Santos ("Santos") and his entity, Advertising Corp. Santos, who is currently under criminal investigation in Italy for fraud, also submitted several Proofs of Claim presumably based on the investments he made using the Italian investors' money. The Receiver objected to Santos's Proofs of Claim which have been disallowed. A settlement agreement related to the remaining claims filed by the Italian investors has been drafted during the Reporting Period which is currently being negotiated. It is anticipated that the parties will enter into a settlement agreement which the Receiver will submit to the Court for approval.

D.  **Asset Recovery**

During the Reporting Period, the Receiver and her professionals continued to pursue those who profited from their investment in Traffic Monsoon ("Net Winners") as well as others. As previously reported, *Default Judgments* were obtained against Ernest Ganz III and David Barker,[49] both Net Winners who reside in the United States. The Receiver has domesticated those Default Judgments and is taking appropriate action related thereto.

The Receiver has continued to seek appropriate recourse against Net Winners located outside of the United States. Default Judgments have been entered against Net Winners in the United Kingdom,[50] and during the Reporting Period, the Receiver continues to work with her

---

[49] *See Hunt v. Aslam*, Case No. 2:19-cv-275, Docket Nos. 65, 66.

[50] *Hunt v. Aslam*, Case No. 2:19-cv-275, Docket Nos. 97, 98, 99, 100, 101.

counsel located in the United Kingdom to pursue avenues of recovery as to these Default Judgments. Additionally, Default Judgments against Vincent Boutin,[51] a Net Winner located in Canada, and Piotr Chajkowski,[52] a Net Winner located in Poland, have been obtained and the Receiver is taking appropriate action with regard to those Judgments.

The Receiver also has determined that there may be other claims held by the Receivership Estate, particularly related to certain entities' failure to turn over assets of the Receivership Estate in accordance with the Receivership Order and the Preliminary Injunction. During the Reporting Period, the Receiver continued efforts to obtain additional funds from Allied Wallet, an e-wallet company that turned over approximately $4.3 million on the Receiver's demand, but improperly charged over $1.8 million in fees and charges both before and after the commencement of this case. Allied Wallet is currently in liquidation proceedings in the United Kingdom, and the Receiver has submitted a formal claim in that proceeding. During the Reporting Period, additional information has been provided to the liquidator and the Receiver has continued efforts to negotiate an allowed claim.

The Receiver also has continued to investigate issues related to claims against MH Pillars Ltd., d/b/a Payza, another e-wallet company that it is believed held funds of Traffic Monsoon at the time that the Court froze Traffic Monsoon's assets. Through consensual exchanges of information, the Receiver obtained significant records from Payza that allowed her to recreate Traffic Monsoon's records. The Receiver made demand on Payza for Traffic Monsoon funds that it appeared Payza held at the time this case was commenced, but Payza refused to turn over any

---

[51] *Hunt v. Aslam*, Case No. 2:19-cv-275, Docket No. 112.

[52] *Hunt v. Aslam*, Case No. 2:19-cv-275, Docket No. 113.

funds, claiming that if it was holding Traffic Monsoon funds, they were subject to chargebacks by account holders. Principals of Payza have since been indicted and Payza's assets have been the subject of criminal forfeiture proceedings. The Receiver was not provided notice of an opportunity to submit a claim in the forfeiture proceedings. During the Reporting Period, the Receiver has continued efforts to have the Receivership Estate's petition seeking allowance of a claim recognized in the forfeiture proceedings.

      E.  **Attending to General Administration of the Receivership Estate**

During the Reporting Period, the Receiver and her professionals have attended to numerous matters related to the administration of the Receivership Estate.  These tasks include, but are not limited to, monitoring and managing bank accounts; negotiating, when appropriate, applicable interest rates for funds on deposit; reviewing professional billings and requesting adjustments when appropriate; following accounting protocols; preparing SFARs (as defined below); communicating with investors; managing the Receivership Website and information provided through the Call Center; evaluating and paying costs related to administration and litigation; evaluating issues related to compliance with applicable tax laws; filing papers required by applicable tax laws; interfacing with financial account institutions; and coordinating with governmental entities as requested.

**V.**      **Standardized Fund Accounting Report ("SFAR")**

A summary of the financial condition of the Receivership Estate for each quarter of the Reporting Period is set forth in the SFAR attached hereto as **Exhibit 1**. At the end of the

Reporting Period, the Receivership Estate had funds in the total amount of $50,165,279.10.[53]

Interest income has totaled $6,187.58,[54] and expenses totaled $129,228.95.[55] The expenses

include disbursements to Epiq for data hosting and services, including services related to the

Receivership Website, the Call Center and the claims process.

## VI.   Administrative Expenses During the Reporting Period

The fees and out of pocket expenses of the Receiver, counsel Greenberg Traurig, LLP

("GT"), accountants Berkeley Research Group ("BRG") and other approved professionals

(collectively, the "Professionals") must be approved by the Court prior to payment. The Court

has entered an *Order Establishing Administrative Expense Payment Procedures* (the "Fee

Procedures Order"),[56] setting forth procedures for the request and payment of professional fees

and expenses in this case. Among other things, the Fee Procedures Order authorizes the Receiver

Professionals to file monthly "Notices of Request for Payment." Absent objection in accordance

with the Fee Procedures Order, the Receiver may pay 80% of fees and 100% of out-of-pocket

expenses requested in a Notice of Request for Payment. All monthly disbursements and any

---

[53] *See* Exh. 1 (SFAR, Line 14).

[54] *See id.* (Line 4). With the drop in interest rates, interest on the Receivership Estate's accounts has dropped significantly in recent quarters. The Receiver negotiated with the bank holding the accounts to provide a more favorable rate given the amount on deposit, but given the current federal funds rate, interest income during the Reporting Period remained relatively low. During the Reporting Period, the Receiver requested the interest rate be reevaluated with the anticipated rates being reported. The Receiver will continue to monitor interest rate issues and take appropriate actions.

[55] *See id.* (Line 10).

[56] Docket No. 101.

other requests for fees and expenses not requested pursuant to a Notice for Request for Payment are subject to Court approval through "Fee Applications".

### A.     Pending Fee Applications

On or about December 7, 2021, the Receiver filed a *Fourteenth Interim Fee Application* for Receiver and her Professionals requesting fees and expenses for services rendered from July 1, 2021 through September 30, 2021.[57] Also, on February 25, 2022, a *Fifteenth Interim Fee Application* was filed requesting fees and expenses for services rendered from October 1, 2021 through December 31, 2021.[58] At the close of this Reporting Period these Applications were pending before the Court, but were subsequently approved by the Court on April 11, 2022.[59]

### B.     Fees and Expenses Incurred During the Current Reporting Period

Shortly after filing this Status Report, the Receiver intends to file a *Sixteenth Interim Fee Application* for the period of January 1, 2022 through March 31, 2022. That Application will outline the total hours spent by the Receiver and the Professionals, the fees requested for their services, and reimbursement of out-of-pocket expenses incurred during the Reporting Period. None of the fees and expenses have been paid to date, other than those authorized to be paid under the Fee Procedures Order, all of which will be reported in the intended Fee Application. Specifically, during the Reporting Period, the Receiver filed *Notices of Request for Payment* for

---

[57] Docket No. 396.

[58] Docket No. 460.

[59] *See* Docket Nos. 464, 465.

January and February 2022.[60] No objections to those Notices were filed. Accordingly, 80% of the fees outlined in those Notices were paid, and 100% of the expenses outlined were reimbursed as authorized by the Fee Procedures Order.[61]

**VII.   <u>Conclusion</u>**

The Receiver currently holds over $50 million which she would like to distribute to those with allowed claims against the Receivership Estate. As a result of the work related to the Third Claims Report, the Receiver anticipates that she will be in a position to consider proposing a *Plan of Distribution* in the near future.

Dated this 13th day of May, 2022.

                    **RECEIVER**


                    _/s/ Peggy Hunt_____
                    *Peggy Hunt, Receiver*

---

[60] Docket Nos. 461, 462. A *Notice of Request for Payment* for the month of March 2022 was filed on May 2, 2022, after the close of the Reporting Period. *See* Docket No. 479. The Receiver intends to pay the fees and expenses noticed therein in accordance with Fee Procedures Order after the objection period ends.

[61] *See* Exh. 1 (SFAR, Line 10).

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of May, 2022, I caused the foregoing *Sixteenth Status Report (January 1, 2022 Through March 31, 2022)* to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record in this case.

*/s/ Candy Long*

EXHIBIT 1

**STANDARDIZED FUND ACCOUNTING REPORT for Traffic Monsoon, LLC Receivership - Cash Basis**
Receivership; Civil Court Case No. 2:16-00832
REPORTING PERIOD 01/01/2022 TO 03/31/2022

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 12/31/21) | | | 50,288,320.47 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | - | |
| Line 3 | Cash and Securities | - | - | |
| Line 4 | Interest/Dividend Income | 6,187.58 | 6,187.58 | |
| Line 5 | Business Asset Liquidation | - | - | |
| Line 6 | Personal Asset Liquidation | - | - | |
| Line 7 | Third-Party Litigation | - | - | |
| Line 8 | Miscellaneous-Other | - | - | |
| | **Total Funds Available (Lines 1-8):** | | 6,187.58 | 50,294,508.05 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Senior Secured Lenders/Investors | - | - | |
| Line 10 | Disbursements for Receivership Operations | | 129,228.95 | |
| Line 10 | *Internal Loans* | - | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | 129,228.95 | | |
| | 1. Fees: | - | | |
| | Receiver | 6,114.60 | | |
| | Legal Advisors | 51,133.91 | | |
| | Accountants | 3,714.39 | | |
| | Consultants | 68,266.05 | | |
| Line 10b | Business Asset Expenses | - | | |
| Line 10c | Personal Asset Expenses | - | | |
| Line 10d | Hospital Settlements & Investment Expenses | - | | |
| Line 10e | Third Party Litigation Expenses | - | | |
| | 1. Attorney Fees | - | | |
| | 2 Litigation Expenses | - | | |
| | *Total Third-party Litigation Expenses* | | - | |
| Line 10f | *Tax Administrator Fees and Bonds* | - | | |
| Line 10g | *Federal and State Tax Payments* | - | | |
| | **Total Disbursements for Receivership Operations** | | 129,228.95 | 129,228.95 |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | - | - | |
| Line 11 | *Distribution Plan Development Expenses* | - | | |
| Line 11a | *Distribution Plan Development Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Approved Living Allowance | - | | |
| | 4. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | | - | |
| Line 11b | *Distribution Plan Implementation Expenses:* | - | | |
| | 1. Fees: | - | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Receiver | - | | |
| | Legal Advisors | - | | |
| | Accountants | - | | |
| | Consultants | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |

|  | Notice/Publishing Approved Plan | - |
|  | Claimant Identification | - |
|  | Claims Processing | - |
|  | Web Site Maintenance/Call Center | - |
| 4. Fund Administrator Bond | | - |
| 5. Miscellaneous | | - |
| 6. Federal Account for Investor Restitution (FAIR) Rep... | |

| | Line 12b | | Federal Tax Payments | |
| - | - | - | Total Disbursements to Court/Other: | |
| | | 129,228.95 | **Total Funds Disbursed (Lines 9-12)** | |
| | | 50,165,279.10 | Line 13 | Ending Balance (As of 03/31/22) |
| | | | Line 14 | Ending Balance of Fund - Net Assets: |
| | | 50,165,279.10 | Line 14a | Cash & Cash Equivalents |
| | | - | Line 14b | Investments |
| | | - | Line 14c | Other Assets or Uncleared Funds |
| | | 50,165,279.10 | | **Total Ending Balance of Fund - Net Assets** |

| etail | Subtotal | Grand Total |
|---|---|---|

**OTHER SUPPLEMENTAL INFORMATION:**

**Report of Items NOT to be paid by the Fund:**

**Disbursements of Plan Administration Expenses Not Paid by the Fund:**

Line 15 — *Disbursements for Plan Administration Expenses*

Line 15a — *Plan Development Expenses Not Paid bu the Fund:*
- 1. Fees
  - Fund Administrator
  - IDC
  - Receiver
  - Legal Advisers
  - Accountants
  - Consultants
- 2. Administrative Expenses
- 3. Approved Living Allowance
- 4. Miscellaneous

*Total Plan Development Expenses Not Paid by the Fund*

Line 15b — *Plan Implementation Expenses Not Paid by the Fund:*
- 1. Fees
  - Fund Administrator
  - IDC
  - Receiver
  - Legal Advisers
  - Accountants
  - Consultants
- 2. Administrative Expenses
- 3. Investor Identification:
  - Notice/Publishing Approved Plan
  - Claimant Identification
  - Claims Processing
  - Web Site Maintenance/Call Center
- 4. Fund Administrator Bond
- 5. Miscellaneous
- 6. FAIR Reporting Expenses

*Total Plan Implementation Expesnses Not Paid by the Fund*

| | | | | |
|---|---|---|---|---|
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | - | | |
| | **Total Disbursements for Plan Administrative Expenses Not Paid by the fund** | | - | - |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | - | - | |
| Line 16a | *Investment Expenses/CRIS Fees* | - | | |
| Line 16b | *Federal Tax Payments* | - | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund** | | - | - |
| **Line 17** | **DC & State Tax Payments** | - | - | |
| **Line 18** | **No. of Claims** | | | |
| Line 18a | # of Claims Received This Reporting Period | | | - |
| Line 18 b | # of Claims Received Since Inception of Fund | | | |

